## Exhibit B

## Exit Plan

# EME Exit/Closing Plan

The Edison Mission Energy Exit/Closing Plan (the "Plan") is designed to (a) motivate and incentivize Bonus Pool A Participants to undertake extraordinary efforts to assist the Company in consummating the Transaction or otherwise taking actions consistent with such Transaction so as to maximize value in the Bankruptcy Proceedings and (b) address retention risks associated with the Transaction and the need to recognize at-risk Bonus Pool B Participants through Awards designed to motivate and incentivize performance through the Emergence Date. Capitalized terms not otherwise defined are as defined in Article I.

## ARTICLE I - DEFINITIONS

The following terms shall have the meanings set forth below:

**Section 1.1.** "Ad Hoc Noteholder Group" means the ad hoc committee of unsecured noteholders of EME.

**Section 1.2.** "Awards" means the incentive bonus paid to a Participant under the Plan, which bonus represents a portion of the Bonus Pool, the amount of which is entirely dependent upon Company's achievement of the Goals as determined in the full and complete discretion of the Committee.

**Section 1.3.** "Bankruptcy Code" means chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

**Section 1.4.** "Bankruptcy Proceedings" shall mean the bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Illinois (the "Court") under the caption *In re Edison Mission Energy, et al.*, Case No. 12-49219.

**Section 1.5.** "Board" means the Board of Directors of the Company.

**Section 1.6.** "Bonus Pool" means the total pool of cash in an aggregate amount of $7.5 million that may be available under the Plan.

**Section 1.7.** "Bonus Pool A" means a pool of cash totaling $6.4 million that may be available to the Bonus Pool A Participants.

**Section 1.8.** "Bonus Pool B" means a pool of cash totaling $1.1 million that may be available to the Bonus Pool B Participants.

**Section 1.9.** "Bonus Pool A Participants" means a director, officer or executive employee of the Company with responsibilities that are material to the successful, timely consummation of the Transaction and achievement of the Goals articulated in Article IV hereof, as determined by the Committee in its sole and absolute discretion.

**Section 1.10.** "Bonus Pool B Participants" means up to 20 non-insider, non-executive and non-union employees who are determined critical to ongoing operations and implementation of the Transaction, as amended from time to time by the Committee in its discretion.

**Section 1.11.** "Committee" means the Compensation Committee of the Board of Directors of the Company, or any successor thereto or delegate thereof with the authority to act on behalf of the Committee with respect to this Plan.

1

**Section 1.12.**     "Company" means Edison Mission Energy and includes any successor thereto, including pursuant to a plan of reorganization under title 11 of chapter 11 of the United States Code.

**Section 1.13.**     "Creditors' Committee" means the official committee of unsecured creditors appointed in the Bankruptcy Proceedings.

**Section 1.14.**     "EME" means Edison Mission Energy.

**Section 1.15.**     "Emergence Date" means the date on which all transactions required for the Transaction to become effective are consummated.

**Section 1.16.**     "Goals" means the actions and steps articulated in Article IV hereof that are necessary to successfully implement and consummate the Transaction.

**Section 1.17.**     "NRG" means NRG Energy, Inc. and NRG Energy Holdings, Inc.

**Section 1.18.**     "NRG Asset Purchase Agreement" means that certain Asset Purchase Agreement, dated as of October 18, 2013, by and among the Company, NRG, the Committee, the Ad Hoc Noteholder Group, and the various other parties signatory thereto.

**Section 1.19.**     "Participants" means the Bonus Pool A Participants and the Bonus Pool B Participants.

**Section 1.20.**     "Payment Date" means, once the Awards have been determined by the Committee, the Emergence Date.

**Section 1.21.**     "Transaction" means all transactions contemplated by the NRG Asset Purchase Agreement, including without limitation an Alternative Acquisition Agreement (as defined in such NRG Asset Purchase Agreement).

**ARTICLE II - ELIGIBILITY**

**Section 2.1.**     Committee Designation.  An individual shall be entitled to be a Participant in the Plan only if he or she is designated by the Committee as an eligible Participant.

**Section 2.2.**     Bonus Pool A Eligibility.  The Committee has the discretion to include an individual as a Bonus Pool A Participant and make a corresponding Award based purely on the individual's actual efforts towards the successful achievement of the Goals set forth in Article IV, regardless of whether the individual is employed by the Company as of the Payment Date.

**Section 2.3.**     Bonus Pool B Eligibility.  A Bonus Pool B Participant shall be eligible to receive an Award from Bonus Pool B unless such Participant voluntarily terminates his or her employment prior to the Payment Date.  For the avoidance of doubt, no Bonus Pool B Participant shall be: (a) an "insider," as such term is defined in section 101(31) of the Bankruptcy Code; (b) compensated in an executive payband (paybands E, F, G); (c) a member of the board of directors of EME; (d) employed in a position that is provided for, or created by, the governing corporate documents of the Company; (e) a member of any subsidiary board of directors of any of the debtor entities in the Bankruptcy Proceedings; or (f) employed in a position that holds the title of officer with respect to any of the debtor entities in the Bankruptcy Proceedings.

**ARTICLE III - AWARDS**

**Section 3.1.**     Determination of Awards.

2

(a) *Bonus Pool A*. The Committee shall determine in its sole discretion and in good faith the amount of each Bonus Pool A Participants' Award based on the Participant's actual efforts towards the successful achievement of the Goals as set forth in Article IV hereto. There are no minimum Awards under Bonus Pool A, and the Committee expressly reserves the right to award some, all or none of Bonus Pool A to any eligible Participants based on the Committee's analysis and determination of (i) achievement of the Goals and (ii) any particular Participant's actual efforts (or lack thereof) towards achievement of those Goals.

