## Exhibit 1

**MWG Bridge Loan Term Sheet**

## Summary of Terms and Conditions of MWG Bridge Loan

*This Summary of Terms and Conditions ("Summary") outlines certain terms and conditions of a loan facility (the "Loan Facility") between Midwest Generation, LLC ("Borrower") and Edison Mission Energy ("Lender").*

| | |
|---|---|
| **Recitals:** | WHEREAS, on December 17, 2012, the Borrower and Lender filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Illinois ("Court").  Subsequently on December 18, 2012, the Court authorized, the Borrower to continue operating in the ordinary course of business, which included generating electricity from the Borrower's coal fired power generation facilities (the "Coal Facilities"). |
| | WHEREAS, the Borrower and the Lender have entered into a binding Plan Support Agreement (the "Plan Support Agreement") with NRG Energy, Inc. ("NRG") and others providing for a consensual transaction, which, if completed, will result in NRG acquiring all of the assets of the Borrower, including the Coal Facilities ("Transaction"). |
| | WHEREAS, the Borrower desires to obtain the Loan Facility to fund its operations during the period between the date of the Plan Support Agreement and the closing of the Transaction and to ensure that the Borrower has, if necessary, sufficient funds to implement a shutdown of some or all of the Coal Facilities if the Transaction is not consummated (the "Shutdown"). |
| **Loan Facility:** | Delayed-draw term loan facility. |
| **Use of Proceeds:** | For general corporate purposes including: (i) to fund operating expenses (including capital expenditures) prior to the closing of the Transaction; and (ii) to the Borrower to implement the Shutdown. |
| **Commitment:** | $60 million; provided, however, that the foregoing shall be subject to upward adjustments on a dollar-for-dollar basis to the extent of the Borrower's forbearance payments in respect of its obligations associated with the leveraged leases of its Powerton and Joliet Coal Facilities (i.e., $3.75 million per month from January 2014 through June 2014, totaling $22.5 million in the aggregate (as so adjusted, the "Commitment")). |
| **Commitment Fee:** | 5% of the Commitment. |
| **Interest Rate:** | 10% per annum |
| **Conditions to Draw:** | The Borrower may not draw funds under the Loan Facility prior to March 1, 2014 unless there is a Shutdown before such date without the consent of the Required Supporting Noteholders and |

the Committee. The Borrower may draw funds from the Loan Facility solely (i) in $10 million increments; (ii) upon the Borrower's cash balance falling below $20 million; and (iii) to the extent necessary to restore the Borrower's cash balance to $20 million.

**Prepayment Obligations:**

To the extent the Borrower's cash balance exceeds $22 million, the Borrower shall repay such excess borrowed funds to the Lenders, provided that all amounts repaid may be reborrowed subject to the foregoing Conditions to Draw.

**Maturity:**

The earlier of (i) the effective date of a plan of reorganization with respect to Borrower; and (ii) July 31, 2014.

**Security:**

To secure the obligations of the Borrower under the Loan Facility, the Lender shall receive, pursuant to section 364(c)(2) of the Bankruptcy Code and through the order approving the Loan Facility (effective upon the date of such order, without the necessity of the execution by the Lender or the Borrower or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by the Lender or the Borrower) valid, fully-perfected and enforceable first priority security interests in, and liens upon, all unencumbered assets of the Borrower, including (A) those certain intercompany notes, dated August 24, 2000, issued by Lender in favor of Borrower, as the same has been or may be amended or modified from time to time; (B) all accounts, instruments, chattel paper, payment intangibles and other accounts receivable or rights to payment arising from the sale of electricity and related products and services or otherwise arising under any electricity sale contract, all supporting obligations in respect thereof and all proceeds and products of any or all of the foregoing; and (C) any other unencumbered assets of the Borrower available to be pledged to Lender (collectively, the "Collateral"); provided, however, that to the extent any of the Collateral shall be subject to an existing security interest or lien, the Lender shall receive pursuant to section 364(c)(3) of the Bankruptcy Code, valid, fully-perfected and enforceable junior security interests in and liens upon all such Collateral, subject only to such prior encumbrances.

**Superpriority Administrative
Expense Claim:**

The obligations of the Borrower under the Loan Facility shall constitute, in accordance with section 364(c)(1) of the Bankruptcy Code, a superpriority administrative claim having priority over all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code (including, without limitation, any such claims under the Final Order Granting Motion to Authorize to (A) Continue Using Cash Management System; (B) Maintain Existing Bank Accounts and Business Forms; (C) Maintain Existing Investment Practices;

|  | (D) Continue Intercompany Transactions; and (E) Grant Superpriority Administrative Expense Status to Postpetition Intercompany Payments (Docket #768), and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code. |
|---|---|
| **Court Approval:** | The Loan Facility shall be subject to entry of an order of the Bankruptcy Court on or before November 8. |
| **Other Terms:** | Usual and customary for third-party bank loans to debtors-in-possession, including, without limitation, relief from the automatic stay to exercise remedies upon the occurrence of an event of default, and estate professional carve-outs. |

*The foregoing is intended to summarize certain terms and conditions of the Loan Facility. It is not intended to be a definitive list of all of the requirements of the Borrower in connection with the Loan Facility.*

23