### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Edison Mission Energy, et al.[1] | ) | Case No. 12-49219 |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Hon. Jacqueline P. Cox |

**Memorandum Opinion (dkt. no. 1394)**

This matter is before the Court on the renewed motion of the Environmental Law and Policy Center ("ELPC") for relief from the automatic stay (the "Motion") to continue a regulatory action before the Illinois Pollution Control Board (the "Board"). *See* Bankruptcy Case no. 12-49219, dkt. nos. 406, 1394.  For the reasons that follow, the Motion is Granted.

### I.      Jurisdiction and Venue

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C § 1334(a).  A matter to determine the application of the automatic stay is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is proper pursuant to 28 U.S.C. § 1409.

### II.      Facts and Background

Edison Mission Energy together with its Debtor and non-Debtor affiliates, including Midwest Generation, LLC ("MWG"), is a leading independent power producing enterprise specializing in developing, operating, and selling energy and capacity from approximately 40 generating facilities in 12 American states and the Republic of Turkey.  The Debtors have

---

[1]The debtors in these chapter 11 cases include: Edison Mission Energy; Camino Energy Company; Chestnut Ridge Energy Company; Edison Mission Energy Fuel Services, LLC; Edison Mission Finance Co.; Edison Mission Fuel Resources, Inc.; Edison Mission Fuel Transportation, Inc.; Edison Mission Holdings Co.; Edison Mission Midwest Holdings Co.; EME Homer City Generation L.P.; Homer City Property Holdings, Inc.;  Midwest Finance Corp.; Midwest Generation EME, LLC; Midwest Generation, LLC; Midwest Generation Procurement Services, LLC; Midwest Peaker Holdings, Inc.; Mission Energy Westside, Inc.; San Joaquin Energy Company; Southern Sierra Energy Company; and Western Sierra Energy Company (the "Debtors").

approximately 925 employees and maintain headquarters in Chicago, Illinois and Santa Ana, California. (*See* Motion for Joint Administration of Lead Case, dkt. no. 717, p. 4.)

The Debtors are indirect subsidiaries and affiliates of non-Debtor Edison International Inc. ("EIX"). (*See* Declaration of Maria Rigatti, Senior Vice President and Chief Financial Officer of Edison Mission Energy ("Rigatti Declaration")). dkt. no. 6, p. 2, ¶ 6. EME and its subsidiaries own and operate certain unregulated coal, wind, and gas power generating assets. *Id.* at ¶ 6. MWG operates several coal-fired plants in Illinois, including the Joliet Generating Station in Joliet; the Powerton Generating Station in Pekin; the Waukegan Generating Station in Waukegan; and the Will County Generating Station in Romeoville (the "Coal Plants"). Motion, dk. no. 406, p. 2. ¶ 4.

The ELPC is an Illinois not-for-profit corporation whose mission includes advocating for the protection of water quality and public health throughout the Midwest. Motion, dkt. no. 406, p. 2, ¶ 5.

On June 11, 2012, the Illinois Environmental Protection Agency ("Illinois EPA") issued notices to MWG asserting violations of Section 12 of the Illinois Environmental Protection Act (the "IEP Act") and violations of the Illinois Administrative Code at the Coal Plants located in Joliet, Powerton, Waukegan, and Will County. *See* ELPC Aff. ¶ 10, dkt. no. 406-1.

On October 3, 2012, the ELPC, along with other environmental organizations, filed a complaint against MWG before the Board (the "Complaint"). IPCB Case No. 2013-015. Therein, ELPC alleges that MWG caused or contributed to the contamination of groundwater via open dumping at its Powerton, Waukegan, and Will County sites in violation of 415 ILCS 5/21(a) (2013); and 40 C.F.R. §§ 257.1 and 257.3-4 (2012). ELPC Aff. ¶ 12. ELPC further alleges that through its use of coal ash disposal ponds at its Coal Plants, MWG discharged contaminants into the environment in violation of 415 ILCS 5/12(a) and (d).

