UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDISON MISSION ENERGY, et al.,[1] | ) Case No. 12-49219 (JPC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

ORDER CONFIRMING
<u>DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>

The *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (with Technical Modifications)*, filed by the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") on March 6, 2014 (as amended, supplemented, and/or modified the "<u>Plan</u>"),[2] a copy of which is attached hereto as **Exhibit A**, having been transmitted to Holders of Claims entitled to vote thereon; the Court having entered the *Order Establishing Certain Scheduling and Notice Procedures for Confirmation of the Debtors' Modified Plan and Granting Related Relief* [Docket No. 2094] and the Debtors having provided adequate notice thereof, *Affidavit of Service* [Docket No. 2108]; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and it appearing that venue is proper in this district pursuant

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The location of parent Debtor Edison Mission Energy's corporate headquarters and the Debtors' service address is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

to 28 U.S.C. §§ 1408 and 1409; and it appearing that appropriate, proper, and adequate notice has been given under the circumstances of the Confirmation Hearing, the Plan Modifications, and the deadlines and procedures for objecting to and voting on the Plan, and that no other or further notice is necessary; and having considered the evidence submitted at the Confirmation Hearing and the arguments and briefing regarding confirmation of the Plan, after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:[3]

1. The Plan, attached hereto as **Exhibit A**, (including the Plan Supplement, as amended) is confirmed under section 1129 of the Bankruptcy Code.

2. If there is determined to be any inconsistency between any provision of the Plan and any provision of this Order, then, solely to the extent of such inconsistency, the provisions of this Order shall govern. Notwithstanding the foregoing, nothing in this Order shall be construed to alter or amend the provisions of Article XIII.E of the Plan.

3. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement, the Court's *Order Establishing Certain Scheduling and Notice Procedures for Confirmation of the Debtors' Modified Plan and Granting Related Relief* [Docket No. 2094], all other applicable provisions of the Bankruptcy Code, and applicable rules, laws, and regulations.

4. The Plan (including the Plan Supplement, as amended) complies with section 1129 of the Bankruptcy Code.

---

[3] The determinations, findings, judgments, and conclusions set forth and incorporated in this Confirmation Order constitute the Court's findings of fact, conclusions of law, and orders of the Court. Each finding and conclusion set forth or incorporated herein shall constitute an order of the Court. The orders of the Court shall also constitute the findings and conclusions of the Court. Findings of fact constitute findings of fact even if they are stated as conclusions of law, and such conclusions of law constitute conclusions of law even if they are stated as findings of fact.

K&E 28879514.14

5.     Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved, are so ordered, and shall be immediately effective on the Effective Date without further order or action by the Court, any of the parties to such releases, or any other Entity:

>    (a)    **Article VIII.C**: *Debtor Release*. Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtors and their estates from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their estates, or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of claims and interests prior to or during the Chapter 11 Cases, the Transaction Support Agreement, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Plan Sponsor Agreement, the EIX Settlement, or any related agreements, instruments, or other documents, the subject matter of the EIX Litigation Claims, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date (1) of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (2) under the PoJo Leases and Documents (as modified by the PoJo Lease Modifications), or (3) under the EIX Settlement Agreement or the EIX Settlement Ancillary Documents.

K&E 28879514.14

    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article VIII.C of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan and shall constitute the Bankruptcy Court's finding that this Article VIII.C of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.C of the Plan; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Reorganization Trust, the Post-Effective-Date Debtor Subsidiaries, the Post-Effective-Date Homer City Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to this Article VIII.C of the Plan.

(b) **Article VIII.D**: *Release by Holders of Claims and Interests.* Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties are deemed to have released and discharged the Debtors and their Estates and the Released Parties from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of claims and interests prior to or in the Chapter 11 Cases, the Transaction Support Agreement, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Plan Sponsor Agreement, the EIX Settlement, or any related agreements, instruments, or other documents, the subject matter of the EIX Litigation Claims, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date (1) of any party under the Plan

    or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (2) under the PoJo Leases and Documents (as modified by the PoJo Lease Modifications), or (3) under the EIX Settlement Agreement or the EIX Settlement Ancillary Documents.

    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of this Article VIII.D of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan and shall constitute the Bankruptcy Court's finding that this Article VIII.D of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.D of the Plan; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Entities subject to this Article VIII.D of the Plan asserting any claim or cause of action released pursuant to this Article VIII.D of the Plan.

(c)    **Article VIII.E**: *Exculpation*. Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, none of the Exculpated Parties, shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the Transaction Support Agreement, the negotiation, formulation, or preparation of the Plan or any contract, instrument, document, or other agreement entered into pursuant thereto, or any distributions made pursuant to or in accordance with the Plan, and the effectuation of the Post-Effective-Date Reorganization Trust Matters; <u>provided</u> that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

(d)    **Article VIII.F**: *Injunction*. Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, compromised and settled pursuant to the Plan, or are exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors or the Released Parties or their respective property (collectively, the "<u>Enjoined Actions</u>"): (1) commencing or continuing in any manner

    any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claim or interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such entities or the property or the Estates of such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests unless such entity has timely filed a proof of claim with the Bankruptcy Court preserving such right of setoff, subrogation, or recoupment; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated claims or interests. Any Entity receiving a distribution under the Plan on account of any Claim shall be deemed to have waived any right to such Claim as against any third party and shall be enjoined from pursuing such Claim as against any Entity other than the Reorganization Trust (in the case of any Claim that is not an Assumed Liability or a Settlement Assumed Liability) or the Purchaser or the applicable Post-Effective-Date Debtor Subsidiary (in the case of any Claim that is an Assumed Liability) or EIX (in the case of any Claim that is a Settlement Assumed Liability), as the case may be; <u>provided</u> that the foregoing injunction does not enjoin any actions against any Released Party to enforce obligations arising on or after the Effective Date (1) of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (2) under the PoJo Leases and Documents (as modified by the PoJo Lease Modifications), or (3) under the EIX Settlement Agreement or the EIX Settlement Ancillary Documents.

