FTI CONSULTING, INC.
3 Times Square, 10th Floor
New York, NY 10036
(646) 453-1222 (Telephone)
Andrew Scruton

*Financial Advisor for the Official Committee*
*of Unsecured Creditors of Edison Mission Energy*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDISON MISSION ENERGY, *et al.*, | ) | Case No. 12-49219 (JPC) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**APPLICATION OF FTI CONSULTING, INC., FINANCIAL ADVISOR FOR**
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**OF EDISON MISSION ENERGY, *ET AL.*,**
**FOR FINAL ALLOWANCE OF COMPENSATION AND FOR THE**
**REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED**
**DURING THE PERIOD FROM JANUARY 7, 2013 THROUGH MARCH 11, 2014**

| | |
|---|---|
| Name of Applicant: | FTI Consulting, Inc. |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2013 (nunc pro tunc to January 7, 2013) |
| Period for which Compensation and Reimbursement is Sought: | January 7, 2013 through March 11, 2014 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $5,883,415.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $65,610.69 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Finance Co. (9202); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The Debtors' service address is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

Pursuant to the Local Rules for the United States Bankruptcy Court, Northern District of Illinois, set forth below is a summary of the fees and expenses requested in the First Interim Fee Application, Second Interim Fee Application, Third Interim Fee Application and the respective Monthly Fee Statements for the Fourth Interim Compensation Period (each as defined herein):

| Time Period | Fees Requested | Expenses Requested | Total Fees & Expenses Requested | Total Fees & Expenses Allowed | Total Fees and Expenses Previously Paid |
|---|---|---|---|---|---|
| 01/07/13 – 03/31/13 (First Interim Fee Application) | $1,858,123.50 | $24,831.34 | $1,882,954.84 | $1,882,954.8. On July 3, 2013, the Court entered an order [ECF No. 999] approving all of the fees and expenses requested in the First Interim Fee Application | 100% of fees and 100% of expenses |
| 04/01/13 – 07/31/13 (Second Interim Fee Application) | $1,962,720.00 | $33,096.38 | $1,995,816.38 | $1,995,816.38. On October 28, 2013, the Court entered an order [ECF No. 1439] approving all of the fees and expenses requested in the Second Interim Fee Application | 100% of fees and 100% of expenses |
| 08/01/13 – 11/30/13 (Third Interim Fee Application) | $1,373,370.00 | $5,660.23 | $1,379,030.23 | $1,379,030.23. On February 25, 2014, the Court entered an order [ECF No. 2133] approving all of the fees and expenses requested in the Third Interim Fee Application | 100% of fees and 100% of expenses |
| 12/01/13 – 12/31/13 (December Monthly Fee Statement) | $295,514.00 | $1,294.55 | $296,808.55 | Subject to Court approval of this Application | Pursuant to the Interim Compensation Order, FTI has received payment of 80% of the fees requested and 100% of the expenses requested in the December Monthly Fee Statement |

| | | | | | |
|---|---|---|---|---|---|
| 01/01/14 – 01/31/14 (January Monthly Fee Statement) | $198,531.50 | $451.30 | $198.982.80 | Subject to Court approval of this Application | Pursuant to the Interim Compensation Order, FTI has received payment of 80% of the fees requested and 100% of the expenses requested in the January Monthly Fee Statement |
| 02/01/14 – 02/28/14 (February Monthly Fee Statement) | $159,688.50 | $241.39 | $159,929.89 | Subject to Court approval of this Application | FTI has not received payment of the fees and expenses requested in the February Monthly Fee Statement. The last day to object to the February Monthly Fee Statement is April 18, 2014 |
| 03/01/14 – 03/11/14 (March Monthly Fee Statement) | $35,467.50 | $35.50 | $35,503.00 | Subject to Court approval of this Application | FTI has not received payment of the fees and expenses requested in the March Monthly Fee Statement. The last day to object to the March Monthly Fee Statement is May 6, 2014 |

