**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDISON MISSION ENERGY, et al.,[1] | ) Case No. 12-49219 (JPC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR FINAL ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES INCURRED FOR THE PERIOD OF JANUARY 7, 2013 THROUGH MARCH 11, 2014**

**SUMMARY SHEET**

| | |
|---|---|
| Name of Applicant: | Blackstone Advisory Partners L.P. |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2013 *nunc pro tunc* to January 7, 2013 [ECF No. 85] |
| **Compensation Period**: | January 7, 2013 through March 11, 2014 |
| Fees Sought: | $4,938,709.68 |
| Expenses Incurred: | $24,919.13 |
| Cash Payment Sought: | $2,915,161.29 |

The total time expended for the preparation of this application was 4 hours and the corresponding compensation requested is $0.00.

This is a ___ monthly    ___ interim    _x_ final application

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The Debtors' service address is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| EDISON MISSION ENERGY, et al.,[1] | ) Case No. 12-49219 (JPC) |
| Debtors. | ) Jointly Administered |

**APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR FINAL ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES INCURRED FOR THE PERIOD OF JANUARY 7, 2013 THROUGH MARCH 11, 2014**

Blackstone Advisory Partners L.P. ("Blackstone"), investment banker and financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of Edison Mission Energy, et al., (the "Debtors") respectfully represents:

### I. Background

1. On December 17, 2012 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The Debtors' service address is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

3. On January 7, 2013 (the "Committee Formation Date"), pursuant to Bankruptcy section 1102, the United States Trustee for the Northern District of Illinois, Eastern Division (the "Trustee") appointed the Committee [ECF No. 114].

4. On January 17, 2013, the Court entered an order (the "Procedures Order") [ECF No. 331] establishing procedures for interim compensation and reimbursement of expenses for professionals.

5. On February 6, 2013, the Committee applied to the Court for an order [ECF No. 428] authorizing the retention and employment of Blackstone *nunc pro tunc* to the January 7, 2013, pursuant to the terms of an engagement agreement (the "Engagement Agreement") between the Committee and Blackstone dated January 7, 2013. A copy of the Engagement Agreement is attached hereto as Appendix B.

6. On February 20, 2013, the Court entered an order (the "Retention Order") [ECF No. 85] pursuant to sections 328(a) and 1103 of the Bankruptcy Code authorizing the employment and retention of Blackstone as investment banker and financial advisor to the Committee *nunc pro tunc* to the January 7, 2013. A copy of the Retention Order is attached hereto as Appendix C.

7. On March 11, 2014, the Court entered an order [ECF No. 2206] confirming the Debtors' *Joint Chapter 11 Plan of Reorganization* (the "Plan"). On April 1, 2014, the Plan became effective and the Reorganized Debtors emerged from chapter 11 protection.

8. Blackstone submits this final fee application (the "Final Application") for (i) final allowance and approval of compensation for actual and necessary professional services rendered by it as financial advisor to the Committee during the period of January 7, 2013 through March 11, 2014 (the "Compensation Period"); (ii) the final allowance and approval of Blackstone's Restructuring Fee; and (iii) the reimbursement of out-of-pocket expenses incurred during the Compensation Period.

9. Pursuant to the terms of the Engagement Agreement, as approved by the Retention Order, Blackstone is entitled to be compensated for its services under the Engagement Agreement, as approved by the Retention Order, as follows:[2]

(a) A monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of the Engagement Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date. Fifty percent of all Monthly Fees beginning with the tenth Monthly Fee payment shall be credited against the Restructuring Fee (described below);

(b) An additional fee (the "Restructuring Fee") equal to $3,250,000. Except as otherwise provided in the Engagement Agreement, a Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of the Debtors, upon an order of the Bankruptcy Court approving such sale or other disposition. The Restructuring Fee will be earned on completion of a Restructuring; and

(c) Reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

## II. Services Provided By Blackstone during the Compensation Period

10. The nature of the work performed by Blackstone during the Compensation Period included the following:

### Business and Operations

- Multiple meetings with the Debtors' management team, independent directors and advisors to conduct diligence on the Debtors' business;

- Conducting ongoing due diligence regarding the operations and financial condition of the Debtors;

- Reviewing supporting documentation of EME related to the business units;

---

[2] This description of Blackstone's compensation structure is for summary and illustrative purposes only. The terms of the Engagement Agreement and the Retention Order shall apply to any such compensation awarded to Blackstone.

