**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| EDISON MISSION ENERGY, <u>et al.</u>,[1] | ) | Case No. 12-49219 (JPC) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF FIRST AND FINAL FEE APPLICATION OF**
**J.P. MORGAN SECURITIES LLC, AS FINANCIAL ADVISOR**
**FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
<u>FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED</u>

**PLEASE TAKE NOTICE** that J.P. Morgan Securities LLC has filed the *First and Final Fee Application of J.P. Morgan Securities LLC, as Financial Advisor for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* (the "<u>Final Fee Application</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Final Fee Application will be held before the Honorable Jacqueline P. Cox, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 680, Chicago, Illinois 60604, on **June 18, 2014, at 10:30 a.m. (Central Time).**

**PLEASE TAKE FURTHER NOTICE** that any objection to the Final Fee Application must be filed with the Court by **June 11, 2014, at 4:00 p.m. (Central Time)** and served by such time on (a) Carsten Woehrn, Managing Director, J.P. Morgan Securities LLC; (b) counsel to EME Reorganization Trust and the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); (c) the Office of the U.S. Trustee for the Northern District of Illinois; (d) counsel to the official committee of unsecured creditors appointed to these chapter 11 cases; and (e) counsel to the ad hoc committee of certain holders of the Debtors' senior unsecured notes.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Finance Co. (9202); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The service address for EME Reorganization Trust is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the case website maintained by GCG, Inc., the Debtors' notice and claims agent for these chapter 11 cases, available at www.edisonmissionrestructuring.com or by calling (866) 241-6491.  You may also obtain copies of any pleadings by visiting this Court's website at www.ilnb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  April 30, 2014              */s/ Carsten Woehrn*
                                    Carsten Woehrn
                                    J.P. MORGAN SECURITIES LLC
                                    Managing Director
                                    383 Madison Avenue
                                    New York, New York 10179

KE 31424654

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**COVER SHEET FOR FIRST AND FINAL FEE APPLICATION OF**
**J.P. MORGAN SECURITIES LLC, AS FINANCIAL ADVISOR FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION, FOR COMPENSATION FOR PROFESSIONAL**
**SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND**
**NECESSARY EXPENSES INCURRED**

Name of Applicant:                                            J.P. Morgan Securities LLC

Authorized to Provide Professional Services to:   Edison Mission Energy, et al.

Date of Order Authorizing Retention:              July 17, 2013

Period for which Compensation and                July 17, 2013 through March 11, 2014[2]
Reimbursement is Sought:

Amount of Compensation Sought as Actual,         $11,000,000.00
Reasonable and Necessary:

Amount of Expense Reimbursement Sought as        $96,189.81
Actual, Reasonable and Necessary:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).

[2]   This Application includes fees and expenses accrued during the period July 17, 2013 through March 11, 2014. For the avoidance of doubt, JPM will seek reimbursement from the Debtors, in the ordinary course of business, for reasonable expenses incurred from and after March 11, 2014, in accordance with the terms of its Engagement Letter and the Plan.

Total Compensation and Expense             $11,096,189.81
Reimbursement Requested:

This is a(n):          ☐  Interim Application      ☒  Final Application
This is the first application filed herein by this professional.

**SUMMARY OF HOURS WORKED BY PROFESSIONAL DURING THE PERIOD**

**July 17, 2013 Through March 11, 2014**

| Professional | Position | Total Hours |
|---|---|---|
| Paul Dabbar | Managing Director | 49.0 |
| Carsten Woehrn | Managing Director | 138.0 |
| Richard McDonough | Managing Director | 78.0 |
| Neil Davids | Vice President | 233.5 |
| Alexandre Galarneau-Micone | Associate | 620.0 |
| Zachary Gross | Analyst | 492.0 |
| Michael Biblowit | Analyst | 118.0 |
| Ashley Edwards | Analyst | 476.0 |
| Sung Hyun Hong | Analyst | 251.0 |
| Edward Kim | Summer Associate | 108.5 |

**Summary of the Total Amount of Fees Incurred During the Period**
**July 17, 2013 Through March 11, 2014**

| Matter Description | Total Fees Requested |
|---|---|
| Transaction Fee | $11,000,000.00 |
| **Total** | **$11,000,000.00** |