(b) *Bonus Pool B*. The Committee shall determine in its sole discretion and in good faith a group of up to 20 Bonus Pool B Participants and each such Bonus Pool B Participant's Award based on, among other things, retention risks associated with the Transaction and the need to recognize certain at risk individuals through Awards designed to motivate and incentivize performance through the Emergence Date.

## ARTICLE IV - BONUS POOL A GOALS[1]

The Committee shall consider the following non-exhaustive list of Goals in its determination of Awards:

a) Complete any and all actions necessary, proper and advisable to effectuate and consummate the Transaction on a timely basis.

b) Minimize transaction costs and professional fees through, among other things, timely resolution of issues.

c) Enhance employee engagement through balance of chapter 11 process.

d) Analyze, develop a strategy for, market and negotiate with potential purchasers during the "go shop" period in an effort to maximize estate value.

e) Respond to information requests from potential purchasers during the go shop period.

f) Collect and disseminate requested information to potential purchasers during the go shop period.

g) Timely conclude the go shop process leading to (i) a higher value offer or (ii) independent verification that the Transaction with NRG represents the highest value alternative.

h) Minimize liabilities associated with Excluded Liabilities and maximize value associated with the Excluded Assets to enhance the overall value of the Transaction for stakeholders, including, but not limited to, management of (i) claims, including claims for rejected executory contracts, (ii) issues related to the Company's subsidiaries, including Homer City Debtors, (iii) Tax Sharing Agreements, and (iv) Shared Services arrangements.

i) Analyze, develop a strategy for, market and negotiate the sale of the Non-Core Assets, any Excluded Assets and other Permitted Asset Disposals.

j) Effectively manage NRG access and transition planning balancing regulatory requirements and schedule and manage communications with, respond to requests from, and provide information to, the Purchaser Parties for purposes of transition planning

---

[1] For the purposes of this Article IV, all capitalized terms used but not otherwise defined herein shall have the meanings accorded them in the NRG Asset Purchase Agreement.

3

k) Evaluate and potentially implement opportunities to maximize the benefit of Company tax attributes.

l) Ensure the Company and its subsidiaries' comply with pre-closing period negative covenants to avoid value erosion, including, but not limited to, refraining from (i) changing the accounting, billing, cash management, and inventory practices used by the Company, (ii) increasing VaR limits, notional limits or other risks and (iii) waiving, releasing, assigning, settling or compromising any material claims of the Company or any of the Acquired Companies

m) Identify, analyze and effectuate the contribution and transfer of certain Excluded Assets from the various EME Subsidiaries to the Company.

n) Collect and deliver certificated Purchased Interests.

o) Analyze the necessity of and prepare drafts of appropriate conveyance documents including, but not limited to, bills of sale, certificates of title, and assignment and assumption agreements.

p) Collect, organize, analyze and prepare information for various governmental filings including, but not limited to HSR, FERC, Texas PUC, California PUC, and possible filings in foreign jurisdictions, including the Republic of Turkey.

q) Ensure that neither the Company nor any of its subsidiaries take or omit from taking any actions with respect to any Events of Loss or Takings during the executory period (if any).

r) Ensure that neither the Company nor any of its subsidiaries take or omit from taking any actions to cause a Leverage Event during the relevant period.

s) Identify, assemble and deliver to the purchasers a comprehensive list of all executory contracts, collective bargaining agreements, unexpired leases of real and personal property and other assumable and assignable contracts.

t) Analyze potential retained causes of action and interact with parties to analyze same.

u) Manage the Company's available Cash and provide Purchaser Parties with updates regarding the same.

v) Coordinate with the purchaser regarding seeking and obtaining third party consents.

w) Respond to questions and requests for information from various third parties in order to obtain third party consents.

x) Implement and coordinate with advisors regarding new Employee Benefit Plans to be effective as of January 1, 2014.

y) Identify and address satisfactory treatment of all Support Obligations.

z) Identify possible insurance claims of the Company and its subsidiaries and submit such claims, along with appropriate supporting materials, to insurers.

**ARTICLE V - PAYMENT OF AWARDS**

**Section 5.1.**   Time of Payment.  Payment of any Awards shall be made on the Payment Date.

**Section 5.2.**   Form of Payment.  All portions of any Awards shall be paid in the form of a lump sum cash payment, reduced by any applicable withholding taxes, as determined by the Committee.

**ARTICLE VI - ADMINISTRATION**

The Committee shall, in its sole discretion, administer the Plan reasonably and in good faith and approve additional documentation of, or in connection with, the Plan consistent with the terms hereof. The Committee shall have the sole authority to interpret, construe, and administer the Plan and any other document relating to the Plan in accordance with the provisions set forth herein, including without limitation the authority to: (i) select, amend, or eliminate the Participants who are otherwise eligible to participate in the Plan at any time; (ii) determine, consistent with the terms of the Plan: (A) the terms and conditions of each Award; (B) the portion of the Bonus Pool that each Participant is eligible to receive; and (C) the level at which the Goals are attained; (iii) make any and all other bonus determinations under the Plan; and (iv) make any other determination and take any other action that the Committee reasonably deems necessary or desirable for administration of the Plan. All actions taken and all interpretations and determinations made by the Committee in respect of the Plan shall be conclusive and binding on all persons, except as otherwise contemplated by the terms of the Plan.

The Committee, in its sole discretion, may implement and approve additional documentation with respect to the terms of the Plan so as to be compliant with applicable tax laws and to cause efficient administration of the Plan and the making of awards from a tax and related perspective.