Based on MWG's monitoring reports, the ELPC documented the number of open dumping violations at each site as well as violations of groundwater quality standards. ELPC Aff. ¶ 14. The Complaint alleges that pollutants associated with coal ash have been found in MWG's groundwater based on data from Joliet 29, Powerton, Waukegan and Will County at concentrations that may present a health risk. ELPC Aff. ¶ 15. The Complaint identifies health

risks associated with pollutants found in MWG's groundwater wells.  For example, the
Complaint notes that arsenic causes multiple forms of cancer and is also associated with adverse
health effects of the skin and nervous system (ELPC Aff. ¶ 16) and that lead is toxic to the
nervous system.  ELPC Aff. ¶ 16. The ELPC asks the Board to find that MWG violated the
Illinois EPA's prohibitions on open dumping and groundwater pollution (or groundwater quality
standards) at its Coal Plants and that the Board order MWG to (1) pay penalties as provided
under Section 42 of the Act (415 ILCS 5/42 (2012));[2] (2) cease and desist from further violations;
(3) modify its coal disposal practices; and (4) remediate the contaminated ground water. *See* Case
No. 12-49219, dkt. no. 1394-1, p. 6.

By virtue of the Debtors' bankruptcy filing, the IPCB Proceeding was stayed pursuant to
Section 362(a) of the Bankruptcy Code (the "Code").

On February 5, 2013, the ELPC filed the instant Motion seeking entry of an order either
confirming that the automatic stay was not in effect due to Section 362(b)(4)'s police power
exception, or in the alternative, granting relief from the automatic stay to continue its regulatory
action pending against MWG before the Board (the "IPCB Proceeding").

On April 22, 2013, this Court entered an order authorizing the continuation of the IPCB
Proceeding against MWG for the sole purpose of resolving the Debtors' pending motion to
dismiss. *See* Order, dkt. no. 686.

On October 3, 2013, the Board issued an order denying in part MWG's motion to dismiss
the Complaint as frivolous and duplicative based on certain Compliance Commitment
Agreements ("CCA").  Counts 1 - 3 of the Complaint, alleging that MWG violated federal
regulations, were stricken as frivolous because the Board lacks authority to enforce provisions of
federal law that have not been incorporated into the Act or the Board's regulations.  dkt. no.
1394, Exhibit A.

---

[2]Pursuant to the statute, the civil penalty is capped at "$50,000 for the violation and an
additional civil penalty of not to exceed $10,000 for each day during which the violation
continues." 415 ILCS 5/42 (2012).

### III.  Discussion

#### A.  Standing

MWG argues that ELPC lacks the requisite "party in interest" standing to seek relief from the automatic stay because ELPC has no direct stake in the Debtors' reorganization. Objection, dkt. no. 593, p. 5, ¶ 12.

Section 362(d) of the Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this action, such as by terminating, annulling, modifying, or conditioning such stay. 11 U.S.C. § 362(d). Section 1109(b) of the Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

The Seventh Circuit recognizes that "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992). The Complaint herein was filed pursuant to the citizen suit provision of the Illinois Environmental Protection Act which empowers private citizens to enforce environmental laws. *See* 415 ILCS § 5/31(d) ("[a]ny person may file with the Board a complaint, meeting the requirements of subsection © of this Section, against any person allegedly violating this Act . . . ."). Through its Complaint, the ELPC seeks to compel MWG's compliance with applicable Illinois environmental regulations. The ELPC's interest under Illinois law and rights as a complainant before the Board have been directly affected by the bankruptcy proceedings, as Section 362(a) of the Bankruptcy Code prohibits the ELPC from continuing with the IPCB Proceeding absent leave of this Court. Accordingly, the Court finds that ELPC is an interested party within the meaning of section 1109, and has standing to pursue the relief requested herein.[3]

---

[3]The ELPC reports that the Illinois Attorney General has authorized it to state that the People of Illinois support ELPC's status as a party-in-interest in these bankruptcy cases. dkt. no. 406, p. 9, ¶ 26.

### B.    Application of the Police Power Exception to the Automatic Stay

Generally, Section 362(a)(1) of the Bankruptcy Code provides that the filing of a petition for relief under the Bankruptcy Code operates as a stay, applicable to all entities, of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

However, Section 362(b)(4) provides that the filing of a petition does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's policy or regulatory power." 11 U.S.C. § 362(b)(4).  This exception requires both that: (1) the proceeding be brought by a governmental unit and (2) the proceedings be brought to enforce . . . police or regulatory power of the governmental unit.  This exception was enacted in part to protect public health and safety.[4] *In re Herrera*, 194 B.R. 178, 185 (Bankr. N.D. Ill. 1996).