(e) **Article VIII.G**: *Purchaser and EIX Released Parties Injunctions.* In addition to the injunction set forth under Article VIII.F hereof, on the Confirmation Date and effective as of the Effective Date, all Excluded Liabilities and claims or liabilities arising from (1) information furnished to the Purchaser Parties by EME for use in the registration statement of the common stock of the Parent issued in connect with the Sale Transaction or any amendment or supplement thereto or (2) the financial statements of EME contained or incorporated by reference in such registration statement or any amendment or supplement thereto that may otherwise be asserted against the

6

> **Purchaser Parties, any Acquired Company, or any of their respective property shall be permanently released pursuant to the Plan, and all Entities shall be enjoined from taking any Enjoined Action in relation thereto or otherwise asserting any such Excluded Liabilities or other such claims and liabilities, and any such Excluded Liabilities or other such claims and liabilities shall be paid or treated pursuant to the terms of the Plan.**
>
> **In addition to the injunction set forth under Article VIII.F hereof, on the Confirmation Date and effective as of the Effective Date, but subject to Article XIII.F of the Plan, all Claims or other Causes of Action that may otherwise be asserted against the EIX Released Parties or their respective property (other than (1) Claims or other liabilities against the EIX Released Parties arising under the EIX Settlement Agreement and the EIX Settlement Ancillary Documents, (2) the Commercial Relationship Claims (as defined in the EIX Settlement Agreement), and (3) the Settlement Assumed Liabilities) shall be permanently released pursuant to the Plan, and all Entities shall be enjoined from taking any Enjoined Action in relation thereto or otherwise asserting such Claims or Causes of Action, and any such Claims or Causes of Action shall be paid or treated pursuant to the terms of the Plan.**

6. The compromises and settlements embodied in and contemplated by the Plan, including the EIX Settlement, are in compliance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, are in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests, are fair, equitable, and reasonable, and are hereby approved.

7. Pursuant to Bankruptcy Rules 7052 and 9014, entry of this Order constitutes the findings of fact and conclusions of law set forth in Article IX of the Plan, including without limitation that (i) each of the Purchaser Parties is a good faith purchaser for the purposes of section 363(m) of the Bankruptcy Code and entitled to the benefits thereof in relation to the Sale Transaction and (ii) that all assets and rights sold by EME pursuant to the Purchase Agreement are transferred, conveyed, and assigned to the Purchaser free and clear of all Liens, Claims, encumbrances, and interests pursuant to sections 363(f), 1123(a)(5), and 1141(c) of the Bankruptcy Code. Such findings of fact constitute findings of fact even if they are stated as

conclusions of law, and such conclusions of law constitute conclusions of law even if they are stated as findings of fact.

8. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

9. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Reorganization Trust is directed to serve a notice of the entry of this Order and notice of the occurrence of the Effective Date upon (a) all parties listed in the creditor matrix maintained by GCG, Inc. and (b) such additional persons and entities as deemed appropriate by the Reorganization Trust, no later than five (5) Business Days after the Effective Date. The Reorganization Trust shall publish the notice of the entry of this Order and notice of the occurrence of the Effective Date in the *New York Times* (National Edition) within seven (7) Business Days after the Effective Date. As soon as practicable after the entry of this Order, the Debtors shall make copies of this Order available on the Debtors' restructuring website at www.edisonmissionrestructuring.com, and as soon as practicable after the Effective Date, the Reorganization Trust shall make copies of the notice of entry of this Order and notice of the occurrence of the Effective Date available on the same website.

10. It is the intention of the Debtors that the Chevron Litigation not be affected or otherwise impacted by Confirmation or Consummation of the Plan. Therefore, notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement, the Purchase Agreement, the Plan Sponsor Agreement, or the Confirmation Order, nothing contained therein or in any of them, as they may be amended or supplemented at any time, or Consummation of the Plan, shall (or shall be deemed to) discharge, release, enjoin, moot, prejudice, or otherwise affect in any way the Chevron Litigation, which shall be and hereby is preserved as though Confirmation and Consummation of the Plan had not occurred. For the avoidance of doubt, the Chevron Plaintiffs' (as defined for purposes of the Chevron Litigation) withdrawal of (a) their objection to confirmation of the Plan [Docket No. 1941], and (b) their votes to reject the Plan, is not (and shall not be deemed to be or to signify) an acceptance of the Plan or a waiver of any of their claims, rights or remedies under the Partnership Agreements or California law; nor shall such withdrawal constitute a waiver of any rights or claims against any third person, firm, or corporation. The Chevron Partnership Agreements shall be deemed removed from the Schedule of Assumed Executory Contracts and Unexpired Leases, given that the Chevron Partnership Agreements were previously assumed pursuant to order of the Bankruptcy Court [Docket No. 1564] (which order is the subject of an appeal pending as part of the Chevron Litigation).

11. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order and in accordance with the Plan.

12. Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004, 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: __March 11__, 2014
Chicago, Illinois

*Jacqueline P. Cox*
__J.P. Cox__
The Honorable Jacqueline P. Cox
United States Bankruptcy Judge

K&E 28879514.14