**EDISON MISSION ENERGY,** *ET AL.*

SUMMARY OF HOURS BY PROFESSIONAL

**FOR PROFESSIONAL SERVICES RENDERED FROM <u>JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>:**

| Professional | Position | Billing Rate [1] | Total Hours | Total Fees |
|---|---|---|---|---|
| Eisenband, Michael | Senior Managing Director | $   925 | 184.9 | $   166,403.50 |
| Joffe, Steven | Senior Managing Director | 925 | 194.0 | 173,918.00 |
| Scruton, Andrew | Senior Managing Director | 925 | 771.7 | 692,639.50 |
| Imhoff, Dewey | Senior Managing Director | 895 | 80.0 | 71,600.00 |
| Star, Samuel | Senior Managing Director | 895 | 0.6 | 537.00 |
| Davido, Scott | Senior Managing Director | 800 | 633.8 | 489,805.00 |
| DeCaro, Peter Michael | Managing Director | 765 | 744.7 | 562,731.50 |
| Greenberg, Mark | Managing Director | 765 | 799.3 | 603,922.50 |
| Hain, Danielle | Managing Director | 755 | 21.2 | 16,006.00 |
| Laber, Mark | Managing Director | 755 | 236.4 | 178,482.00 |
| Grischow, Scott | Managing Director | 740 | 1.2 | 888.00 |
| Goren, Benjamin | Managing Director | 730 | 58.7 | 42,851.00 |
| Yozzo, John | Managing Director | 705 | 2.2 | 1,551.00 |
| Hoiles, Matthew | Director | 695 | 1567.4 | 1,019,962.50 |
| Park, Ji Yon | Director | 685 | 115.7 | 79,254.50 |
| Ghi, Katherine | Director | 615 | 816.3 | 467,277.00 |
| Hofstad, Ivo J | Director | 560 | 3.0 | 1,680.00 |
| Arsenault, Ronald | Director | 515 | 550.3 | 272,418.50 |
| Branch, Conor | Director | 310 | 154.5 | 47,895.00 |
| Pike, Jonathan | Director | 310 | 105.8 | 32,798.00 |
| McDonald, Brian | Senior Consultant | 540 | 4.2 | 2,268.00 |
| Garber, James | Senior Consultant | 510 | 5.5 | 2,805.00 |
| Bekker, Andrew | Senior Consultant | 505 | 4.5 | 2,272.50 |
| Chen, Iris | Senior Consultant | 505 | 5.0 | 2,525.00 |
| Goad, David | Senior Consultant | 505 | 18.3 | 9,241.50 |
| Drazin, Richard | Senior Consultant | 470 | 6.0 | 2,820.00 |
| Matthew Bernstein | Senior Consultant | 470 | 2.7 | 1,269.00 |
| Spinner, Joseph | Senior Consultant | 470 | 28.5 | 13,395.00 |
| Gill, Chase | Senior Consultant | 420 | 25.5 | 10,710.00 |
| Mulcahy, Robert | Consultant | 385 | 2065.8 | 685,299.00 |
| Connell, Daniel | Consultant | 335 | 650.2 | 212,348.00 |
| Celli, Nicholas | Consultant | 325 | 10.5 | 3,412.50 |
| Cowan, Kenneth | Consultant | 325 | 99.4 | 32,305.00 |
| Topper, Patrick | Consultant | 325 | 18.1 | 5,882.50 |
| Dollar, Philip | Consultant | 290 | 8.1 | 2,349.00 |

**EDISON MISSION ENERGY,** *ET AL.*

SUMMARY OF HOURS BY PROFESSIONAL

**FOR PROFESSIONAL SERVICES RENDERED FROM <u>JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>:**

| Professional | Position | Billing Rate [1] | Total Hours | Total Fees |
|---|---|---|---|---|
| Hines, Trevor | Consultant | 290 | 29.4 | 8,526.00 |
| Liddle, Thomas | Consultant | 290 | 21.8 | 6,322.00 |
| Jones, Rebekah | Corporate Librarian | 305 | 0.5 | 152.50 |
| Hellmund-Mora, Marili | Professional Assistant | 250 | 74.2 | 18,550.00 |
| Stewart, Paul | Professional Assistant | 225 | 19.1 | 4,226.00 |
| **Total** | | | **10,139.0** | **$ 5,949,299.00** |
| Less: 50% discount for non-working travel time | | | | 55,884.00 |
| **Grand Total** | | | **10,139.0** | **$ 5,893,415.00** |
| Less: January fee accommodation [2] | | | | 10,000.00 |
| **Adjusted Grand Total** | | | | **$ 5,883,415.00** |

[1] Represents most recent billing rate of each professional.  Billing rates may have increased over the course of the engagement in accordance with FTI regular billing procedures.  As such, Total Fees may not equal the product of a Professional's Billing Rate and Total Hours

[2] A $10,000.00 voluntary fee reduction was taken for time spent preparing a benchmarking analysis in connection with the retention of financial advisors by official committees of unsecured creditors.