### Midwest Generation and the PoJo Leases

- Facilitating and engaging in discussions with various strategic parties with respect to restructuring alternatives for Debtor Midwest Generation ("MWG") and the leases (the "PoJo Leases") for the Powerton and Joliet facilities (the "PoJo Facilities");

- Assessing the cash flows of MWG in order to assess the Debtors' alternatives with respect to the PoJo Leases and the PoJo Facilities;

- Preparing and analyzing models regarding potential recoveries and outcomes for creditors under a variety of possible scenarios with respect to the PoJo Leases and the PoJo Facilities;

### NRG Bid Analysis

- Analyzing the NRG bid, including distributable value and recoveries given various scenarios and assumptions;

- Analyzing potential purchase price adjustments based on operating results, outlooks, and cash flow projections;

- Performing due diligence on final purchase price adjustment based on operating results and cash balance;

- Participating in due diligence and term sheet negotiations relating to NRG's bid;

### Restructuring Plan

- Reviewing all versions of, and amendments to, the Plan and Plan Supplement and providing guidance to the Committee regarding the same;

### Unsecured Creditor Distribution Analysis

- Providing the Committee with updates on unsecured creditors' recovery value as new closing projections were distributed by the Debtors;

- Analyzing payout distribution schedule to unsecured creditors under the NRG bid in conjunction with the proposed EIX settlement;

- Reviewing wind down budget, advisors' success fees, incentive payments, closing cash balances and disputed claims reserves under various closing assumptions;

### JPMorgan M&A Process

- Reviewing, summarizing, and presenting all bids received by JPMorgan as part of their M&A process;

- Analyzing distributable value and recoveries with various combinations of bids given various assumptions and scenarios;

### Miscellaneous

- Reviewing the Debtors first day motions, including the short term incentive plan ("STIP"), long term incentive plan ("LTIP") and professional retentions;

- Negotiating the STIP and LTIP with the Debtors;

- Assessing various financing alternatives for the Debtors' credit facilities;

- Providing updates and strategic advice to the Committee, as appropriate, regarding developments in the case;

- Participating in weekly conference calls with Debtors' advisors and advisors to other parties in interest to discuss key developments in the case and issues related to the Debtors' business operations; and

- Participating in weekly conference calls with the Committee and their advisors to provide, among other things, updates on matters such as the status of business operations and discussions with various creditor groups.

### III. The Blackstone Team

11. The financial advisory services set forth above were performed primarily by: Michael Genereux, Senior Managing Director; Jonathan Lurvey, Managing Director; Eli Silverman, Associate; Yixiao Liu, Associate; Sharp McGivaren, Analyst; Frank Zhang, Analyst; Christopher Ramesh[3], Analyst; Eric Shoykhet[4], Analyst; Alexander Lue[4], Analyst; and other professionals of Blackstone, as needed. Details of the background and experience of the professionals are provided in Appendix D.

---

[3] Christopher Ramesh, Eric Shoykhet and Alexander Lue are no longer employed at Blackstone.

### IV. Blackstone's Prior Fee Requests

12. On May 15, 2013, Blackstone filed its first interim fee application [ECF No. 762] (the "First Interim Application") for compensation for services rendered and for reimbursement of expenses incurred in connection therewith during the period of January 7, 2013 through March 31, 2013 (the "First Interim Period").  On July 3, 2013, the Court entered an order [ECF No. 998] approving Blackstone's First Interim Application for the allowance of Monthly Fees in the amount of $420,967.74, and the reimbursement of out-of-pocket expenses incurred in the amount of $4,434.71 for the First Interim Period. As of the date of this Final Application, Blackstone has received payment in the amount of $420,967.74 for all Monthly Fees earned, and reimbursement of out-of-pocket expenses incurred in the amount of $4,434.71 for the First Interim Period.

13. On September 13, 2013, Blackstone filed its second interim fee application [ECF No. 1200] (the "Second Interim Application") for compensation for services rendered and for reimbursement of expenses incurred in connection therewith during the period of April 1, 2013 through July 31, 2013 (the "Second Interim Period").  On October 28, 2013, the Court entered an order [ECF No. 1440] approving Blackstone's Second Interim Application for the allowance of Monthly Fees in the amount of $600,000.00, and the reimbursement of out-of-pocket expenses incurred in the amount of $8,534.42 for the Second Interim Period. As of the date of this Final Application, Blackstone has received payment in the amount of $600,000.00 for all Monthly Fees earned, and reimbursement of out-of-pocket expenses incurred in the amount of $8,534.42 for the Second Interim Period.