**Summary of the Total Amount of Expenses Incurred During the Period**
**July 17, 2013 Through March 11, 2014**

| Expense Categories | Total Expenses Requested |
|---|---|
| Business Meals | $5,629.62 |
| Telephone Charges | $500.54 |
| External Research | $9,459.09 |
| Ground Transportation | $4,935.54 |
| Reproduction | $15,328.00 |
| Travel Expenses | $21,402.27 |
| Outside Legal Fees | $38,934.75 |
| **Total** | **$96,189.81** |

Dated: April 30, 2014
       New York, New York

By:   */s/ Carsten Woehrn*
      Carsten Woehrn
      J.P. MORGAN SECURITIES LLC
      Managing Director
      383 Madison Avenue
      New York, New York 10179

5

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDISON MISSION ENERGY, <u>et al.</u>,[1] | ) Case No. 12-49219 (JPC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**FIRST AND FINAL FEE APPLICATION OF J.P. MORGAN SECURITIES LLC, AS FINANCIAL ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED <u>DURING THE PERIOD FROM JULY 17, 2013 THROUGH MARCH 11, 2014</u>**

J.P. Morgan Securities LLC ("<u>JPM</u>"), financial advisor for the above-captioned debtors

and debtors in possession (collectively, the "<u>Debtors</u>"), hereby submits its first and final

application (the "<u>Application</u>") pursuant to (i) sections 327(a) and 328(a) of title 11 of the United

States Code (the "<u>Bankruptcy Code</u>"), (ii) Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), (iii) Rule 5082-1 of the Local Rules of the United States

Bankruptcy Court for the Northern District of Illinois (the "<u>Local Rules</u>"), (iv) the *Order*

*Approving Procedures for Interim Compensation and Reimbursement of Expenses for*

*Professionals and Official Committee Members* [Docket No. 331] (the "<u>Interim Compensation</u>

<u>Order</u>") and (v) the *Order Authorizing the Employment and Retention of J.P. Morgan Securities*

*LLC as Financial Co-Advisor for the Debtors and Debtors in Possession* [Docket No. 1021] (the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).

"Retention Order"), for final allowance of compensation for services rendered and reimbursement of expenses incurred in connection therewith during the period from July 17, 2013 through March 11, 2014 (the "Application Period"), and respectfully requests that this Court enter an order (the "JPM Order"), substantially in the form attached hereto as Exhibit A, and in support thereof respectfully states as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 5082-1.

## Background

3.      Edison Mission Energy ("EME"), together with its Debtor and non-Debtor affiliates, is a leading independent power-producing enterprise specializing in developing, operating, and selling energy and capacity from approximately 40 generating facilities in 12 states and the Republic of Turkey.  The Debtors have approximately 750 employees and maintain headquarters in Chicago, Illinois, and Santa Ana, California.

4.      On December 17, 2012, seventeen of the Debtors filed petitions with this Court under chapter 11 of the Bankruptcy Code. On May 2, 2013, three additional Debtors filed petitions with this Court under chapter 11 of the Bankruptcy Code.  The Court approved procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 115, 154, 780].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  On January 7, 2013, the U.S. Trustee for the Northern District of

Illinois appointed an official committee of unsecured creditors (the "Committee") in these

chapter 11 cases [Docket No. 202] (as amended on January 18, 2013 [Docket No. 308]).

5.       On March 11, 2014, the Court entered an order confirming the *Debtors' Third

*Amended Joint Chapter 11 Plan of Reorganization (with Technical Modifications)* [Docket No.

2201, Ex. A] (the "Plan").  Among other things, the Plan contemplates a sale of substantially all

of EME's assets (including its equity interests in its subsidiaries) to NRG Energy, Inc. and NRG

Energy Holdings, Inc. pursuant to the Asset Purchase Agreement (the "NRG Agreement"), dated

as of October 17, 2013.  On April 1, 2014, the Plan became effective [Docket No. 2260].

## Retention of JPM

6.       On June 26, 2013, the Debtors filed an Application (the "JPM Retention

Application") for an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and

Bankruptcy Rules 2014 and 2016 seeking authorization to retain JPM as its financial co-advisor

[Docket No. 936].  On July 17, 2013, the Court entered the Retention Order, attached hereto as

Exhibit B, which authorized the Debtors to retain JPM as financial co-advisor, effective as of

July 17, 2013, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  The Retention

Order authorizes the Debtors to compensate JPM in accordance with the procedures set forth in

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and

any applicable Court orders, including the Interim Compensation Order.