In deciding whether an action falls within the police power exception, courts must determine whether the action relates to matters of public safety and health as opposed to matters concerning the government's pecuniary interest. *In re Phillips*, 368 B.R. 733, 739 (Bankr. N.D. Ind. 2007). This requirement, also known as the "pecuniary purpose test," focuses on whether a governmental proceeding "relates to public safety and welfare, which favors application of the

---

[4]The legislative history of Section 362(b)(4) indicates that the exception is "intended to be given narrow construction in order to permit governmental units to pursue actions to protect health and safety." *In re Benalcazar*, 283 B.R. 514, 530 (Bankr. N.D. Ill. 2002), citing 124 Cong. Rec. 32,395 (1978).

stay exception, or to the government's interest in the debtor's property, which does not." *Id.* at 739.

Here, although the ELPC is not a governmental unit, it argues that the police power exception applies because the IPCB proceeding is substantially similar to proceedings that could be brought by the Illinois Attorney General before the Board. *See* Motion, dkt. no. 406, p. 15, ¶ 40.

The leading Seventh Circuit decision on this issue is *Alpern v. Lieb*, 11 F.3d 689 (7th Cir. 1993), which was decided in the context of sanctions imposed under Rule 11 of the Federal Rules of Civil Procedure. There, the Court opined:

> The Rule 11 sanction is meted out by a governmental unit, the court, though typically sought by a private individual or organization-a nongovernmental litigant, the opponent of the litigant to be sanctioned. There is no anomaly, given the long history of private enforcement of penal and regulatory law. The private enforcer, sometimes called a "private attorney general," can be viewed as an agent of the "governmental unit," the federal judiciary, that promulgated Rule 11 in order to punish unprofessional behavior. The fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4).

11 F.3d at 690 (citing *In re Commonweath Cos.*, 913 F.2d 518, 522-23 (8th Cir. 1990)).

In *Alpern*, the court allowed a private party to proceed under the police power exception, however, nothing in the decision indicates that the court intended a broader application outside the context of a sanctions proceeding. The court noted that Rule 11 sanctions, although imposed by a government agent (the court), are typically sought by a private party. The court also considered "the long history of private enforcement of penal and regulatory law" and concluded that the "private enforcer" or "private attorney general" of Rule 11 could be viewed as an agent of the federal judiciary. *Id.* at 690. Indeed, the cases cited in *Alpern* involved disciplinary proceedings either initiated or continued by the state bar or the court, both of which are governmental units within the meaning of Section 101(27) of the Bankruptcy Code.[5] *See, e.g.,*

---

[5]The court also cited *In re Revere Copper & Brass, Inc.*, 29 B.R. 584 (S.D.N.Y. 1983), which involved a citizen suit brought by an environmental public interest organization against a debtor pursuant to the Clean Water Act (not unlike the suit at issue herein). The court held,

*Papadakis v. Zelis*, 230 Cal.App.3d 1385 (1991) (sanctions imposed by the court as a result of an order to show cause for attorney's litigation tactics, falls within the police power exception); *O'Brien v. Fischel*, 74 B.R. 546, 550 (D. Haw. 1987) (sanctions issued pursuant to a rule to show cause hearing issued by the court were held to be covered by the police power exception); *Wade v. State Bar of Az.*, 948 F.2d 1122 (9th Cir. 1991) (holding that state bar initiated attorney disciplinary proceedings are exempt from the automatic stay).

The Court finds no agency relationship between the ELPC and the Illinois EPA or the Illinois Attorney General as alluded to in *Alpern*. The ELPC has not asserted that either Illinois governmental body typically acts through private parties to enforce environmental regulations. In cases where suits initiated by private parties were allowed to proceed under the police power exception, either the governmental unit later joined in or commenced its own proceeding. For example, in *In re Halo Wireless Inc.*, 684 F.3d 581 (5th Cir. 2012), twenty suits were filed against a wireless service provider before the state public utility commission by a number of local telephone companies alleging they were owed fees for use of their networks. In the underlying bankruptcy case, the court heard evidence indicating that under a state statute, once a complaint is filed, the governmental unit becomes a party to the proceeding. *Id.* at 592. The Court of Appeals held that although the proceeding at issue was initiated by private entities, the public policy exception applied because the suit was being prosecuted or continued by governmental units, which is explicitly contemplated within the text of Section 362(b)(4). *Id.*

Similarly, in *U.S. Int'l Trade Commission v. Jaffe*, 433 B.R. 538 (E.D. Va. 2010), the court held that the automatic stay was not applicable to an action where a private party files a complaint but the government agency independently chooses to commence an investigation. *Jaffe*, 433 B.R. at 544.