**EDISON MISSION ENERGY**, *ET AL.*

SUMMARY OF HOURS BY TASK CODE

**FOR PROFESSIONAL SERVICES RENDERED FROM <u>JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>:**

**EDISON MISSION ENERGY**

| Task Number | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 1 | Current Operating Results & Events | 692.6 | $ 387,904.00 |
| 2 | Cash & Liquidity Analysis | 869.2 | 499,331.50 |
| 3 | Financing Matters (DIP, Exit, Other) | 12.2 | 7,983.00 |
| 6 | Asset Sales | 92.4 | 61,332.00 |
| 7 | Analysis of Business Plan | 379.2 | 233,603.50 |
| 8 | Valuation and Related Matters | 249.8 | 124,002.00 |
| 9 | Analysis of Employee Comp Programs | 336.6 | 202,565.50 |
| 10 | Analysis of Tax Issues | 1,565.8 | 983,618.00 |
| 11 | Prepare for and Attend Court Hearings | 11.3 | 7,116.00 |
| 12 | Analysis of SOFAs & SOALs | 326.8 | 186,625.50 |
| 13 | Analysis of Other Miscellaneous Motions | 81.1 | 53,794.00 |
| 14 | Analysis of Claims/Liab Subject to Compromise | 314.9 | 180,964.00 |
| 15 | Analyze Interco Claims, RP Trans, SubCon | 1,158.2 | 621,549.00 |
| 16 | Analysis, Negotiate and Form of POR & DS | 230.9 | 153,826.00 |
| 17 | Wind Down Monitoring | 57.2 | 33,326.00 |
| 18 | Potential Avoidance Actions & Litigation | 956.3 | 538,392.00 |
| 19 | Case Management | 134.6 | 109,195.50 |
| 20 | General Mtgs with Debtor & Debtors' Professionals | 500.6 | 347,673.00 |
| 21 | General Mtgs with UCC & UCC Counsel | 681.6 | 503,335.50 |
| 22 | Meetings with Other Parties | 40.3 | 33,904.50 |
| 23 | Firm Retention | 328.2 | 135,353.00 |
| 24 | Preparation of Fee Application | 633.9 | 270,356.50 |
| 25 | Travel Time | 142.6 | 111,768.00 |
| | **Total - EME** | **9,796.3** | **$ 5,787,518.00** |
| | Less: 50% discount for non-working travel time | | 55,884.00 |
| | **Grand Total - EME** | **9,796.3** | **$ 5,731,634.00** |

**EDISON MISSION ENERGY,** *ET AL.*

SUMMARY OF HOURS BY TASK CODE

**FOR PROFESSIONAL SERVICES RENDERED FROM <u>JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>:**

**MIDWEST GENERATION**

| Task Number | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 101 | MWG-Current Operating Results & Events | 2.7 | $ 2,133.00 |
| 102 | MWG-Cash & Liquidity Analysis | 148.9 | 51,670.00 |
| 106 | MWG-Asset Sales | 1.9 | 1,417.00 |
| 107 | MWG-Analysis of Business Plan | 110.3 | 64,951.00 |
| 108 | MWG-Valuation and Related Matters | 57.9 | 28,926.00 |
| 112 | MWG-Analysis of SOFAs & SOALs | 1.3 | 717.50 |
| 114 | MWG-Analysis of Claims/Liab Subject to Compromise | 11.4 | 6,211.50 |
| 120 | MWG-General Mtgs with Debtor & Debtors' Professionals | 2.5 | 1,621.00 |
| 121 | MWG-General Mtgs with UCC & UCC Counsel | 5.8 | 4,134.00 |
| | **Grand Total - MWG** | **342.7** | **$ 161,781.00** |
| | | | |
| | **Grand Total** | **10,139.0** | **$ 5,893,415.00** |
| | Less: January fee accommodation [1] | | 10,000.00 |
| | **Adjusted Grand Total** | **10,139.0** | **$ 5,883,415.00** |

[1] A $10,000.00 voluntary fee reduction was taken for time spent preparing a benchmarking analysis in connection with

the retention of financial advisors by official committees of unsecured creditors.

**EDISON MISSION ENERGY,** *ET AL.*

SUMMARY OF EXPENSES BY CATEGORY

**FOR PROFESSIONAL SERVICES RENDERED FROM <u>JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>:**

| Expense Category | Expense Total |
|---|---|
| Ground Transportation | $      9,399.61 |
| Airfare | 28,410.05 |
| Lodging | 7,536.77 |
| Business Meals | 7,599.50 |
| Other | 1,627.76 |
| Third Party Service[1] | 11,037.00 |
| **August Through November Total Out-of-Pocket Expenses** | **$     65,610.69** |

<u>Note:</u>

[1] Cost relates to services provided by Orbit Systems Limited from January 2013 through April 2013 relating to gross margin simulations using proprietary software for the Debtors' power plants based upon market pricing and cost information

FTI CONSULTING, INC.
3 Times Square, 10th Floor
New York, NY 10036
(646) 453-1222 (Telephone)
Andrew Scruton