14. On January 14, 2014, Blackstone filed its third interim fee application [ECF No. 1797] (the "Third Interim Application" and together with the First Interim Application and Second Interim Application, the "Interim Applications") for compensation for services rendered and for

reimbursement of expenses incurred in connection therewith during the period of August 1, 2013 through November 30, 2013 (the "Third Interim Fee Period"). On February 25, 2014, the Court entered an order [ECF No. 2132] approving Blackstone's Third Interim Application for the allowance of Monthly Fees in the amount of $600,000.00, and the reimbursement of out-of-pocket expenses incurred in the amount of $9,220.60 for the Third Interim Period. As of the date of this Final Application, Blackstone has received payment in the amount of $600,000.00 for all Monthly Fees earned, and reimbursement of out-of-pocket expenses incurred in the amount of $9,220.60 for the Third Interim Period.

15. In addition, pursuant to the *Order Approving Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members*, dated January 17, 2013 [ECF No. 331] (the "Interim Compensation Order"), Blackstone served the following monthly fee statements on the Debtors, the U.S. Trustee and the appropriate notice parties for fees and expenses incurred after the Third Interim Fee Period and prior to the Confirmation Date (the "Fourth Interim Period" and together with the First Interim Period, Second Interim Period and Third Interim Period, the "Interim Periods"):

- *Eleventh Monthly Statement of Blackstone Advisory Partners L.P. for Compensation and Reimbursement of Expenses for the period of December 1, 2013 through December 31, 2013* (the "December Monthly Fee Statement") in the amounts of $150,000.00 for Monthly Fees and $915.65 for expenses;

- *Twelfth Monthly Statement of Blackstone Advisory Partners L.P. for Compensation and Reimbursement of Expenses for the period of January 1, 2014 through January 31, 2014* (the "January Monthly Fee Statement") in the amounts of $150,000.00 for Monthly Fees and $370.60 for expenses;

- *Thirteenth (Cumulative) Monthly Statement of Blackstone Advisory Partners L.P. for Compensation and Reimbursement of Expenses for the period of February 1, 2014 through March 11, 2014* (the "February/March Monthly Fee Statement" and together with the December Monthly Fee Statement and January Monthly Fee Statement, the "Monthly Fee Statements") in the amounts of $203,225.81 for Monthly Fees and $1,443.55 for expenses.

16. Pursuant to the Interim Compensation Order, as of the date of this Final Application, Blackstone has received payment of 80% of the fees requested and 100% of the expenses requested with respect to the December, January and February/March Monthly Fee Statements.[4]

17. As stated in the Affirmation of Michael Genereux, annexed hereto as <u>Appendix A</u>, all of the services for which final compensation is sought were rendered for or on behalf of the Committee solely in connection with these chapter 11 cases. There is no agreement or understanding between Blackstone and any other person for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

18. The Interim Applications and Monthly Fee Statements are incorporated herein by reference.

### V. **Blackstone's Request for Compensation and Reimbursement of Expenses**

19. With respect to the level of compensation, Bankruptcy Code section 330 provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered. . . ." 11 U.S.C. § 330(a)(1). Further, Bankruptcy Code section 330(a)(3), provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) The time spent on such services;
>
> (B) The rates charged for such services;
>
> (C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

---

[4] Pursuant to the Interim Compensation Order, the deadline for notice parties to object to the February/March Monthly Fee Statement was April 25, 2014.

    (E) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

20. 11 U.S.C. §330(a)(3)(A).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

### VI. Blackstone's Request for Allowance of Monthly Advisory Fees Earned, and Reimbursement of Out-Of-Pocket Expenses Incurred, for the Compensation Period

21. A summary of all fees earned and out-of-pocket expenses applied for and received to date is provided in the table below:

| Advisory Periods | Fees | Expenses | Payment(s) Received | Amount(s) Due |
|---|---|---|---|---|
| **First Interim Period** | | | | |
| 01/07/13 – 01/31/13[5] | $120,967.74 | $930.64 | ($121,898.38) | $-- |
| 02/01/13 – 02/28/13 | 150,000.00 | 3,414.77 | (153,414.77) | -- |
| 03/01/13 – 03/31/13 | 150,000.00 | 88.90 | (150,088.90) | -- |
| Subtotal | $420,967.74 | 4,434.31 | (425,402.05) | -- |
| **Second Interim Period** | | | | |
| 04/01/13 – 04/30/13 | 150,000.00 | -- | (150,000.00) | -- |
| 05/01/13 – 05/31/13 | 150,000.00 | -- | (150,000.00) | -- |
| 06/01/13 – 06/30/13 | 150,000.00 | 5,891.29 | (155,891.29) | -- |
| 07/01/13 – 07/31/13 | 150,000.00 | 2,643.13 | (152,643.13) | -- |
| Subtotal | 600,000.00 | 8,534.42 | (608,534.42) | -- |
| **Third Interim Period** | | | | |
| 08/01/13 – 08/31/13 | 150,000.00 | 2,743.44 | (152,743.44) | -- |
| 09/01/13 – 09/30/13 | 150,000.00 | 1,656.08 | (151,656.08) | -- |
| 10/01/13 – 10/31/13 | 150,000.00 | 3,460.49 | (153,460.49) | -- |
| 11/01/13 – 11/30/13 | 150,000.00 | 1,360.59 | (151,360.59) | -- |
| Subtotal | 600,000.00 | 9,220.60 | (609,220.60) | -- |
| **Fourth Interim Period** | | | | |
| 12/01/13 – 12/31/13 | 150,000.00 | 915.65 | (120,915.65) | 30,000.00 |
| 01/01/14 – 01/31/14 | 150,000.00 | 370.60 | (120,370.60) | 30,000.00 |
| 02/01/14 – 02/28/14 | 150,000.00 | 1,443.55 | (121,443.55) | 30,000.00 |
| 03/01/14 – 03/11/14[6] | 53,225.81 | -- | (42,580.65) | 10,645.16 |
| Restructuring Fee | 2,814,516.13 | -- | -- | 2,814,516.13 |
| Subtotal | 3,317,741.94 | 2,729.80 | (405,310.45) | 2,915,161.29 |
| **Total(s)** | **$4,938,709.68** | **$24,919.13** | **($2,048,467.52)** | **$2,915,161.29** |

22. The amount of the fees and out-of-pocket expenses sought in this Final Application and Blackstone's billing processes are consistent with market practices both in and out of a bankruptcy context. Blackstone has never billed its clients based on the number of hours expended by its professionals. Blackstone has, however, maintained contemporaneous time records in one-half hour increments. Details of the hours expended by Blackstone professionals in providing financial advisory services to the Committee during the Fourth Interim Period are provided in Appendix E.

---

[5] Pro-rated Monthly Fee calculated as follows: 25 days out of 31 days, multiplied by $150,000.00.
[6] Pro-rated Monthly Fee calculated as follows: 11 days out of 31 days, multiplied by $150,000.00.

Details of the hours expended by Blackstone professionals during the First, Second and Third Interim Periods are provided in <u>Appendix F</u> for reference purposes only.

23. A summary of the 811.0 hours worked by Blackstone professionals during the Fourth Interim Period is summarized below:

**Summary of Hours Expended during the Fourth Interim Period**

| Professional | December 2013 | January 2014 | February 2014 | March 1 – 11, 2014 | Total Hours |
|---|---|---|---|---|---|
| Michael Genereux | 29.0 | 32.0 | 34.0 | 15.0 | 110.0 |
| Jonathan Lurvey | 22.0 | 21.0 | 30.0 | 19.0 | 92.0 |
| Eli Silverman | 37.0 | 53.0 | 50.0 | 23.0 | 163.0 |
| Yixiao Liu | 32.0 | 29.0 | 48.0 | 19.0 | 128.0 |
| Sharp McGivaren | 45.0 | 58.0 | 62.0 | 26.0 | 191.0 |
| Frank Zhang | 32.0 | 31.0 | 47.0 | 17.0 | 127.0 |
| **Total** | **197.0** | **224.0** | **271.0** | **119.0** | **811.0** |

24. A summary of the hours expended by Blackstone professionals in providing financial advisory services to the Committee by Interim Period is outlined below:

**Summary of Hours By Interim Period**

| Professional | First | Second | Third | Fourth | Total Hours |
|---|---|---|---|---|---|
| Michael Genereux | 229.0 | 224.0 | 169.0 | 110.0 | **732.0** |
| Jonathan Lurvey | 300.0 | 216.0 | 220.0 | 92.0 | **828.0** |
| Eli Silverman | -- | -- | 200.0 | 163.0 | **363.0** |
| Yixiao Liu | 419.0 | 310.0 | 256.0 | 128.0 | **1,113.0** |
| Bradley Feingerts | 340.0 | 271.0 | -- | -- | **611.0** |
| Sharp McGivaren | 0.0 | 59.0 | 255.0 | 191.0 | **505.0** |
| Frank Zhang | 0.0 | 136.0 | 278.0 | 127.0 | **541.0** |
| Christopher Ramesh | 427.0 | 173.0 | -- | -- | **600.0** |
| Eric Shoykhet | -- | 67.0 | -- | -- | **67.0** |
| Alexander Lue | 382.0 | 162.0 | -- | -- | **544.0** |
| **Total** | **2,097.0** | **1,618.0** | **1,378.0** | **811.0** | **5,904.0** |

25. Out-of-pocket expenses incurred by Blackstone are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Blackstone does not factor general overhead expenses into disbursements charged to its clients in connection with chapter 11 cases. Blackstone has followed its general internal policies with respect to out-of-pocket expenses billed as set forth below, with any exceptions specifically explained.