## Disinterestedness of JPM

7.       As disclosed in the *Declaration of Carsten Woehrn in Support of Debtors'*

*Application to Employ and Retain J.P. Morgan Securities LLC as Financial Co-Advisor*, filed on

June 26, 2013 [Docket No. 936, Ex. B], the *Supplemental Declaration of Carsten Woehrn in*

3

*Support of Debtors' Application to Employ and Retain J.P. Morgan Securities LLC as Co-Financial Advisor*, filed on July 16, 2013 [Docket No. 1016], and the *Second Supplemental Declaration of Carsten Woehrn in Support of Debtors' Retention of J.P. Morgan Securities LLC as Co-Financial Advisor*, filed on August 26, 2013 [Docket No. 1140] (collectively, the "JPM Declarations"), JPM does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

8.       JPM may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  JPM has disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts as part of the JPM Declarations.

## Compensation

9.       Pursuant to the engagement letter between the Debtors and JPM, dated June 20, 2013, as amended, a copy of which is attached hereto as Exhibit C (the "Engagement Letter"), as approved and modified by the Retention Order, in consideration for the services provided, the Debtors have agreed to pay JPM, pursuant to sections 327 and 328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court, a transaction fee (the "Transaction Fee") in an amount equal to a percentage of the cumulative Consideration (as defined in the Engagement Letter) paid or payable to the Debtors in connection a Transaction (as defined in the Engagement Letter), for an aggregate amount of $11,000,000.00.

10.      The Transaction Fee, as described above, became payable upon the closing of the sale of substantially all of the Debtors' assets (the "Sale") pursuant to the NRG Agreement, which occurred on April 1, 2014 (the "Closing Date").  Pursuant to the Engagement Letter and

4

Retention Order, JPM is due, payable in cash, a Transaction Fee for services performed during

the Application Period, upon the Closing Date.

11.    Additionally, JPM is also entitled to reimbursement for all approved out-of-

pocket expenses incurred by JPM in connection with the engagement.

12.    JPM now files this Application requesting that the Court allow compensation for

professional services rendered to the Debtors during the Application Period on a final basis in the

aggregate amount of $11,000,000.00 and reimbursement of actual and necessary expenses

incurred in connection with rendering such services in the aggregate amount of $96,189.81.

13.    This Application is JPM's first and final request for compensation for services

rendered and reimbursement of expenses incurred as financial advisor to the Debtors.

### Relief Requested

14.    By this Application, JPM seeks entry of an order (i) granting final allowance of

compensation for the professional services rendered by it as financial advisor for the Debtors

during the Application Period, consisting of the Transaction Fee in the amount of

$11,000,000.00, plus reimbursement of actual and necessary expenses incurred by JPM during

the Application Period in the amount of $96,189.81, for a total of $11,096,189.81; and

(ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees and

expenses.

15.    JPM has not entered into any agreement, express or implied, with any party in

interest for the purpose of fixing or sharing fees or other compensation to be paid for

professional services rendered in these cases.

16.    The fees charged by JPM during the Application Period have been billed in

accordance with the Retention Order and the Engagement Letter.  The fees that JPM is charging

5

for the services rendered by its professionals in these chapter 11 cases are comparable to the fees

charged by JPM for professional services rendered in comparable non-bankruptcy related

matters.  Such fees are reasonable based on the customary compensation charged by similarly

skilled practitioners in comparable non-bankruptcy cases.

17.    Pursuant to the Retention Order, a summary of JPM's time records for the

Application Period is annexed hereto as Exhibit D.  As set forth in the JPM Retention

Application, it is not the general practice of investment banking firms, including JPM, to keep

detailed time records similar to those customarily kept by attorneys and other professionals who

are compensated on an hourly basis.  JPM's investment banking professionals, when formally

retained in chapter 11 cases and when required by local rules, and in these chapter 11 cases have

kept time records describing their general daily activities, the identity of investment banking

professionals who performed such activities, and the estimated amount of time expended on such

activities on a daily basis.  Consistent with the terms of the Retention Order, however, JPM has

maintained a daily time log detailing, in one-hour increments, the activities and services

performed by JPM on behalf of the Debtors during the Application Period.