The record herein indicates that the ELPC, along with other private groups, initiated the IPCB Proceeding. To date, no Illinois governmental unit has intervened or indicated that it plans to commence an investigation. The ELPC's decision to commence the IPCB Proceeding was not

---

relying in part on the legislative history of Section 362(b)(4), that the police power exception "excludes private attorney general actions." *Revere*, at 588.

done under the directive of any Illinois governmental unit. Thus, the police power exception of Section 362(b)(4) does not apply to the IPCB Proceeding.

Because the Court finds that the pending IPCB Proceeding was not "commenced or continued" by a governmental unit, the Court need not address whether the pecuniary purpose test has been satisfied.

While the police power exception to the imposition of the automatic stay for governmental units does not apply to actions brought by private groups, the Illinois Environmental Protection Act allows private citizens and associations to prosecute environmental actions. *See* 415 ILCS 5/31(d) (footnote 2, herein).

### C.    Cause Exists to Lift the Automatic Stay

The next issue for determination is whether the stay should be lifted for "cause" pursuant to Section 362(d)(1) to allow the ELPC to prosecute the IPCB Proceeding.

Section 362(d)(1) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection(a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

The Bankruptcy Code does not define "cause." Courts are directed to make this determination on a case by case basis. *In re Benalcazar*, 283 B.R. 514, 535-536 (Bankr. N.D.Ill. 2002). The Seventh Circuit has adopted a three-part balancing test to determine whether cause exists to lift the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the [non-bankruptcy party] by maintenance of the stay considerably outweighs the hardship of the debtor and (3) whether the creditor has a probability of prevailing on the merits. *In re Fernstrom*, 938 F.2d 731, 735 (7th Cir. 1991).

### 1.      Prejudice to the Debtor

Applying the first of the *Fernstrom* factors, whether the debtor will suffer great prejudice, the Court finds that granting the relief requested herein will not greatly prejudice MWG or other debtor entities.

Throughout these bankruptcy proceedings, the Debtors have maintained that environmental concerns are of great import and will have to be addressed in any plan of reorganization. Allowing the IPCB Proceeding to continue will require MWG's compliance with environmental regulations that will still be in effect when MWG emerges from bankruptcy. As noted in the Motion, the Debtors (or their successors) will have to deal with the issues of alleged groundwater contamination. *See* dkt. no. 1394, p. 9, ¶¶ 18-19. Requiring MWG to take immediate action to address alleged environmental violations will be beneficial to the Debtors' estates and their successors, including the prospective purchasers NRG Energy, Inc. and NRG Energy Holdings, Inc. (collectively "NRG").[6]

Even if the Court were to deny the relief requested, nothing prohibits the ELPC from bringing a post-petition suit pursuant to 28 U.S.C. § 959(a) to address the alleged continual sulfur dioxide emissions. Section 959(a) of Title 28 provides that a debtor in possession must manage and operate its property in compliance with state law.[7] *See, e.g., Wilner Wood Products Co. v.*

---

[6]On October 18, 2013, Debtors filed a Motion to Approve (I) Entry Into Plan Sponsor Agreement, (II) Sponsor Protections, And (III) Related Relief. Therein, the Debtors sought Court approval of an agreement that contemplates NRG's acquisition of substantially all of EME's assets and equity interests in both Debtor and non-Debtor subsidiaries. *See* Case No. 12-49219, dkt. no. 1375.

NRG is one of the United States' largest power generation and retail electricity businesses, with power plants providing approximately 47,000 MW of generation capacity serving more than 2 million customers in 16 states. *See* dkt. no. 1375, p. 6 n. 4.

[7]Section 959(a) of Title 28 provides as follows:

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with

*State of Maine, Dept. of Environmental Protection, et al.*, 128 B.R. 1, 2 (D. Maine 1991) citing

*Midlantic Nat'l Bank v. New Jersey Dept. Of Envtl. Protection*, 474 U.S. 494, 506 ("The intent of

Congress is unmistakably clear: a debtor in possession . . . must manage and operate its property

in compliance with State law.  There is no exception for debtors who would be inconvenienced

or burdened by State laws. The United States Supreme Court has indicated that this section is

evidence of congressional intent that debtors in possession comply with states' environmental

laws."); *In re Kish*, 41 B.R. 620, 625-26 (Bankr. E.D. Mich. 1984) (lawsuit filed by

environmental group to enjoin trustee's post-petition conduct was allowed to continue pursuant

to 28 U.S.C. § 959(a); group held not to be acting in violation of the automatic stay). Because

Section 959(a) permits post-petition suits against debtors, allowing the pending IPCB Proceeding

to proceed now, rather than at some future time will not result in any prejudice to MWG.