*Financial Advisor for the Official Committee*
*of Unsecured Creditors of Edison Mission Energy*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| EDISON MISSION ENERGY, *et al.*, | Case No. 12-49219 (JPC) |
| Debtors.[2] | Jointly Administered |

**APPLICATION OF FTI CONSULTING, INC., FINANCIAL ADVISOR FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF EDISON MISSION ENERGY, *ET AL.*,
FOR FINAL ALLOWANCE OF COMPENSATION AND FOR THE
REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED
<u>DURING THE PERIOD FROM JANUARY 7, 2013 THROUGH MARCH 11, 2014</u>**

FTI Consulting, Inc. ("FTI" or "Applicant"), financial advisor for the Official Committee of

Unsecured Creditors (the "Creditors' Committee") of Edison Mission Energy, *et al.* (collectively, the

"Debtors"), for its final application (the "Application") pursuant to sections 330 and 331 of title 11 of the

United States Code (the "Bankruptcy Code") for final allowance of compensation for services rendered

and for reimbursement of expenses incurred in connection therewith, respectfully states:

---

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Finance Co. (9202); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The Debtors' service address is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

## I.  INTRODUCTION

1.      This Application is submitted pursuant to the terms of the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (With Technical Modifications)* [ECF No. 2201] (the "Third Amended Plan"). By this Application, FTI seeks (i) final allowance and award of compensation for the professional services rendered by FTI as financial advisors for the Creditors' Committee for the period from January 7, 2013 through March 11, 2013 (the "Compensation Period") in the amount of $5,883,415.00, representing 10,139.0 hours of professional services, and (ii) reimbursement of actual and necessary expenses incurred by FTI during the Compensation Period in connection with the rendition of such professional services in the amount of $65,610.69.

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The bases for the relief requested herein are Bankruptcy Code section 330 and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III. BACKGROUND

3.      On December 17, 2012 (the "Petition Date"), seventeen of the Debtors (the "Original Debtors") filed petitions with this Court under chapter 11 of the Bankruptcy Code. On May 2, 2013, three additional Debtors (the "Homer City Debtors") filed petitions with this Court under chapter 11 of the Bankruptcy Code. The Court has approved procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 115, 154, 780]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 7, 2013 ("Committee Formation Date"), the U.S. Trustee for the Northern District of Illinois (the "U.S. Trustee") appointed an official committee of unsecured creditors

(the "Committee") in these chapter 11 cases [Docket No. 202] (as amended on January 18, 2013 [Docket

No. 308]).

4.        Pursuant to the *Order Granting Application of the Official Committee of Unsecured Creditors of*

*Edison Mission Energy, et al., to Retain and Employ FTI Consulting, Inc. as Financial Advisor Nunc Pro*

*Tunc to January 7, 2013* [ECF No. 527] (the "Retention Order"), the Committee was authorized to retain

and employ FTI, nunc pro tunc to January 7, 2013.

5.        The Committee selected FTI as its financial advisor because of the firm's extensive experience and

knowledge with regard to debtors and creditors' rights in business reorganizations under Chapter 11 of the

Bankruptcy Code. The members of FTI's Corporate Finance Group have served as the financial advisor to

debtors and creditors' committees in numerous Chapter 11 cases. Furthermore, FTI has the necessary

background and experience to deal effectively with the issues and problems that may arise in the context of

this bankruptcy case.

6.        On December 17, 2013, the Debtors filed the Debtors' Second Amended Joint Chapter 11 Plan of

Reorganization [ECF No. 1694] (the "Second Amended Plan") and the Second Amended Disclosure

Statement for the Debtors' Joint Chapter 11 Plan of Reorganization (the "Second Amended Disclosure

Statement").    On December 18, 2014, the Court held a hearing to consider the Second Amended

Disclosure Statement.    On December 19, 2014, the Court entered an order [ECF No. 1718] (the

"Disclosure Statement Order") approving the adequacy of the same and authorizing the Debtors to solicit

acceptances of the Second Amended Plan, and thereafter the Debtors filed solicitation versions of the

Second Amended Disclosure Statement [ECF No. 1721] and Second Amended Plan [ECF No. 1720].

Pursuant to the Second Amended Disclosure Statement, the original voting deadline was January 29, 2014.