(a) All airfare charges billed are based on coach rates.

(b) With respect to local travel, Blackstone's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on client specific matters.

(c) Blackstone's general policy permits its professionals to charge in-office dinner meals to a client who have worked 3 hours beyond their regularly scheduled workday if the employee is required to provide services to the client during such dinnertime.

(d) The Document Production category of expenses includes charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to Blackstone, and charges for internal photocopying services provided by Blackstone. Blackstone bills internal Document Production charges at the rate of $0.11 per page for black and white photocopies, and $0.285 per page for color photocopies.

(e) The Publishing Services category of expenses includes charges for the production of text-based publications such as memoranda and presentations, and printing and binding services.

(f) The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to Blackstone. The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Blackstone. The Internal Research category of expenses are the charges for time spent by Blackstone research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(g) Blackstone bills outgoing long-distance facsimile charges at a rate of $1.25 per page. Blackstone does not bill local or incoming facsimile charges to clients.

26. Blackstone respectfully submits that the out-of-pocket expenses recognized during the Compensation Period for which Blackstone seeks reimbursement was necessary and reasonable both in scope and amount. Invoices detailing the out-of-pocket expenses recognized during the Fourth Interim Period are provided in Appendix G. Invoices detailing out-of-pocket expenses recognized during the First, Second and Third Interim Periods are provided in Appendix H for reference purposes only.

## VII. Blackstone's Request for Allowance of Restructuring Fee Earned for the Compensation Period

27. Blackstone respectfully submits that it has earned the Restructuring Fee in the amount of $2,814,516.13 calculated as follows:

| **Restructuring Fee** | |
|---|---:|
| Gross Restructuring Fee | $3,250,000.00 |
| Less: Credit of Monthly Fees[7] | (435,483.87) |
| **Net Restructuring Fee** | **$2,814,516.13** |

28. As set forth in the Engagement Agreement, as approved by the Retention Order, Blackstone is entitled to a Restructuring Fee upon the completion of a "Restructuring." Pursuant to the Engagement Agreement, a "Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of the Company, upon an order of the Bankruptcy Court approving such sale or other disposition. The Restructuring Fee will be earned on completion of a Restructuring and will be payable, in cash, on the consummation of a restructuring . . ." which occurred on April 1, 2014.

---

[7] Amount reflects a 50% credit of all Monthly Fees invoiced ($870,967.74) beginning with the tenth monthly anniversary of the effective date (i.e., January 7, 2013) in accordance with the Engagement Agreement, as approved by the Retention Order.

29. Blackstone respectfully submits that the services it has rendered to the Committee have been necessary and have furthered the goals of all parties in interest. Blackstone also submits that the compensation sought in this Final Application for services rendered by Blackstone to the Committee during the First through Fourth Interim Periods, including the Restructuring Fee, is fully justified and reasonable based upon (a) the time and labor required, (b) the complexity of the issues presented, (c) the skill necessary to perform the financial advisory services properly, (d) the preclusion of other employment, (e) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case and (g) the experience, reputation and ability of the professionals rendering services.

## VIII. Requested Relief

**WHEREFORE**, Blackstone requests the Court enter an order substantially in the form attached hereto as Appendix I to:

(a) Approve the final allowance of (i) Blackstone's Monthly Fees in the amount of $2,124,193.55; (ii) Blackstone's Restructuring Fee in the amount of $2,814,516.13; and (iii) the reimbursement of out-of-pocket expenses incurred in the amount of $24,919.13 during the Compensation Period.

(b) Authorize and direct payment to Blackstone for its unpaid Monthly Fees, Restructuring Fee, and out-of-pocket expenses for the Compensation Period as follows:

| | |
|---|---:|
| Monthly Fees | $503,225.81 |
| Restructuring Fee | 2,814,516.13 |
| Out-Of-Pocket Expenses | 2,729.80 |
| Less: Payments Received | (405,310.45) |
| **Amount Due Blackstone** | **$2,915,161.29** |

(c) Grant such other and further relief as the Court deems just and proper.

Dated:   April 30, 2014

Blackstone Advisory Services L.P.
Financial Advisor to the Committee

By:_____

Michael Genereux
Senior Managing Director
345 Park Avenue
New York, NY 10154