**Summary of Services Rendered by JPM**

18.    Since July 17, 2013, JPM has rendered professional services to the Debtors as

requested and as necessary and appropriate in furtherance of the interests of the Debtors and the

various parties-in-interest.  JPM provided substantial investment banking services to the Debtors

related to the sale of the Debtors' assets, including, but not limited to:

- Becoming familiar with the financial condition and business of the Debtors and advising and assisting the Debtors in considering the desirability of effecting a sale of their assets;

- Assisting the Debtors with responding to due diligence requests from and providing relevant information to prospective purchasers of the Debtors' assets; and

- Advising and assisting the Debtors in all aspects of the sale process, including the marketing of their assets, negotiations with prospective purchasers and consummation of a sale.

**Interactions With the Debtors**

19.     Throughout the engagement, JPM requested and reviewed materials provided by the Debtors regarding their operations, assets, financial statements, contractual obligations, and employees.  JPM met with the Debtors' senior executives on multiple occasions at the Debtors' corporate headquarters.  These interactions with the Debtors were essential in helping JPM and the Debtors to formulate and conduct the sale process.  In addition, JPM continually updated the Debtors and its Board of Directors with various presentations regarding the status of the sale process, evaluation of bids received and conclusions reached.

**Marketing of Assets and Sale Process Execution**

20.     Consistent with its mandate in the Engagement Letter and in the Retention Order, JPM managed various components of the process by which the Debtors marketed for sale their assets.  The process began approximately two months prior to the execution of the Retention Order and concluded with the closing of the sale of the Debtors' assets on April 1, 2014.  During that time, with input from the Debtors and their professionals, JPM assisted the Debtors in preparing extensive informational materials for marketing the Debtors' assets for sale and for advancing the sale process.  JPM assisted the Debtors in addressing confidentiality and disclosure issues related to the assets co-owned with other parties.  Additionally, JPM handled the administrative functions attendant to the sale process, including communications with prospective buyers and coordination with the Debtors' executives and management team.  JPM

also assisted the Debtors with analysis of bids and development of a strategy for maximizing the

return from the assets through the sale process.

**Data Room Setup and Maintenance**

21.     As part of the sale process, JPM worked with the Debtors to manage the process

by which potential bidders conducted their due diligence with respect to the Debtors' assets.  To

facilitate this process, JPM worked with the Debtors and their professionals to identify

documents and information that would be of interest to potential bidders as part of their due

diligence.   JPM worked with the Debtors to populate an electronic data room with such

documents and information.  JPM also worked with the Debtors to address questions related to

the assets and the process raised by potential bidders.

## The Requested Compensation Should Be Allowed

22.     JPM respectfully submits that it is entitled to receive the fees it has requested in

accordance with the terms of the Engagement Letter, as modified and approved by the Retention

Order.  Section 330 of the Bankruptcy Code provides that a court may award a professional

employed under section 327 or 1103 of the Bankruptcy Code, subject to sections 326, 328 and

329, "reasonable compensation for actual, necessary services rendered . . . and reimbursement

for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 of the Bankruptcy Code

also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to … [a]
> professional person, the court shall consider the nature, the extent, and the value
> of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at
> the time at which the service was rendered toward the completion of, a case under

this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

23.    By its terms, section 330 of the Bankruptcy Code is "subject to" the provisions of section 328(a) of the Bankruptcy Code.  11 U.S.C. § 330.  Section 328(a) permits a debtor, with court approval, to employ a professional person "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

24.    Section 328(a) of the Bankruptcy Code represents a departure from the practice that prevailed prior to the enactment of the Bankruptcy Code in 1978.  The purpose of section 328(a) of the Bankruptcy Code is to permit the pre-approval of compensation arrangements as a method of insuring that the most competent professionals would be available to provide services in bankruptcy cases.  See In re Westbrooks, 202 B.R. 520, 521 (Bankr. N.D. Ala. 1996) (finding that percentage fee arrangements "comport with the Bankruptcy Code's goal of attracting highly qualified professionals to the bankruptcy forum"); In re Olympia Holding Corp., 176 B.R. 962, 965 (Bankr. M.D. Fla. 1994) ("In contrast to pre-code law, [Section] 328 allows the court to pre-approve various types of employment arrangements including contingency agreements."). Once the terms of a professional's retention have been approved under section 328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light

9

of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); see also Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862 (5th Cir. 1997) ("If prior approval is given to a certain compensation, [Section] 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved."); In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under Section 330); Olympia Holding Corp., 176 B.R. at 966 (same). As the Fifth Circuit explained in Nat'l Gypsum:

> If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.  Courts must protect those agreements and expectations, once found to be acceptable.