MWG maintains that granting stay relief would divide the Debtors' attention and

jeopardize its pending transaction with NRG.  The Court might find this argument persuasive if

these bankruptcy proceedings involved a debtor with limited resources. However, the Debtors are

multi-national corporations with access to resources sufficient to address the IPCB Proceeding

while simultaneously consummating the NRG deal.  Beyond the general assertion that allowing

the IPCB Proceeding to proceed would be disruptive, MWG fails to assert with specificity how

moving forward with the IPCB Proceeding will have an adverse impact on the Debtors.  To the

contrary, the Debtors' Motion to Approve (I) Entry Into Plan Sponsor Agreement, (II) Sponsor

Protections, And (III) Related Relief, at page 3, paragraph 4, indicates that the purchase

agreement includes "NRG's assumption of substantial prepetition and non-Debtor liabilities,

including the PoJo leveraged leases." *See* dkt. no. 1375.

In light of the foregoing, the Court finds that the continuation of the IPCB Proceeding

will not result in great prejudice to MWG or to the Debtors' estate.

---

respect to any of their acts or transactions in carrying on business
connected with such property. Such actions shall be subject to the general
equity power of such court so far as the same may be necessary to the ends
of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).

2.      **Hardship to the ELPC**

The Court must determine whether the hardship to the ELPC by maintaining the stay outweighs the hardship to MWG and the Debtors by allowing the IPCB to proceed. Under this prong, the focus is on whether modification of the stay will impair MWG's ability to formulate a plan of reorganization or otherwise cause it "irreparable harm." *Fernstrom*, 938 F.2d at 736.

While the Court does not take a position on the assertions made in the Complaint, the Court finds it important for the sake of public health to deal with these issues now, rather than wait to do so at a later date. Although the ELPC can bring an action post-petition under 28 U.S.C. § 959(a) to address alleged violations of environmental regulations, doing so could cause the ELPC to litigate the same action twice and to incur additional costs.

MWG contends that granting stay relief would cause it significant hardship, reasoning that these chapter 11 proceedings require its full attention. For the same reasons articulated in the Court's discussion above, the Court does not find this argument compelling. The Debtors have under their employ a team of highly qualified professionals. The Court has little doubt that MWG and the related debtor entities have the resources necessary to defend the IPCB Proceeding contemporaneously with achieving their reorganizational goals in these bankruptcy cases. Allowing the IPCB Proceeding to proceed to resolution will likely benefit MWG and the Debtors because, as explained above, environmental concerns will be addressed by the Debtors through a plan of reorganization, or by their successors in interest. Further, any order entered by this Court will prohibit the ELPC from seeking to enforce any civil penalty that may be awarded in the IPCB Proceeding while these bankruptcy cases are pending. Thus, allowing the IPCB Proceeding to continue will not conflict with the Bankruptcy Code's objective of preserving the bankruptcy estate. *See Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 278-79 (3d Cir. 1984) ("[S]uit brought by [Department of Environmental Resources] to compel Penna Terra to remedy environmental hazards was properly brought as an equitable action to prevent future harm, and did not constitute an action to enforce a money judgment."). Considering the environmental and ecological concerns raised in the Complaint, any hardship to MWG will be *de*

*minimus* in comparison to the hardship to the ELPC and the people of Illinois were the automatic stay to remain in effect.

### 3.    Probability of Prevailing on the Merits

Finally, the Court must determine whether the ELPC is likely to prevail on the merits of the IPCB Complaint.

The ELPC contends that it is likely to prevail on the merits of the IPCB Proceeding, noting that prior to the commencement of these bankruptcy cases, the Illinois EPA issued notices to MWG describing violations of Section 12 of the IEP Act and violations of the Illinois Administrative Code. *See* ELPC Aff ¶ 10, dkt. no. 406-1; Motion, dkt. no. 406, p. 13, ¶ 34. The ELPC also notes that its Complaint asserts claims similar to those noted in the Illinois EPA's violations notices. The ELPC's claims and the Illinois EPA's violation notices were both based on MWG's groundwater monitoring reports.