7.        On February 19, 2014, the Debtors filed the Notice of Filing of EIX Settlement Agreement [ECF

No. 2071] (the "EIX Settlement") and the Debtors' Motion to Establish Certain Scheduling and Notice

Procedures for Confirmation of the Debtors' Modified Plan and Granting Related Relief [ECF No. 2074]

(the "Scheduling Motion") by which the Debtors sought approval of the form of notice with respect to the

EIX Settlement and establishment of certain scheduling procedures for confirmation.    After a hearing on

the Scheduling Motion, on February 19, 2014, the Court entered an order [ECF No. 2094] (the

"Scheduling Order") approving the relief requested in the Scheduling Motion and, among other things,

setting the date for creditors to change their vote on the Third Amended Plan for March 6, 2014.  On

February 20, 2014, the Debtors filed a version of the Third Amended Plan, which, among other things,

incorporated the terms of the EIX Settlement [ECF No. 2110].  On March 11, 2014, the Debtors filed the

final version of the Third Amended Plan.

8.       Following a hearing, on March 11, 2014 (the "Confirmation Date") this Court entered an order

confirming the Third Amended Plan [ECF No. 2206] (the "Confirmation Order").  On April 1, 2014, the

NRG Transaction (as defined herein) and the EIX Settlement were consummated, and the Third Amended

Plan became effective (the "Effective Date").  On the Effective Date, the Committee automatically

dissolved except with regard to certain subject matters enumerated in Article XIII.D of the Third Amended

Plan, including, but not limited to, matters related to applications for Accrued Professional Compensation

Claims (as defined in the Third Amended Plan).

## IV. <u>PRIOR FEE REQUESTS</u>

9.       On May 15, 2013, FTI filed its first interim fee application [ECF No. 763] (the "First Interim Fee

Application") for compensation for services rendered and for reimbursement of expenses incurred in

connection therewith during the period of January 7, 2013 through March 31, 2013 (the "First Interim

Compensation Period").  On July 3, 2013, the Court entered an order [ECF No. 997] (the "First Interim

Fee Order") granting interim allowance of 100% of fees and 100% of expenses requested in the First

Interim Fee Application for a total interim allowance of $1,882,954.84.

10.      On September 13, 2013, FTI filed its second interim fee application [ECF No. 1202] (the "Second

Interim Fee Application") for compensation for services rendered and for reimbursement of expenses

incurred in connection therewith during the period of April 1, 2013 through July 31, 2013 (the "Second

Interim Compensation Period").  On October 28, 2013, the Court entered an order [ECF No. 1438] (the

"Second Interim Fee Order") granting interim allowance of 100% of fees and 100% of expenses requested

in the Second Interim Fee Application for a total interim allowance of $1,995,816.38.

11.     On January 14, 2014, FTI filed its third interim fee application [ECF No. 1805] (the "Third

Interim Fee Application" and together with the First Interim Fee Application and Second Interim Fee

Application, the "Interim Fee Applications") for compensation for services rendered and for

reimbursement of expenses incurred in connection therewith during the period of August 1, 2013 through

November 30, 2013 (the "Third Interim Compensation Period").  On February 25, 2014, the Court entered

an order [ECF No. 2125] (the "Third Interim Fee Order") granting interim allowance of 100% of fees and

100% of expenses requested in the Third Interim Fee Application for a total interim allowance of

$1,379,030.23.

12.     In addition, pursuant to the Interim Compensation Order, FTI served the following monthly fee

statements on the Debtors, the U.S. Trustee and the appropriate notice parties for fees and expenses

incurred after the Third Interim Fee Period and prior to the Confirmation Date (the "Fourth Interim

Compensation Period"):

- Statement of Professional Fees for Services Rendered and Expenses Incurred for the Period of
  December 1, 2013 through December 31, 2013 (the "December Monthly Fee Statement") in the
  amounts of $295,514.00 for professional fees and $1,294.55 for expenses;

- Statement of Professional Fees for Services Rendered and Expenses Incurred for the Period of
  January 1, 2014 through January 31, 2014 (the "January Monthly Fee Statement") in the amounts
  of $198,531.50 for professional fees and $451.30 for expenses;

- Statement of Professional Fees for Services Rendered and Expenses Incurred for the Period of
  February 1, 2014 through February 28, 2014 (the "February Monthly Fee Statement") in the
  amounts of $159,688.50 for professional fees and $241.39 for expenses; and

- Statement of Professional Fees for Services Rendered and Expenses Incurred for the Period of
  March 1, 2014 through March 11, 2014 (the "March Monthly Fee Statement" and together with
  the December Monthly Fee Statement, January Monthly Fee Statement and February Monthly Fee
  Statement, the "Monthly Fee Statements") in the amounts of $35,467.50 for professional fees and
  $35.50 for expenses.

13.     Pursuant to the *Order Approving Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, dated January 17, 2013 [Docket No. 331] (the "Interim Compensation Order"), as of the date of this Application, FTI has received payment of (a) 80% of the fees requested and 100% of the expenses requested with respect to the December Monthly Fee Statement and the January Monthly Fee Statement and (b) none of the fees requested and none of the expenses requested with respect to the February Monthly Fee Statement or the March Monthly Fee Statement.