123 F.3d at 862-63.

25.     In this case, the Retention Order provides that fees paid to JPM pursuant to the terms of the Engagement Letter "shall not be subject to challenge except under the standard of review set forth in section 328(a) of the Bankruptcy Code."  Retention Order ¶ 4.  The United States Trustee retains "the right to object to J.P. Morgan's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall not be evaluated primarily on an hourly basis."  Retention Order ¶ 5.

26.     JPM respectfully submits that (i) the professional services for which it seeks compensation in this Application were necessary and appropriate for and beneficial to the Debtors' estates and were consistently performed in a timely and considered manner commensurate with the complexity and importance of the issues involved; (ii) the compensation

requested in the Application is in accordance with the terms of the Engagement Letter as approved by the Retention Order pursuant to section 328(a) of the Bankruptcy Code; and (iii) no unforeseeable developments have arisen during these cases that would render the approval of JPM's fees to have been "improvident" within the meaning of section 328(a) of the Bankruptcy Code. JPM further respectfully submits that the professional services for which compensation is sought hereby were reasonably and necessarily incurred in connection with these chapter 11 cases based upon the (i) complexity of issues presented; (ii) skill required to perform the services properly; (iii) preclusion of other similar employment; (iv) customary fees charged to clients in non-bankruptcy situations for similar services rendered; (v) time constraints required by the exigencies of the chapter 11 cases; (vi) experience, reputation and ability of the professionals rendering services; (vii) time and labor required; and (viii) the success of the Debtors in consummating sale(s) of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

27. Accordingly, JPM's total Transaction Fee request in the amount of $11,000,000.00 for the Application Period should be approved and allowed on a final basis.

### Actual and Necessary Expenses Incurred by JPM

28. As set forth in Exhibit E hereto, JPM expended $96,189.81 in out-of-pocket expenses relating to its professional services during the Application Period. These charges are intended to cover JPM's direct operating costs related to this engagement, which costs are not incorporated into JPM's aggregate fees. Out-of pocket expenses incurred by JPM are charged to a client if the expenses are incurred for the client or are otherwise reasonable and necessary in connection with services rendered for such client. The amount of expenses sought in this

Application and JPM's billing processes (i) are consistent with market practice both in and out of a bankruptcy context and (ii) comply with the Interim Compensation Order.

## No Prior Request

29.     No prior request for the relief sought in this Application has been made to this or any other court.

## Notice

30.     Notice of this Application has been provided to:  (a) counsel to the Debtors; (b) the Office of the U.S. Trustee for the Northern District of Illinois; (c) counsel to the Committee; (d) the indenture trustee for the Debtors' senior unsecured notes; (e) counsel to the ad hoc committee of certain holders of the Debtors' senior unsecured notes; (f) the indenture trustee for the lessor notes related to the Debtors' Powerton generating station in Pekin, Illinois, and units 7 and 8 of the Debtors' Joliet, Illinois, generating station and the pass-through trustee for the related pass-through certificates; (g) the owner trusts and the equity investors for the Debtors' Powerton and Joliet generating stations and their respective counsel; (h) the lender under Edison Mission Energy's letter-of-credit facility; (i) the state attorneys general for states in which the Debtors conduct business; (j) United States Attorney for the Northern District of Illinois; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (n) those parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002 and the *Order Approving Case Management Procedures* [Docket No. 128].  In light of the nature of the relief requested herein, JPM respectfully submits that no further notice is necessary.

*[Remainder of page intentionally left blank.]*

WHEREFORE, JPM respectfully requests that this Court enter the JPM Order (a) approving the allowance of, and awarding to JPM, the Transaction Fee of $11,000,000.00 for professional services rendered to the Debtors during the period from July 17, 2013 through and including March 11, 2014; (b) approving the reimbursement of JPM's actual and necessary expenses incurred in connection with rendering such services during the period from July 17, 2013 through and including March 11, 2014 in the amount of $96,189.81; (c) authorizing and directing the Debtors to pay the fees and expenses awarded; and (d) granting such other and further relief as this Court may deem just and proper.

Dated: April 30, 2014
       New York, New York

                                        J.P. MORGAN SECURITIES LLC

                                        By:    /s/ Carsten Woehrn
                                               Carsten Woehrn
                                               Managing Director
                                               383 Madison Avenue
                                               New York, New York 10179