In response, MWG contends that the alleged violations have already been addressed by the Illinois EPA and thus obviates the need for the IPCB Proceeding. In support, MWG relies on certain Compliance Commitment Agreements ("CCAs") entered into by MWG and the Illinois EPA on October 24, 2012. dkt. no. 593, p. 3, ¶ 5; dkt. no. 1472, pp. 11-12, ¶ 29. Under the CCAs, MWG agreed to continue monitoring and treatment procedures; add to its inspection and monitoring practices; re-line certain of its coal ash ponds and take others out of service; install new monitoring wells; and establish groundwater management zones and land use control limitations covering the four Illinois cites. dkt. no. 593, p. 3, ¶ 5. However, the notion that the CCAs render the IPCB Proceeding unnecessary was expressly rejected by the Board in its October 3, 2013 Order denying MWG's motion to dismiss. At page 18 of the Order, the Board stated "[t]he existence of a CCA does not preclude the filing by the People or any citizen of an enforcement action against the person subject to the CCA." dkt. no. 1394-1, Exhibit A, p. 18.

The Board also rejected MWG's assertion that the representations made in the CCAs could conflict with any final order that may be entered in the IPCB Proceeding. The Board explained:

> CCAs are a part of the pre-enforcement process conducted by the Agency, which, as discussed above, is not an adjudication before any kind of tribunal. Pre-enforcement steps are administrative, non-judicial procedures between the Agency

and an alleged violator that are not open to citizen participation. The legislature
clearly did not intend to foreclose citizen suits based upon this kind of non-
adjudicatory process.

dkt. no. 1394-1, Exhibit A, p. 22.

The Board makes clear that the outcome of the IPCB Proceeding will not conflict with the
Debtors' compliance with the CCAs. Indeed, the Order provides that "to the extent the Board
were ultimately to find in this case that MWG has committed the violations alleged by
complainants, the Board would, in fashioning an appropriate remedy, take into consideration any
compliance by MWG with the CCAs." *See* dkt. no. 1394-1, Exhibit A, p. 20. Thus, MWG's
argument that the CCAs render the IPCB Proceeding unnecessary must fail.

Next, MWG argues that a new proposed rule regarding the remediation of groundwater
violations obviates the need for the pending IPCB Proceeding. dkt. no. 1472, pp. 11-12, ¶ 29.
The proposed rule provides, in part, as follows:

> When groundwater quality standards are exceeded, the owner or operator
> may elect to perform corrective action or to close the [coal ash pond]. The
> [Illinois EPA] includes a corrective action process in these rules because
> closure may not be required in all instances . . . Moreover, the proposed
> rule acknowledges many owners or operators have taken steps to protect
> the groundwater (e.g., hydrogeologic, characterization, preventative
> response, and GMZs) by allowing previous work to be used to satisfy the
> requirements of the proposed rule.

dkt. no. 1472, p. 2, ¶ 4; *See also* IEPA Statements of Reasons, at 14.
http://www.ipcb.state.il.us/documents/dsweb/Get/Document-82136.

Contrary to MWG's assertion, nothing in the proposed rule suggests that its enactment
would obviate the current IPCB Proceeding. The proposed rule requires that owners develop a
plan to remedy existing violations of groundwater quality standards.

Even assuming arguendo that the terms of the proposed rule overlap with what is at issue
in the IPCB Proceeding, this Court cannot speculate as to when the rule will be enacted. As
noted by the ELPC, it could be years before the new rule takes effect. In any event, it is

-13-

ultimately for the Illinois Pollution Control Board to make such determinations, not this Court.[8]

The Court concludes that the ELPC has a reasonable likelihood of prevailing on the merits.

### IV.    Conclusion

The Court finds that the police power exception does not apply herein, as the ELPC is not a "governmental unit" as defined by Section 362(b)(4) of Bankruptcy Code.

The Court finds that cause exists to lift the stay as to the pending Illinois Pollution Control Board Proceeding pursuant to Section 362(d)(1).

At this time, the ELPC is prohibited from seeking to enforce any monetary penalty that may be awarded pursuant to 415 ILCS 5/42 or otherwise.

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order will be entered.


**DATED:**      **December 11, 2013**            **ENTER:**

_Jacqueline P. Cox_

Jacqueline P. Cox

**Jacqueline P. Cox**

**U.S. Bankruptcy Judge**

---

[8]According to its website, the Illinois Pollution Control Board reviews nearly 500 environmental cases and holds more than 250 public hearings each year. *See* http://www.ipcb.state.il.us/AboutTheBoard/AboutTheBoard.asp (last visited December 4, 2013).

-14-