14.     As stated in the Affirmation of Andrew Scruton, annexed hereto as Exhibit A, all of the services for which interim compensation is sought were rendered for or on behalf of the Committee solely in connection with these chapter 11 cases.  There is no agreement or understanding between FTI and any other person for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

15.     The Interim Fee Applications and Monthly Fee Statements are incorporated herein by reference.

## IV. SUMMARY OF SERVICES RENDERED

16.     Since the Committee Formation Date, FTI has rendered professional services to the Creditors' Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors. The variety and complexity of the issues in these chapter 11 cases and the need to act or respond to such issues on an expedited basis in furtherance of the Creditors' Committee's needs required the expenditure of substantial time by FTI personnel, on an as-needed basis.

17.     FTI maintains written records of the time expended by professionals in the rendition of their professional services to the Creditors' Committee. Such time records were made contemporaneously with the rendition of services by the person performing such services and in the ordinary course of FTI's practice, and are presented in a form that is in compliance with the Local Bankruptcy Rules for the Northern District of Illinois (the "Local Rules"). A monthly compilation showing the name of the professional, the date on which the services were performed, a description of the services rendered, and

the amount of time spent in performing the services during the Compensation Period is annexed hereto as Exhibit B.

18.     FTI also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C.

19.     FTI respectfully submits that the professional services that it rendered on behalf of the Creditors' Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

20.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain areas in which services were rendered to the Creditors' Committee, as well as to identify some of the problems and issues that FTI was required to address during the Compensation Period.

   (i)     <u>1 & 101 – Current Operating Results & Events (695.3 hours)</u>

        FTI reviewed SEC filings, historical and projected financial statements, Debtor presentations, and reports prepared by other estate professionals in order to become familiar with the Debtors' operations, organizational structure, financial and operating performance, and the events leading to their current financial state. In addition, FTI reviewed monthly operating and financial reports produced by the Debtors as well as reviewed weekly trading risk reports.

   (ii)    <u>2 & 102 – Cash & Liquidity Analysis (1,018.1 hours)</u>

        FTI reviewed the Debtors' cash management motion and other documents provided by the Debtors in order to understand the Debtors' complex cash management system, the flow of funds among Debtor and non-Debtor entities, and the issues arising therefrom. This comprehensive analysis enabled FTI to assist counsel in negotiating a cash management order and reporting protocol that is to the benefit of all of the Debtors' unsecured creditors. FTI also

prepared a report for distribution to the Creditors' Committee outlining its findings and proposals for the final cash management order. Furthermore, FTI reviewed the cash flows attributed to the production tax credits and distributions from Viento Funding II, Inc. and High Lonesome Mesa, LLC to advise the Creditors' Committee on the reasonableness of the relief requested in the Motion to Authorize Continued Performance of Obligations under Renewable Energy Tax Credit Agreements and Payment of Prepetition Obligations Related Thereto. FTI also monitored the Debtors' short-term liquidity through a review of the Debtors' actual weekly cash flows as well as weekly cash flow forecasts.  In addition, FTI analyzed monthly cash settlements of intercompany balances between Debtors and between Debtors and non-Debtor affiliates and prepared monthly reports for the Creditors' Committee with respect thereto.

(iii)     7, 8, 107 & 108 – Analysis of Business Plan and Related Matters (797.2 hours)

FTI reviewed and evaluated the Debtors' operating plans and performance, including power market and related technical issues, capital expenditures and environmental compliance expenditures relating to Midwest Generation (including the achievability and reasonableness of underlying projections).  To support this review, and the valuation-related efforts of the Committee's co-financial advisor, FTI prepared Midwest Generation project scenario analyses using proprietary market models which forecasted future power generation of the Midwest Generation plants based upon assumptions of market demand, plant efficiency and coal price and other supply variables.  Time in this area also includes review and assessment of strategic alternatives at Midwest Generation. In addition, FTI reviewed the Debtors' new property insurance policy and analyzed the mechanics of the allocation of costs.  FTI subsequently prepared a report to the Committee summarizing its findings.

(iv)     9 – Analysis of Employee Compensation Programs (336.6 hours)

FTI provided a variety of services in connection with the Debtors' proposed long term incentive plan (the "LTIP").  Specifically, FTI reviewed the Debtors' proposed LTIP, prepared a market study in order to evaluate the appropriateness of the metrics used in the proposed LTIP

and worked with counsel to the Creditors' Committee to prepare to oppose the proposed LTIP in

the event a consensual resolution could not be achieved. In connection with the preparation of the

market study, FTI performed extensive research on incentive plans in recent chapter 11 cases of a

similar size and scope and. also reviewed the Debtors' incentive plan market study, and analyzed

and researched the comparable cases utilized in the Debtors' study. FTI's work in connection

with the LTIP enabled the Committee to negotiate an LTIP that is properly aligned with the

interests of the Debtors' unsecured creditors.

(v)     10 – Analysis of Tax Issues (1,565.8 hours)

FTI reviewed various tax related documents including, but not limited to, tax-sharing

agreements, historical consolidating tax returns, tax presentations prepared by the Debtors, and

models showing estimated projected tax sharing payments to be made under the various tax

sharing agreements. In addition, FTI conducted preliminary analyses to create its own model of

various scenarios as they relate to Edison Mission Energy under the tax-sharing agreements. All

of this tax analysis has allowed the Committee to remain informed about this complex part of the

Debtors' chapter 11 cases.  FTI also reviewed and performed diligence on historical and projected

tax sharing payment models in order to assess the value of the tax sharing agreements to EME.  In

addition, FTI prepared and presented to the Creditor's Committee various updates regarding

FTI's analysis of the tax sharing agreements.  FTI also analyzed the potential value of the tax

sharing agreements and potential tax implications of the NRG transaction and the Debtors'

proposed plan of reorganization.  In addition, FTI prepared various analyses in order to assess the

tax implications of the EIX Settlement, including how the structure of the settlement would affect

the Company's net operating losses and tax credits, and the impact of cancellation of debt income

on any settlement value. These analyses assisted counsel in their legal assessment of the potential

causes of action and also assisted in the evaluation of the appropriateness of the EIX Settlement

proposals from the perspective of all unsecured creditors.

(vi)    <u>12 & 112 – Analysis of SOFAs and SOALs (328.1 hours)</u>

FTI conducted a detailed review of the Debtors' Statements of Financial Affairs ("SOFAs") and Schedules of Assets and Liabilities ("SOALs") and formulated follow-up diligence requests in order to gain a complete understanding of the Debtors' financial position as of the filing date. FTI summarized the significant elements within the SOFAs and SOALs and prepared a report for presentation to the Creditors' Committee.

(vii)    <u>15 – Analysis of Intercompany Claims and Related Party Transactions (1,158.2 hours)</u>

FTI analyzed the intercompany shared services motion, intercompany loan documents, intercompany shared service agreements, financial statements, presentations/agreements related to Energy Mission Marketing and Trading, Inc. and various financial reports provided by the Debtors to help the Creditors' Committee understand the makeup of pre-petition and post-petition intercompany activity and balances. FTI also prepared a report to the Creditor's Committee summarizing the various intercompany shared service arrangements and corresponding cash impact, and provided recommendations related thereto. FTI also prepared a matrix of all intercompany balances between Debtors and between Debtors and non-Debtor affiliates as of November 2012, December 2012, January 2013, and February 2013, and analyzed intercompany cash settlements.  Further, FTI reviewed and performed diligence on all monthly post-petition intercompany balances between Debtors and between Debtors and non-Debtor affiliates and analyzed the activity during each month to ensure the Debtors were in compliance with the Final Cash Management Order.  FTI prepared numerous intercompany activity reports for the Committee detailing the findings of such analyses.

(viii)    <u>18 – Potential Avoidance Actions & Litigation (956.3 hours)</u>

FTI reviewed various documents relating to the EIX investigation including, but not limited to, historical shared services invoices, historical shared services schedules, presentations regarding EIX claims, and transcripts of interviews held with EME management regarding the EIX investigation.  In addition, FTI conducted various analyses relating to the EIX investigation,

including calculating the value inherent in potential settlement structures and assessing

preliminary estimates of potential damages. This work assisted counsel in formulating its strategy

regarding the potential causes of action.  Further, FTI evaluated, diligence, and analyzed drafts of

the settlement proposals from the perspective of all unsecured creditors and provided commentary

and feedback to counsel.

(ix)      <u>20 & 120 - General Meetings with Debtors & Debtors' Professionals (503.1 hours)</u>

FTI participated in various calls with the Debtors concerning numerous work streams,

including, but not limited to, review and analysis of the cash management system, the cash

management order, various cash flow forecasts, intercompany transactions, the business

operations of Edison Mission Marketing and Trading, Inc., the Debtors' proposed incentive plans,

tax investigation, intercompany shared services, diligence in connection with the Midwest

Generation financial model and restructuring scenarios, and the Debtors' SOFAs and SOALs, the

EIX investigation, new property insurance, and the proposed Kern River escrow agreement.

(x)       <u>21 & 121 – General Meetings with UCC & UCC Counsel (687.4 hours)</u>

FTI, together with the other Creditors' Committee professionals, held weekly telephonic

meetings with the Creditors' Committee to provide case updates, present findings from our

numerous work streams and answer questions from members of the Creditors' Committee. FTI

corresponded regularly with counsel and the co-financial advisors to the Creditors' Committee

regarding various case issues including, but not limited to, intercompany shared services,

intercompany transactions, the EIX investigation, cash management system and the cash

management order, the proposed LTIP, financial projections, and Midwest Generation

restructuring scenarios.

(xi)      <u>23 – Firm Retention (328.2 hours)</u>

FTI prepared a retention application and affidavit supporting FTI's retention, which

required a comprehensive review of its relationships with Debtor entities and related parties in

interest to identify the existence of any conflicts of interest.  FTI's retention was approved by the

Court on February 20, 2013.  In connection therewith, FTI prepared a benchmarking analysis of

comparable fee structures for financial advisors retained by official committees of unsecured

creditors in comparable chapter 11 cases and worked with counsel to define FTI's scope of

services so as to avoid duplication of efforts with the Committee's other professionals and to

minimize costs to the Debtors' estates.  FTI also prepared a supplemental retention affidavit

supporting FTI's continued retention, which required a comprehensive review of parties

identified in the retention affidavit and first supplemental affidavit for which no connection

existed at that time, plus any new parties identified and the parties included in the Debtors'

statement of financial affairs and schedules of assets and liabilities. FTI's relationships with all

aforementioned parties were reviewed to identify the existence of any possible conflicts of

interest.

## V. ALLOWANCE OF COMPENSATION

21.     The professional services rendered by FTI required a high degree of professional competence and

expertise so that the numerous issues requiring evaluation and determination by the Creditors' Committee

could be addressed with skill and efficiency and have, therefore, required the expenditure of substantial

time and effort. It is respectfully submitted that the services rendered to the Creditors' Committee were

performed efficiently, effectively and economically, and the results obtained to date have benefited not

only the members of the Creditors' Committee, but also the unsecured creditor body as a whole and the

Debtors' estates.

22.     With respect to the level of compensation, Bankruptcy Code section 330 provides, in pertinent

part, that the Court may award to a professional person "reasonable compensation for actual, necessary

services rendered. . . ." 11 U.S.C. § 330(a)(1). Further, Bankruptcy Code section 330(a)(3), provides that

> In determining the amount of reasonable compensation to be awarded, the court shall consider the
>
> nature, the extent, and the value of such services, taking into account all relevant factors,
>
> including –
>
> (A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(A). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

23.     The total time spent by FTI professionals during the Compensation Period was 10,139.0 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

24.     As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit D is a schedule of the hours expended by FTI professionals during the Compensation Period, his or her normal hourly rates, and the value of his or her services.

25.     Pursuant to the Interim Compensation Order, FTI's monthly fees are subject to a 20% holdback. By this Application, FTI respectfully requests final approval of all compensation earned during the Compensation Period, including all amounts subject to holdback and the fees requested in the February Fee Statement and March Fee Statement.

26.     FTI incurred actual out-of-pocket expenses in connection with the rendering of professional services to the Creditors' Committee during the Compensation Period in the amount of $65,610.69, for which FTI respectfully requests reimbursement in full. The disbursements and expenses have been

incurred in accordance with FTI's normal practice of charging clients for expenses clearly related to and required by particular matters. FTI has endeavored to minimize these expenses to the fullest extent possible.

27.    FTI's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, because the needs of each client for such services differ. FTI believes that it is fairest to charge each client only for the services actually used in performing services for it.

28.    No agreement or understanding exists between FTI and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these chapter 11 cases.

29.    No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

**WHEREFORE**, FTI respectfully requests that this Court enter an order substantially in the form attached hereto as Exhibit E:

(a) approving the allowance of $5,883,415.00 for compensation for professional services rendered to the Creditors' Committee during the period from January 7, 2013 through and including March 11, 2014;

(b) approving the reimbursement of FTI's out-of-pocket expenses incurred in connection with the rendering of such services during the period January 7, 2013 through and including March 11, 2014 in the amount of $65,610.69;

(c) authorizing and directing the Debtors to pay the unpaid fees and expenses awarded, including any amounts held back with respect to the Compensation Period; and

(d) granting such other and further relief as this Court may deem just and proper.


Dated:  New York, NY

April 30, 2014

**FTI CONSULTING, INC.**

**By:**   */s/ Andrew Scruton*
Andrew Scruton
3 Times Square, 10th Floor
New York, NY 10036
(646) 453-1222 (Telephone)
Andrew.Scruton@fticonsulting.com

*Financial Advisor for the Official Committee*
*of Unsecured Creditors of Edison Mission Energy*