UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |

NOTICE OF FOURTH INTERIM AND FINAL
FEE APPLICATION OF KIRKLAND & ELLIS LLP,
AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION,
FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

PLEASE TAKE NOTICE that Kirkland & Ellis LLP has filed the *Fourth Interim and Final Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* (the "Final Fee Application").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Final Fee Application will be held before the Honorable Jacqueline P. Cox, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 680, Chicago, Illinois 60604, on **June 18, 2014, at 10:30 a.m. (Central Time).**

PLEASE TAKE FURTHER NOTICE that any objection to the Final Fee Application must be filed with the Court by **June 11, 2014, at 4:00 p.m. (Central Time)** and served by such time on (a) counsel to EME Reorganization Trust and the above-captioned debtors and debtors in possession (collectively, the "Debtors"); (b) the Office of the U.S. Trustee for the Northern District of Illinois; (c) counsel to the official committee of unsecured creditors appointed to these chapter 11 cases; (d) the indenture trustee for the Debtors' senior unsecured notes; (e) counsel to the ad hoc committee of certain holders of the Debtors' senior unsecured notes; (f) the indenture trustee for the lessor notes related to the Debtors' Powerton generating station in Pekin, Illinois, and units 7 and 8 of the Debtors' Joliet, Illinois generating station and the pass-through trustee

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Finance Co. (9202); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The service address for EME Reorganization Trust is:  3 MacArthur Place, Suite 100, Santa Ana, California 92707.

for the related pass-through certificates; (g) counsel to the ad hoc committee of certain holders of pass-through certificates related to the Debtors' Powerton and Joliet generating stations; (h) the owner trusts and the equity investors for the Debtors' Powerton and Joliet generating stations; (i) the state attorneys general for states in which the Debtors conduct business; (j) the United States Attorney for the Northern District of Illinois; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (n) those parties who have requested service of papers in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and the *Order Approving Case Management Procedures* [Docket No. 128].

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the case website maintained by GCG, Inc., the Debtors' notice and claims agent for these chapter 11 cases, available at www.edisonmissionrestructuring.com or by calling (866) 241-6491. You may also obtain copies of any pleadings by visiting this Court's website at www.ilnb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: May 1, 2014

*/s/ David R. Seligman, P.C.*
James H.M. Sprayregen, P.C.
David R. Seligman, P.C.
Sarah Hiltz Seewer
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

- and -

Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

*Counsel to the Debtors
and Debtors in Possession
Other than Camino Energy Company*

KE 30582741

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

## COVER SHEET FOR FOURTH INTERIM AND FINAL
## FEE APPLICATION OF KIRKLAND & ELLIS LLP, AS
## ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION,
## FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
## FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

**Name of Applicant:**    **Kirkland & Ellis LLP ("K&E")**

Authorized to provide professional services to:    Edison Mission Energy, et al., Debtors and Debtors in Possession

Date of retention:    Order entered on January 17, 2013, retaining K&E *nunc pro tunc* to December 17, 2012

Period for which compensation and reimbursement is sought:    December 17, 2012, through March 11, 2014 (the "Final Fee Period")

Amount of compensation sought as actual, reasonable, and necessary:    $30,568,017.00 ($6,928,985.00 for the period December 1, 2013 through March 11, 2014 (the "Fourth Interim Fee Period"))

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Finance Co. (9202); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447). The service address for EME Reorganization Trust is: 3 MacArthur Place, Suite 100, Santa Ana, California 92707.

| | |
|---|---|
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $1,152,442.30 ($379,158.32 for the Fourth Interim Fee Period) |
| Total compensation and expense reimbursement requested: | $31,720,459.30 |

This is a _ monthly **X** interim **X** final application.[2]

---

[2]   The following exhibits are attached to this Final Fee Application:  the form of proposed order is attached as **Exhibit A**; a list of K&E's project categories, prepared in accordance with the activity codes recommended by the Guidelines (as defined below), and the total time billed to each category for the Fourth Interim Fee Period and the Final Fee Period are attached as **Exhibit B** and **Exhibit C**, respectively; a billing summary that includes the name of each attorney and paraprofessional for whose work compensation is sought, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each professional and paraprofessional and the corresponding hourly billing rate at K&E's current billing rates, and an indication of the individual amounts requested as part of the Fourth Interim Fee Period and the Final Fee Period, are attached as **Exhibit D** and **Exhibit E**, respectively; a summary of K&E's total actual and necessary out-of-pocket expenses and disbursements during the Forth Interim Fee Period and the Final Fee Period are attached as **Exhibit F** and **Exhibit G**, respectively; the December 2013 Statement is attached as **Exhibit H**; the January 2014 Statement is attached as **Exhibit I**; the February 2014 Statement is attached as **Exhibit J**; and the March 2014 Statement is attached as **Exhibit K**.

2

## Summary of Hours Billed by Attorneys
## <u>and Paraprofessionals During the Final Fee Period</u>

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Julia Allen | Associate | 2012 | Litigation | $370.00 | 11.10 | $4,107.00 |
| Kristin E. Bacchus | Associate | 2011 | Corporate | $565.00 | 8.70 | $4,915.50 |
| Dean C. Bachus | Partner | 2004 | Taxation | $865.00 | 93.90 | $89,119.50 |
| | | | | $940.00 | 8.40 | |
| Laura Bader | Partner | 1997 | Employee Benefits | $930.00 | 5.50 | $5,115.00 |
| Tara M. Bahn | Associate | 2004 | Environmental | $715.00 | 25.80 | $18,447.00 |
| Marin K. Boney | Associate | 2008 | Litigation | $675.00 | 11.40 | $7,695.00 |
| Eric Buske | Associate | 2012 | Corporate | $430.00 | 34.70 | $79,608.50 |
| | | | | $495.00 | 126.90 | |
| | | | | $520.00 | 3.60 | |
| Richard J. Campbell, P.C. | Partner | 1996 | Corporate | $995.00 | 256.40 | $378,196.00 |
| | | | | $1,095.00 | 112.40 | |
| John G. Caruso | Partner | 1992 | Real Estate | $835.00 | 42.70 | $35,654.50 |
| Kristen Centre | Associate | 2011 | Restructuring | $495.00 | 291.90 | $214,679.50 |
| | | | | $565.00 | 119.70 | |
| | | | | $595.00 | 4.30 | |
| Cameron Cheetham | Of Counsel | 1996 | Restructuring | $805.00 | 530.70 | $427,213.50 |
| Jeanne T. Cohn-Connor | Partner | 1985 | Environmental | $765.00 | 16.20 | $493,069.00 |
| | | | | $805.00 | 574.20 | |
| | | | | $850.00 | 21.70 | |
| Thad Davis | Partner | 2005 | Taxation | $735.00 | 7.40 | $654,992.00 |
| | | | | $845.00 | 461.50 | |
| | | | | $915.00 | 283.70 | |
| Scott M. Edenfield | Partner | 2002 | Litigation | $670.00 | 6.20 | $45,150.50 |
| | | | | $755.00 | 54.30 | |
| Jennifer Elliott | Associate | 2012 | Employee Benefits | $370.00 | 11.50 | $255,402.50 |
| | | | | $430.00 | 140.00 | |
| | | | | $495.00 | 255.70 | |
| | | | | $520.00 | 123.80 | |
| Christine A. Farmer | Associate | 2011 | Restructuring | $495.00 | 316.60 | $211,465.50 |
| | | | | $565.00 | 96.90 | |
| Jason A. Feld | Associate | 2013 | Litigation | $450.00 | 248.80 | $111,960.00 |

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Jamie Freedman | Associate | 2009 | Restructuring | $495.00 | 140.00 | $117,438.00 |
| | | | | $565.00 | 85.20 | |
| Lally Gartel | Associate | 2012 | Litigation | $430.00 | 130.40 | $56,072.00 |
| Seth A. Gastwirth | Partner | 2004 | Litigation | $795.00 | 1257.50 | $1,260,532.50 |
| | | | | $840.00 | 310.50 | |
| Nathan Gimpel | Associate | 2013 | Restructuring | $430.00 | 139.40 | $203,537.00 |
| | | | | $450.00 | 319.10 | |
| Stefanie I. Gitler | Associate | 2009 | Environmental | $575.00 | 4.40 | $130,733.00 |
| | | | | $630.00 | 149.90 | |
| | | | | $675.00 | 39.40 | |
| | | | | $710.00 | 10.10 | |
| Matthew Goldberger | Associate | Pending | Restructuring | $430.00 | 54.00 | $62,640.00 |
| | | | | $450.00 | 87.60 | |
| Brian Y. Golper | Associate | 2010 | Corporate | $495.00 | 5.60 | $113,116.50 |
| | | | | $565.00 | 195.30 | |
| Jason Gott | Associate | 2012 | Restructuring | $430.00 | 322.30 | $306,177.50 |
| | | | | $495.00 | 239.50 | |
| | | | | $520.00 | 94.30 | |
| John O. Gunderson | Associate | 2009 | Corporate | $630.00 | 11.20 | $67,358.00 |
| | | | | $675.00 | 74.40 | |
| | | | | $710.00 | 14.20 | |
| Stephen C. Hackney | Partner | 1997 | Litigation | $795.00 | 35.60 | $416,410.50 |
| | | | | $840.00 | 436.00 | |
| | | | | $915.00 | 23.90 | |
| Sean F. Hilson | Associate | 2013 | Restructuring | $430.00 | 109.20 | $162,561.00 |
| | | | | $450.00 | 256.90 | |
| Daniel Hodgman | Associate | 2007 | Restructuring | $670.00 | 87.50 | $1,053,622.50 |
| | | | | $675.00 | 759.60 | |
| | | | | $715.00 | 674.50 | |
| Adam Holbrook | Associate | 2009 | Litigation | $575.00 | 12.90 | $24,742.50 |
| | | | | $630.00 | 27.50 | |
| Alexandra N. Hollinger | Associate | 2009 | Environmental | $630.00 | 12.10 | $7,623.00 |
| Vicki V. Hood | Partner | 1977 | Employee Benefits | $995.00 | 15.60 | $567,312.00 |
| | | | | $1,025.00 | 475.30 | |
| | | | | $1,075.00 | 60.10 | |
| Richard U.S. Howell | Partner | 2006 | Litigation | $670.00 | 19.70 | $267,656.00 |
| | | | | $735.00 | 346.20 | |
| Allison Huebert | Associate | 2012 | Litigation | $370.00 | 5.10 | $149,635.00 |
| | | | | $430.00 | 343.60 | |

KE 30582741

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Carol A. Huff | Partner | 1996 | Corporate | $850.00 | 21.30 | $63,676.00 |
| | | | | $995.00 | 45.80 | |
| John S. Irving, Jr. | Of Counsel | 1965 | Labor and Employment | $975.00 | 48.90 | $60,387.50 |
| | | | | $1,025.00 | 12.40 | |
| Aditi Iyer | Associate | 2011 | Corporate | $495.00 | 12.00 | $5,940.00 |
| Amanda Jacobowski | Associate | 2011 | Litigation | $495.00 | 10.50 | $5,197.50 |
| Ellen M. Jakovic | Partner | 1985 | Litigation | $920.00 | 34.20 | $31,464.00 |
| Mike Jones | Associate | 2011 | Restructuring | $495.00 | 72.90 | $173,348.00 |
| | | | | $565.00 | 230.20 | |
| | | | | $595.00 | 12.10 | |
| Lauren R. Kanzer | Associate | 2014 | Restructuring | $450.00 | 33.40 | $15,030.00 |
| Matthew Kapitanyan | Associate | 2012 | Restructuring | $495.00 | 75.50 | $49,073.50 |
| | | | | $565.00 | 10.60 | |
| | | | | $595.00 | 9.60 | |
| Natalie H. Keller | Partner | 1997 | Taxation | $925.00 | 203.50 | $267,911.50 |
| | | | | $980.00 | 81.30 | |
| Joon Kim | Associate | 2012 | Corporate | $595.00 | 19.40 | $11,543.00 |
| Kelsey L. Kingsbery | Associate | 2013 | Litigation | $450.00 | 68.50 | $30,825.00 |
| R. Henry Kleeman | Partner | 1984 | Corporate | $770.00 | 13.80 | $372,919.50 |
| | | | | $805.00 | 375.60 | |
| | | | | $855.00 | 70.10 | |
| Adam Kool | Associate | 2012 | Taxation | $450.00 | 203.30 | $120,186.00 |
| | | | | $545.00 | 44.40 | |
| | | | | $570.00 | 7.90 | |
| Emily Lange-Novak | Associate | 2010 | Corporate | $565.00 | 57.20 | $204,199.50 |
| | | | | $630.00 | 232.40 | |
| | | | | $665.00 | 38.30 | |
| William A. Levy, P.C. | Partner | 1988 | Taxation | $945.00 | 12.10 | $1,418,319.00 |
| | | | | $1,025.00 | 920.30 | |
| | | | | $1,090.00 | 425.30 | |
| Polina Liberman | Associate | 2010 | Taxation | $565.00 | 6.40 | $855,831.00 |
| | | | | $615.00 | 636.80 | |
| | | | | $670.00 | 406.70 | |
| | | | | $705.00 | 266.80 | |
| Teresa Lii | Associate | 2014 | Restructuring | $450.00 | 55.90 | $25,155.00 |
| Walter H. Lohmann, Jr. | Partner | 1983 | Environmental | $1,045.00 | 9.10 | $9,509.50 |
| Daniel R. Lombard | Partner | 2006 | Litigation | $735.00 | 889.30 | $689,649.00 |
| | | | | $795.00 | 45.30 | |

3

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Matthew Martin | Associate | 2012 | Litigation | $430.00 | 347.10 | $509,013.00 |
| | | | | $495.00 | 544.00 | |
| | | | | $520.00 | 174.00 | |
| Rachel Masory | Partner | 2003 | Corporate | $795.00 | 283.90 | $225,700.50 |
| Matthew M. Mauney | Associate | 2008 | Energy | $630.00 | 4.50 | $2,835.00 |
| Todd F. Maynes, P.C. | Partner | 1988 | Taxation | $1,225.00 | 30.00 | $36,750.00 |
| Andres C. Mena | Partner | 2001 | Corporate | $845.00 | 5.20 | $4,394.00 |
| Scott Metzger | Associate | 2013 | Employee Benefits | $450.00 | 5.00 | $2,250.00 |
| Scott A. Moehrke, P.C. | Partner | 1989 | Corporate | $1,095.00 | 4.60 | $5,037.00 |
| Timothy Mohan | Associate | 2014 | Restructuring | $430.00 | 78.10 | $141,043.00 |
| | | | | $450.00 | 238.80 | |
| Roxana Mondragon | Associate | 2011 | Litigation | $495.00 | 4.50 | $2,227.50 |
| Daniel Monico | Associate | 2012 | Litigation | $370.00 | 21.20 | $765,944.00 |
| | | | | $430.00 | 675.00 | |
| | | | | $495.00 | 640.40 | |
| | | | | $520.00 | 290.10 | |
| Maryam F. Mujahid | Associate | 2012 | Environmental | $430.00 | 14.30 | $14,469.00 |
| | | | | $520.00 | 16.00 | |
| Shane Mulrooney | Associate | 2012 | Taxation | $450.00 | 273.40 | $150,812.50 |
| | | | | $545.00 | 28.70 | |
| | | | | $570.00 | 21.30 | |
| Claire McCusker Murray | Associate | 2010 | Litigation | $695.00 | 21.10 | $23,643.50 |
| | | | | $730.00 | 12.30 | |
| Joanne Nagjee | Associate | 2007 | Taxation | $790.00 | 10.10 | $62,822.00 |
| | | | | $815.00 | 13.80 | |
| | | | | $865.00 | 50.40 | |
| David M. Nemecek | Partner | 2003 | Corporate | $725.00 | 13.30 | $144,860.00 |
| | | | | $825.00 | 163.90 | |
| David Ogles | Associate | 2012 | Litigation | $370.00 | 26.80 | $752,611.00 |
| | | | | $430.00 | 698.50 | |
| | | | | $495.00 | 548.00 | |
| | | | | $520.00 | 329.00 | |
| Alexandria Ottens | Associate | 2012 | Real Estate | $430.00 | 26.70 | $11,481.00 |
| Margaret Pepple | Associate | 2012 | Litigation | $430.00 | 393.90 | $404,451.00 |
| | | | | $495.00 | 335.60 | |
| | | | | $520.00 | 132.60 | |
| Gregory F. Pesce | Associate | 2011 | Restructuring | $495.00 | 870.50 | $990,999.00 |
| | | | | $565.00 | 649.60 | |
| | | | | $595.00 | 324.50 | |

4

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Michael Potere | Associate | 2012 | Litigation | $370.00 | 24.30 | $378,092.00 |
| | | | | $430.00 | 725.30 | |
| | | | | $495.00 | 115.60 | |
| William T. Pruitt | Partner | 2004 | Litigation | $780.00 | 26.90 | $20,982.00 |
| Jeffrey S. Quinn | Partner | 1998 | Employee Benefits | $750.00 | 19.00 | $555,112.50 |
| | | | | $795.00 | 549.10 | |
| | | | | $840.00 | 124.20 | |
| Kristopher J. Ring | Partner | 2006 | Corporate | $735.00 | 6.40 | $16,231.50 |
| | | | | $795.00 | 14.50 | |
| Monique Robinson | Associate | 2010 | Corporate | $565.00 | 6.60 | $3,729.00 |
| Susana Sabogal | Associate | 2009 | Executive Compensation | $750.00 | 1.80 | $1,350.00 |
| Bilal Sayyed | Partner | 2000 | Litigation | $755.00 | 2.30 | $1,736.50 |
| Adam N. Schupack | Associate | 2011 | Restructuring | $495.00 | 747.40 | $438,384.50 |
| | | | | $565.00 | 121.10 | |
| Sarah Seewer | Partner | 2002 | Restructuring | $745.00 | 50.90 | $895,998.50 |
| | | | | $780.00 | 1100.10 | |
| David Seligman, P.C. | Partner | 1996 | Restructuring | $975.00 | 72.40 | $3,279,004.50 |
| | | | | $1,025.00 | 2525.40 | |
| | | | | $1,095.00 | 566.10 | |
| Christian C. Semonsen | Partner | 1999 | Environmental | $795.00 | 0.50 | $397.50 |
| Karen A. Sheffler | Partner | 2005 | Energy | $735.00 | 18.80 | $13,818.00 |
| Daniel Siegfried | Associate | 2012 | Litigation | $495.00 | 49.00 | $41,318.00 |
| | | | | $565.00 | 30.20 | |
| Alison A. Skaife | Associate | 2013 | Taxation | $450.00 | 63.60 | $37,360.00 |
| | | | | $475.00 | 18.40 | |
| Marimichael Skubel | Partner | 1979 | Litigation | $835.00 | 17.10 | $14,278.50 |
| Michael B. Slade | Partner | 1999 | Litigation | $850.00 | 490.80 | $520,802.50 |
| | | | | $905.00 | 114.50 | |
| James H.M. Sprayregen, P.C. | Partner | 1985 | Restructuring | $1,045.00 | 35.80 | $993,055.00 |
| | | | | $1,125.00 | 773.30 | |
| | | | | $1,195.00 | 71.70 | |
| R. Timothy Stephenson | Partner | 1990 | Labor and Employment | $975.00 | 28.40 | $34,557.50 |
| | | | | $1,025.00 | 6.70 | |
| Joshua A. Sussberg | Partner | 2004 | Restructuring | $765.00 | 61.70 | $1,429,223.00 |
| | | | | $815.00 | 1501.40 | |
| | | | | $865.00 | 183.10 | |
| Jason Thompson | Associate | 2011 | Corporate | $495.00 | 27.60 | $13,662.00 |
| Michael Thorpe | Associate | 2009 | Litigation | $675.00 | 33.80 | $22,815.00 |
| Jonathan Tshiamala | Associate | 2011 | Litigation | $495.00 | 104.00 | $51,480.00 |

5

| Attorney | Position | Year Admitted | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|---|
| Neil E. Walther | Associate | 2010 | Restructuring | $565.00 | 465.30 | $952,912.50 |
| | | | | $630.00 | 685.50 | |
| | | | | $665.00 | 388.20 | |
| Jenna Ward | Associate | 2014 | Restructuring | $450.00 | 57.10 | $25,695.00 |
| Kimberly Watson | Associate | 2012 | Real Estate | $370.00 | 10.70 | $30,920.00 |
| | | | | $430.00 | 62.70 | |
| Brad Weiland | Associate | 2008 | Restructuring | $670.00 | 117.60 | $2,307,438.00 |
| | | | | $675.00 | 1130.40 | |
| | | | | $715.00 | 1391.40 | |
| | | | | $750.00 | 627.70 | |
| Jason Whiteley | Associate | 2010 | Energy | $630.00 | 49.90 | $31,437.00 |
| Sara E. Whyte | Partner | 2005 | Corporate | $735.00 | 2.80 | $2,058.00 |
| Paul Wierbicki | Partner | 2005 | Restructuring | $755.00 | 5.40 | $4,077.00 |
| Walter B. Winger | Associate | 2010 | Restructuring | $495.00 | 39.20 | $174,652.50 |
| | | | | $565.00 | 174.10 | |
| | | | | $595.00 | 95.60 | |
| Michael A. Woods | Partner | 2003 | Energy | $780.00 | 114.90 | $89,622.00 |
| Peter J. Wozniak | Associate | 2007 | Litigation | $715.00 | 261.90 | $323,013.00 |
| | | | | $735.00 | 184.70 | |
| **Totals for Attorneys** | | | | | **42,026.90** | **$29,370.678.00** |

| Paraprofessional | Position | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| April J. Albrecht-Paliga | Litigation Support Specialist | Litigation | $275.00 | 1.00 | $275.00 |
| Toni Anderson | Litigation Support Specialist | Litigation | $275.00 | 40.00 | $11,000.00 |
| Paige Barnum | Litigation Support Specialist | Litigation | $225.00 | 6.80 | $1,530.00 |
| Andrew Brniak | Legal Assistant | Restructuring | $240.00 | 22.90 | $42,763.50 |
| | | | $250.00 | 139.00 | |
| | | | $265.00 | 9.50 | |
| Megan Bruner | Litigation Support Specialist | Litigation | $225.00 | 1.00 | $225.00 |
| Michael Buchanio | Project Assistant | Litigation | $235.00 | 7.00 | $1,645.00 |
| Kathleen E. Cawley | Legal Assistant | Litigation | $315.00 | 96.30 | $30,334.50 |
| Adam Collins | Project Assistant | Litigation | $195.00 | 1.50 | $292.50 |
| Erin Cullin | Project Assistant | Litigation | $185.00 | 9.00 | $1,665.00 |
| Cara C. D'Amato | Conflicts Senior Specialist | Administrative Services | $280.00 | 6.20 | $1,736.00 |

6

| Paraprofessional | Position | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| Andre Dankha | Project Assistant | Litigation | $205.00 | 40.00 | $8,200.00 |
| Rhonda Dase | Conflicts Specialist | Administrative Services | $255.00 | 5.00 | $1,275.00 |
| Kimberly Davenport | Case Assistant | Litigation | $195.00 | 60.80 | $12,881.00 |
| | | | $205.00 | 5.00 | |
| Gwen K. Federman | Project Assistant | Litigation | $195.00 | 18.60 | $3,627.00 |
| Stephanie D. Frye | Conflicts Coordinator | Administrative Services | $255.00 | 97.40 | $24,837.00 |
| Susan P. Gadzala | Legal Assistant | Litigation | $315.00 | 9.50 | $2,992.50 |
| Sheila D. Givens | Case Assistant | Litigation | $180.00 | 5.00 | $900.00 |
| Jacob Goldfinger | Legal Assistant | Restructuring | $305.00 | 19.90 | $12,597.50 |
| | | | $320.00 | 20.40 | |
| Allison Graybill | Conflicts Analyst I | Administrative Services | $180.00 | 20.00 | $3,600.00 |
| Daniel Hill | Project Assistant | Restructuring | $190.00 | 266.10 | $84,519.00 |
| | | | $200.00 | 169.80 | |
| Gina Jankelow | Conflicts Analyst | Administrative Services | $190.00 | 7.00 | $1,330.00 |
| Gayle M. Lodygowski | Case Assistant | Intellectual Property | $195.00 | 6.50 | $1,267.50 |
| Erin Maher | Litigation Support Specialist | Litigation | $225.00 | 37.30 | $8,392.50 |
| Kate Marino | Litigation Support Specialist | Litigation | $225.00 | 3.20 | $720.00 |
| Maureen McCarthy | Legal Assistant | Restructuring | $300.00 | 35.60 | $387,492.00 |
| | | | $315.00 | 870.00 | |
| | | | $330.00 | 311.40 | |
| Cassandra Milleville | Legal Assistant | Litigation | $235.00 | 749.90 | $194,226.50 |
| | | | $250.00 | 72.00 | |
| Lauren Mitchell-Dawson | Legal Assistant | Environmental | $310.00 | 12.00 | $9,017.50 |
| | | | $325.00 | 16.30 | |
| Maria Negron | Case Assistant | Litigation | $170.00 | 115.60 | $20,042.00 |
| | | | $195.00 | 2.00 | |
| Christopher Pavlovich | Project Assistant | Litigation | $185.00 | 229.80 | $42,513.00 |
| Brian Rittenhouse | Legal Assistant | Litigation | $260.00 | 14.60 | $3,796.00 |
| Michelle Santoro | Case Assistant | Restructuring | $190.00 | 8.30 | $1,577.00 |
| Timothy Schmeling | Project Assistant | Restructuring | $180.00 | 32.80 | $45,291.00 |
| | | | $190.00 | 207.30 | |
| Linda A. Scussel | Conflicts Senior Specialist | Administrative Services | $280.00 | 32.20 | $12,585.50 |
| | | | $295.00 | 12.10 | |
| Sven Soderberg | Legal Assistant | Corporate | $295.00 | 13.30 | $3,923.50 |

7

| Paraprofessional | Position | Department | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| Carrie Sroka | Legal Assistant | Restructuring | $245.00 | 11.60 | $7,159.50 |
| | | | $275.00 | 15.70 | |
| Katee Stahl | Conflicts Analyst | Administrative Services | $190.00 | 13.20 | $2,508.00 |
| Kenneth J. Sturek | Legal Assistant | Litigation | $315.00 | 7.00 | $2,205.00 |
| Elizabeth A. Suehr | Conflicts Specialist | Administrative Services | $255.00 | 5.30 | $1,351.50 |
| Katherine Trucco | Project Assistant | Litigation | $185.00 | 278.80 | $53,567.00 |
| | | | $195.00 | 10.20 | |
| R. Joseph Whittingham | Legal Assistant | Litigation | $310.00 | 16.00 | $4,960.00 |
| Robert T. Witmer | Legal Assistant | Litigation | $260.00 | 363.10 | $146,518.50 |
| | | | $275.00 | 189.50 | |
| **Totals for Paraprofessionals** | | | | **4,777.30** | **$1,197,339.00** |

8

## Summary of the Total Amount of Fees and Expenses Incurred
## Under Each Subject Matter During the Final Fee Period

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested | Total Expenses Requested | Total Compensation |
|---|---|---|---|---|---|
| 2 | Chapter 11 Bankruptcy Filing | 165.50 | $78,179.50 | $842.68 | $79,022.18 |
| 3 | Adversary Proceedings, Contested Issues | 3,378.20 | $1,865,782.00 | $61,668.82 | $1,927,450.82 |
| 4 | Asset Disposition | 3,428.10 | $2,736,071.00 | $52,642.89 | $2,788,713.89 |
| 5 | Automatic Stay Issues | 63.40 | $34,054.50 | $264.59 | $34,319.09 |
| 6 | Bond Issues | 90.70 | $57,303.00 | $26.00 | $57,329.00 |
| 7 | Business Operations | 260.10 | $179,853.00 | $969.27 | $180,822.27 |
| 8 | Case Administration | 561.20 | $312,925.50 | $66,265.82 | $379,191.32 |
| 9 | Cash Management | 66.80 | $45,813.50 | $194.86 | $46,008.36 |
| 10 | Cash Collateral, DIP Financing | 104.00 | $78,459.00 | $521.75 | $78,980.75 |
| 11 | Claims Administration and Objections | 826.80 | $450,815.00 | $3,386.05 | $454,201.05 |
| 12 | Corporate and Securities Issues | 922.10 | $833,088.50 | $2,367.57 | $835,456.07 |
| 13 | Creditors Communications | 1,277.00 | $1,000,986.50 | $14,981.60 | $1,015,968.10 |
| 14 | Employee Issues | 3,913.40 | $2,588,105.50 | $201,244.10 | $2,789,349.60 |
| 15 | Executory Contracts and Unexpired Leases | 314.50 | $176,897.50 | $809.87 | $177,707.37 |
| 16 | First Day Pleadings | 29.30 | $17,063.50 | $248.37 | $17,311.87 |
| 17 | Hearings | 375.70 | $247,288.50 | $41,497.09 | $288,785.59 |
| 18 | Homer City | 1,585.60 | $1,003,563.50 | $16,136.81 | $1,019,700.31 |
| 19 | K&E Fee Applications and Monthly Statement | 907.30 | $446,496.00 | $13,288.53 | $459,784.53 |
| 20 | Letter of Credit Issues | 254.00 | $166,111.50 | $249.49 | $166,360.99 |
| 21 | Meetings of Creditors | 16.60 | $9,882.00 | $16.00 | $9,898.00 |
| 22 | Non-Debtor Affiliates | 96.30 | $75,185.50 | $1,055.56 | $76,241.06 |
| 23 | Fee Applications - Other | 99.90 | $49,977.50 | $1,249.82 | $51,227.32 |
| 24 | Plan and Disclosure Statement | 4,598.50 | $3,053,956.00 | $45,299.71 | $3,099,255.71 |
| 25 | Retention of Professionals | 434.40 | $209,829.00 | $565.33 | $210,394.33 |
| 26 | Schedules and Statement of Financial Affairs | 168.40 | $86,705.00 | $3,679.63 | $90,384.63 |
| 27 | Tax Issues | 2,234.50 | $1,904,867.00 | $5,716.63 | $1,910,583.63 |
| 28 | Travel | 367.90 | $304,458.00 | $224,338.95 | $528,796.95 |
| 29 | U.S. Trustee Issues | 64.10 | $40,365.50 | $123.46 | $40,488.96 |
| 30 | Utilities | 16.30 | $8,898.00 | $105.72 | $9,003.72 |
| 31 | Environmental Issues | 37.40 | $26,752.50 | $201.66 | $26,954.16 |
| 32 | Midwest Generation, LLC | 6,287.00 | $4,195,487.50 | $52,837.30 | $4,248,324.80 |
| 33 | Wind Projects | 268.80 | $187,435.50 | $421.24 | $187,856.74 |
| 34 | Gas Projects | 123.40 | $75,952.50 | $1,003.74 | $76,956.24 |

KE 30582741

| Matter Number | Matter Description | Total Billed Hours | Total Fees Requested | Total Expenses Requested | Total Compensation |
|---|---|---|---|---|---|
| 35 | Master Restructuring Agreement-EIX Investigation | 10,385.40 | $6,100,406.00 | $302,289.75 | $6,402,695.75 |
| 36 | Chevron Adversary Proceeding | 2,652.80 | $1,613,566.50 | $35,302.90 | $1,648,869.40 |
| 37 | Crawford and Fisk Assets, 363 Sale | 428.80 | $305,436.00 | $628.74 | $306,064.74 |
| **Totals** | | **46,804.20** | **$30,568,017.00** | **$1,152,442.30** | **$31,720,459.30** |

10

KE 30582741

**Summary of Expenses Incurred During the Final Fee Period**

| Categories for Expenses | Amount |
|---|---|
| Airfare | $138,128.23 |
| Appearance Fees | $79.00 |
| Binding | $21.00 |
| Calendar/Court Services | $975.00 |
| Car Rental | $1,688.95 |
| Cash Credits | ($1,402.80) |
| Catering Expenses | $29,507.85 |
| CD-ROM Duplicates/Master | $525.00 |
| Closing/Mini Books | $1,116.00 |
| Color Copies or Prints | $58,578.30 |
| Computer Database Research | $3,309.17 |
| Court Reporter Fee/Deposition | $42,835.20 |
| DVD Duplicates/Master | $30.00 |
| Electronic Data Storage | 17160.88 |
| File Conversion | $12.33 |
| Filing Fees | $5,113.00 |
| Investigators | $3,158.75 |
| Library Document Retrieval | $25.00 |
| Local Transportation | $4,210.80 |
| OCR Only | $67.68 |
| Other Court Costs and Fees | $996.10 |
| Other Travel Expenses | $1,577.82 |
| Outside Computer Services | $250,972.59 |
| Outside Copy/Binding Services | $59,932.12 |
| Outside Messenger Services | $4,407.50 |
| Outside Retrieval Service | $137,036.18 |
| Overnight Delivery | $8,565.49 |
| Overtime Meals | $15,237.78 |
| Overtime Transportation | $17,214.80 |
| Postage | $18.68 |
| Production Blowbacks | $29,265.30 |
| Rental Expenses | $4,375.25 |
| Scanned Images | $3,025.17 |
| Standard Copies or Prints | $216,309.45 |
| Tabs/Indexes/Dividers | $100.62 |
| Third Party Telephone Charges | $1,168.77 |
| Transportation to/from airport | $29,625.92 |
| Travel Expense | $52,835.36 |
| Travel Meals | $7,983.96 |
| Working Meals/K&E and Others | $5,483.58 |

11

| Categories for Expenses | Amount |
|---|---|
| Working Meals/K&E Only | $1,170.52 |
| **Total** | **$1,152,442.30** |

KE 30582741

Dated:  May 1, 2014

*/s/ David R. Seligman, P.C.*

James H.M. Sprayregen, P.C.
David R. Seligman, P.C.
Sarah Hiltz Seewer
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

- and -

Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel to the Debtors*
*and Debtors in Possession*
*Other than Camino Energy Company*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
|  | ) |  |
| Reorganized Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

### FOURTH INTERIM AND FINAL
### FEE APPLICATION OF KIRKLAND & ELLIS LLP,
### AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION,
### FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
### FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED

Kirkland & Ellis LLP ("K&E") submits this fourth interim and final fee application (this "Final Fee Application"), pursuant to which it seeks:  (a) final allowance and approval of compensation for professional services rendered to the above-captioned debtors and debtors in possession (collectively, the "Debtors") by K&E in the amount of $30,568,017.00 for the periods from December 17, 2012, through March 31, 2013 (the "First Interim Fee Period"), from April 1, 2013, through July 31, 2013 (the "Second Interim Fee Period"), August 1, 2013, through November 30, 2013 (the "Third Interim Fee Period"), and from December 1, 2013, through March 11, 2014 (the "Fourth Interim Fee Period," and, together with the First Interim Fee Period, the Second Interim Fee Period, and the Third Interim Fee Period, the "Final Fee Period");

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Finance Co. (9202); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).  The service address for EME Reorganization Trust is:  3 MacArthur Place, Suite 100, Santa Ana, California 92707.

(b) reimbursement of actual and necessary expenses in the amount of $1,152,442.30 incurred by K&E in rendering such services during the Final Fee Period; and (c) the release of all unpaid amounts on account of fees withheld during the Final Fee Period in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [Docket No. 331] (the "Interim Compensation Order") in the amount of $1,385,797.00.   In support of this Final Fee Application, K&E respectfully states as follows:

## Preliminary Statement[2]

1.       In just over fourteen months, the Debtors, with K&E's assistance, completed their extremely successful chapter 11 cases—the Debtors explored every potential restructuring alternative, conducted a robust and comprehensive marketing process, and ultimately implemented the transactions contemplated by the Plan, which transactions will result in: (a) significant recoveries to holders of allowed general unsecured claims against EME; (b) the payment in full in cash of general unsecured claims against nearly all of EME's Debtor subsidiaries, including Midwest Generation, LLC ("MWG"); and (c) the assumption of the PoJo leveraged lease obligations and payment of the agreed-upon $211 million related PoJo cure amount.   The Plan enjoyed the support of ***all*** of the Debtors' key stakeholders, including the Committee, the Noteholder Group, EIX, and the PoJo stakeholders, and was confirmed—after all outstanding objections were consensually resolved—on March 11, 2014.

2.       Structuring, negotiating, and documenting the Plan and the various transactions contemplated by the Plan was a complicated endeavor that required a significant effort over the entirety of these chapter 11 cases.   Specifically, the Plan contemplated a sale of substantially all

---

[2]     Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings ascribed to them herein.

of EME's assets and interests in both its Debtor and non-Debtor subsidiaries to NRG Energy

Holdings, Inc. and NRG Energy, Inc. (collectively, "NRG") for a purchase price of

$2.635 billion (comprised of $2.285 billion in cash and $350 million in NRG common stock),

together with the commitment of NRG to assume substantial prepetition liabilities of both EME

and its Debtor and non-Debtor subsidiaries, including MWG's obligations under the leases of its

Powerton and Joliet facilities (collectively, "PoJo"). The NRG transaction was agreed to

following a robust marketing process, including marketing initiatives undertaken both before and

after execution of the Plan Sponsor Agreement and a process coordinated by the Debtors'

management to develop and assess a potential standalone restructuring alternative. Finally,

following a year-long investigation overseen by EME's independent investigation committee and

led by K&E, EME entered into a global settlement (the terms of which are embodied in the Plan)

with EIX that resulted in approximately $1 billion in additional value for EME and its

stakeholders.

　　　　　3.　　　　Throughout the Debtors' chapter 11 cases, K&E worked closely with the Debtors

and their management and stakeholders to position the Debtors' estates to maximize stakeholder

value by developing and implementing a multi-pronged restructuring strategy, the principal

elements of which are described below.

**I.　　　　Prepetition Negotiations and EME's Entry into Chapter 11**

　　　　　4.　　　　In early 2012, EME began exploring restructuring alternatives with its parent

company, Edison International, Inc. ("EIX"), and an ad hoc group of EME's noteholders

(the "Noteholder Group"). After several months of intense, arms'-length negotiations, EME,

EIX, and the Noteholder Group reached agreement on a transaction designed to deleverage

EME's balance sheet and at the same time realize anticipated tax benefits through tax sharing

agreements with EIX (the "Transaction Support Agreement"). Importantly, the Transaction

3

Support Agreement provided EME with an opportunity to investigate potential claims against EIX to determine whether to proceed with the restructuring contemplated by the Transaction Support Agreement.

5.     On December 17, 2012, the Debtors filed for chapter 11.  At the outset of these chapter 11 cases, K&E assisted the Debtors with stabilizing the Debtors' operations and transitioning their businesses into chapter 11.  Specifically, K&E developed a comprehensive package of first-day and second-day relief designed to protect and preserve the value of the Debtors' assets.  As a result of these efforts, the Debtors obtained entry of orders authorizing the Debtors to pay employee wages and benefits, continue their prepetition cash management system and intercompany and shared services arrangements, pay key vendor, tax, utility, and lien claims, and retain various professional advisors.  K&E also assisted the Debtors throughout these chapter 11 cases in complying with their various duties as debtors in possession, including preparing their schedules of assets and liabilities and statements of financial affairs and complying with various other requirements, thereby positioning their business enterprise to pursue a successful restructuring.

## II.     Restructuring the PoJo Leveraged Leases

6.     Prior to the commencement of these chapter 11 cases, the Debtors, with K&E's assistance, determined that restructuring EME's and MWG's obligations under the PoJo leveraged leases would be necessary to any successful standalone restructuring.   More specifically, EME's and MWG's assumption of the leveraged leases—absent a restructuring of the obligations or outside investment—was not feasible in the face of:  (a) MWG's 2012 operating loss of $253 million; (b) scheduled rent payments of over $500 million during the remaining terms of the leveraged leases; and (c) substantial capital expenditure obligations necessary to comply with new environmental regulations.  The Debtors, with K&E's assistance,

4

explored and analyzed all potential strategic alternatives and restructuring strategies for PoJo, and the Debtors and K&E engaged the PoJo parties in multiple discussions regarding MWG's near- and long-term financial demands.   In addition to evaluating MWG's economic and financial concerns, the Debtors and K&E developed a comprehensive strategy for addressing MWG's and PoJo's environmental compliance and other regulatory issues, including MWG's access to wholesale energy markets and capital expenditure requirements.   After extensive discussions among MWG, EME, and the PoJo parties, the Debtors, with K&E's assistance, negotiated a critical forbearance and multiple extensions of the deadline to assume such leases that afforded all parties in interest sufficient time to effectuate the solution offered by the NRG transaction.  K&E filed motions on behalf of MWG to approve the extensions, which allowed the Debtors to continue to assess and develop restructuring alternatives for MWG's PoJo obligations.

### III.    The EIX Investigation

7.     EME (through an independent investigation committee of its board of directors) spent significant time and resources conducting a comprehensive investigation of potential claims against EIX that began in accordance with the Court's order on January 23, 2013 [Docket No. 339] (the "EIX Investigation").   K&E advised EME's special investigation committee in connection with the EIX Investigation.   In furtherance of these efforts, K&E received and reviewed over 140,000 documents, deposed several key EIX executives, and drafted a legal memorandum analyzing the merits of EME's potential claims as well as a proposed draft complaint.   As a result of the EIX Investigation, EME determined that it could potentially assert various claims against EIX.

## IV.    The Debtors' Sale Process

8.    Following the Noteholder Group's termination of the Transaction Support Agreement, the Debtors began exploring all alternative restructuring options, including both asset sale and standalone restructuring alternatives.  On August 1, 2013, EME launched a formal marketing process for a sale of its businesses.  K&E advised EME in all aspects of the sale process, including coordinating diligence production with potential purchasers, discussing potential offers with the Debtors and the Debtors' management, and advising and assisting the Debtors in their negotiations with potential purchasers.  Throughout the sale process, EME's advisors contacted over 333 potentially interested parties, and EME ultimately received bids from 29 potential purchasers.  EME and K&E evaluated each proposal and explored whether higher and better offers existed.  At the same time, EME developed a business plan that would support a standalone restructuring.  K&E and EME's other advisors were instrumental in analyzing (and helping EME evaluate) standalone restructuring alternatives.

## V.    The NRG Proposal

9.    On September 9, 2013, EME received an unsolicited proposal from NRG to purchase substantially all of EME's assets.  Thereafter, K&E advised EME regarding all aspects of the NRG proposal, including analyzing the proposal and advising EME regarding its merits, engaging in discussions regarding a potential transaction, and assisting EME with negotiating the NRG transaction.  After comparing the NRG proposal to other bids and a potential standalone restructuring and successfully negotiating acceptable terms and documentation with NRG, EME, in consultation and collaboration with its major stakeholders, determined that it was in its best interests to proceed with the NRG bid.  These efforts culminated in EME and NRG entering into that certain Asset Purchase Agreement, dated as of October 18, 2013 (the "Purchase Agreement"), which provided for a sale to NRG of substantially all of EME's business assets and

NRG's assumption of the PoJo leases.  In connection with execution of the Purchase Agreement, EME, NRG, the Noteholder Group, the Committee, and the PoJo parties entered into a plan sponsor agreement (the "Plan Sponsor Agreement"), which the Court approved on October 24, 2013.

## VI.    The EIX Settlement

10.    Having completed the EIX Investigation and facing the prospect of protracted and expensive litigation, both in connection with confirmation of the Plan and claims and causes of action that would be asserted against EIX, the Debtors, with K&E's assistance, engaged EIX in several months of settlement discussions to determine if a resolution could be reached before confirmation.  These efforts were successful and, following several weeks of near round-the-clock discussions, EIX, EME, and members of the Noteholder Group entered into a settlement agreement providing for the resolution of all claims between EME, EIX, and the Noteholder Group.  As part of the settlement, EIX agreed to pay over approximately $600 million to EME and to assume certain EME liabilities (such settlement, the "EIX Settlement").  The aggregate value of the EIX Settlement to EME is estimated at approximately $1 billion.  Thereafter, the Debtors, with K&E's assistance, modified the Plan to incorporate the terms of the EIX Settlement and prepared for confirmation.  K&E ultimately resolved *all* Plan confirmation objections, clearing the path to confirmation on March 11, 2014.  On April 1, 2014, the effective date under the Plan occurred and the Debtors consummated the Plan.

11.    K&E played a substantial and pivotal role in the tremendous success of these chapter 11 cases.  Accordingly, K&E respectfully requests entry of an order: (a) allowing and approving compensation for professional services rendered to the Debtors in the aggregate amount of $30,568,017.00 for the Final Fee Period; (b) reimbursement of actual and necessary expenses in the amount of $1,152,442.30 incurred by K&E in rendering such services during the

7

Final Fee Period; and (c) the release of all unpaid amounts on account of fees withheld during the Final Fee Period in accordance with the Interim Compensation Order in the amount of $1,385,797.00.

### Jurisdiction and Venue

12.     The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

13.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The statutory bases for the relief requested herein are sections 327 and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 5082-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), and the Interim Compensation Order.

### Background

15.     On December 17, 2012 (the "Petition Date"), seventeen of the Debtors filed petitions with the Court under chapter 11 of the Bankruptcy Code.  On May 2, 2013, three additional Debtors filed petitions with this Court under chapter 11 of the Bankruptcy Code.  The Court has approved procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket Nos. 115, 154, 780].  The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16.     On March 11, 2014, the Court entered an order [Docket No. 2206] confirming the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (with Technical Modifications)* (the "Plan").  On April 1, 2014, the effective date under the Plan occurred and,

8

among other things, EME consummated the sale of substantially all of its assets to NRG Energy, Inc. ("NRG").  Pursuant to Article IV.E of the Plan, the EME Reorganization Trust was established as the successor in interest to EME.[3]

### The Debtors' Retention of K&E

17.      By this Court's order dated January 17, 2013, the Debtors were authorized to retain K&E as their counsel, effective as of the Petition Date, to assist the Debtors in all matters related to managing and prosecuting these chapter 11 cases [Docket No. 321] (the "Retention Order").  The Retention Order authorizes the Debtors to compensate K&E in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines (the "Guidelines"), and any applicable Court orders, including the Interim Compensation Order.

### Disinterestedness of K&E

18.      As disclosed in the *Declaration of David R. Seligman, P.C. in Support of the Debtors' Application to Employ and Retain Kirkland & Ellis LLP as Attorneys for Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date*, filed on December 17, 2012 [Docket No. 34, Ex. B], the *First Supplemental Declaration of David R. Seligman, P.C. in Support of the Debtors' Application to Employ and Retain Kirkland & Ellis LLP as Attorneys for Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date*, filed on May 15, 2013 [Docket No. 751], the *Second Supplemental Declaration of David R. Seligman, P.C. in Support of the Debtors' Application to Employ and Retain Kirkland & Ellis LLP as Attorneys for Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date*, filed on October 8, 2013

---

[3]   On January 7, 2013, the U.S. Trustee for the Northern District of Illinois (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these chapter 11 cases [Docket No. 202] (as amended on January 18, 2013 [Docket No. 308]).  Pursuant to Article XIII.D of the Plan, the Committee was dissolved on the effective date of the Plan, except as set forth in the Plan.

KE 30582741

[Docket No. 1306], the *Amended and Restated Declaration of David R. Seligman, P.C. in Support of the Debtors' Application to Employ and Retain Kirkland & Ellis LLP as Attorneys for Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date*, filed on January 13, 2014 [Docket No. 1789], and the *Third Supplemental Declaration of David R. Seligman, P.C. in Support of the Debtors' Application to Employ and Retain Kirkland & Ellis LLP as Attorneys for Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date*, filed on March 6, 2014 [Docket No. 2181], (collectively, the "Seligman Declarations"), K&E does not hold or represent any interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

19.     K&E may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  K&E has disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts as part of the Seligman Declarations.

20.     K&E performed the services for which it is seeking compensation on behalf of or for the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

21.     Except to the extent of the advance payments paid to K&E that K&E previously disclosed to the Court in the Seligman Declarations, K&E has received no payment and no promises for payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with these chapter 11 cases.

22.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared, nor has K&E agreed to share:  (a) any compensation it received or may receive with another person other than with the partners, counsel, and associates of K&E; or (b) any compensation another person or party has received or may receive.

**Disclosure of Requested Compensation**

23.    As part of this Final Fee Application, K&E requests aggregate compensation for this Final Fee Period of $30,568,017.00 for services rendered and $1,152,442.30 for reimbursement of actual expenses, for a total request of $31,720,459.30.  The fees and expenses sought in this Final Fee Application attributable to the Fourth Interim Fee Period are $6,928,985.00 and $379,158.32, respectively.[4]

24.    For the amounts sought in the Monthly Statements during the Final Fee Period, K&E, after internal review, took voluntary reductions in fees in the amount of $1,272,079.00 and expenses in the amount of $296,543.64, for a total voluntary reduction of $1,568,662.64.

25.    Pursuant to the Interim Compensation Order, K&E has already received a total of $26,519,145.90 for legal services provided to the Debtors during the Final Fee Period and $976,005.25 for expenses incurred in connection therewith. These amounts represent 100 percent of K&E's legal fees and expenses approved by the Court for the First Interim Fee Period, the Second Interim Fee Period and the Third Interim Fee Period and approximately 80 percent of

---

[4]    For a detailed description of the services rendered and the expenses incurred by K&E in its representation of the Debtors, see K&E's fee statements for the periods: December 1, 2013, through December 31, 2013, attached hereto as **Exhibit H** (the "December 2013 Statement"); January 1, 2014, through January 31, 2014, attached hereto as **Exhibit I** (the "January 2014 Statement"); February 1, 2014, through February 28, 2014, attached hereto as **Exhibit J** (the "February 2014 Statement"); and March 1, 2014, through March 11, 2014, attached hereto as **Exhibit K** (the "March 2014 Statement," together with the December 2013 Statement, the January 2014 Statement, and the February 2014 Statement, the "Fourth Interim Monthly Statements"), each of which was served in accordance with the Interim Compensation Order.  *See First Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 766] for monthly fee statements filed for the period December 17, 2012, through March 31, 2013 (the "First Interim Monthly Statements"); *Second Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 1230], which the Court approved on October 28, 2013 [Docket No. 1432] for monthly fee statements filed for the period April 1, 2013, through July 31, 2013 (the "Second Interim Monthly Statements"); and *Third Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 1807] for monthly fee statements filed for the period August 1, 2013, through November 31, 2013 (the "Third Interim Monthly Statements," together with the First Interim Monthly Statements, the Second Interim Monthly Statements, and the Fourth Interim Monthly Statements, the "Monthly Statements").

K&E's legal fees and 100 percent of out-of-pocket expenses incurred and submitted by K&E for the December 2014 Fee Statement and January 2014 Fee Statement. The objection deadline for the February 2014 Fee Statement expires on May 9, 2014 and the objection deadline for the March 2014 Fee Statement expires on May 21, 2014. K&E anticipates being paid 80 percent of the fees ($2,663,074.00) and 100 percent of the expenses ($176,437.05) incurred and submitted by K&E for the February 2014 Fee Statement and the March 2014 Fee Statement if no objections are received.

26.     The fees sought in this Final Fee Application reflect an aggregate of 46,804.20 hours expended by K&E professionals and paraprofessionals during the Final Fee Period rendering necessary and beneficial legal services to the Debtors at a blended average hourly rate of $653.10 for both attorneys and paraprofessionals, or $698.85 for attorneys only. K&E maintains computerized records of the time expended in the performance of the professional services required by the Debtors' estates. These records are maintained in the ordinary course of K&E's practice.

27.     The hourly rates and corresponding rate structure used by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure that K&E predominantly uses for restructuring, workout, bankruptcy, insolvency, and comparable matters, as well as similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate structure reflect that such restructuring and other complex matters are typically national in scope and involve great complexity, high stakes, and severe time pressures.

28.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses.

Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

29.     In accordance with the Interim Compensation Order, K&E has filed and received Court approval of interim fee applications during these chapter 11 cases, as set forth below:

- On May 15, 2013, K&E filed the First Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred [Docket No. 766], which the Court approved on July 2, 2013 [Docket No. 995];

- On September 16, 2013, K&E filed the Second Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred [Docket No. 1230], which the Court approved on October 28, 2013 [Docket No. 1432]; and

- On January 14, 2014, K&E filed the Third Interim Fee Application of Kirkland & Ellis LLP, as Attorneys for the Debtors and Debtors in Possession, for Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred [Docket No. 1807], which the Court approved on February 25, 2014 [Docket No. 2134].

30.     This Final Fee Application is K&E's fourth and final request for compensation for services rendered and reimbursement of expenses incurred as counsel to the Debtors.

## Summary of Services Performed

31.     During the Final Fee Period, K&E provided significant professional services to the Debtors in connection with these chapter 11 cases. These services were necessary to address various critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

32.     To provide a meaningful summary of K&E's services rendered on behalf of the Debtors, K&E has established, in accordance with the Guidelines and its internal billing procedures, certain subject matters (each, a "Subject Matter") in connection with these chapter 11 cases. The following is a summary, by Subject Matter, of the most significant

13

professional services rendered by K&E during the Final Fee Period. This summary is organized in accordance with K&E's internal system of matter numbers. Additionally, the computerized time records for the Final Fee Period were provided to the Court and the U.S. Trustee. The detailed descriptions demonstrate K&E was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the Debtors' needs and those of the Debtors' estates in these chapter 11 cases.

## I.      Chapter 11 Bankruptcy Filing (Matter 2)

(Fees: $78,179.50; Hours: 165.50)

33.      This Subject Matter includes time that K&E attorneys and paraprofessionals spent on matters related to filing and seeking approval of the Debtors' first-day and second-day pleadings, including preparing, reviewing, and revising first-day and second-day pleadings, discussing the Debtors' chapter 11 filings with the Debtors and their stakeholders, and analyzing and researching a variety of issues related to the first-day and second-day pleadings.

## II.      Adversary Proceedings, Contested Issues (Matter 3)

(Fees: $1,865,782.00; Hours: 3,378.20)

34.      This Subject Matter includes time spent by K&E professionals and paraprofessionals related to motions, adversary proceedings, and contested matters involving the Debtors, including:

- preparing for twenty-seven hearings held in these chapters 11 cases on December 18, 2012, January 16, 2013, February 5, 2013, February 14, 2013, February 20, 2013, March 5, 2013, March 20, 2013, April 10, 2013, May 15, 2013, June 19, 2013, June 27, 2013, July 17, 2013, August 21, 2013, September 19, 2013, October 16, 2013, October 24, 2013, November 6, 2013, December 5, 2013, December 18, 2013, January 22, 2014, February 4, 2014, February 11, 2014, February 13, 2014, February 19, 2014, February 25, 2014, March 5, 2014, and March 11, 2014;

- obtaining Court approval of the participation of the Debtors' insider and non-insider employees in the Debtors' short-term incentive plan and long-term

14

incentive plan on an interim, amended, and final basis [Docket Nos. 316, 402, 404, 626, 627];

- advising, negotiating, and engaging in discussions regarding the Debtors' use of their cash management system, resolving concerns and informal objections of the Committee and Noteholder Group, and obtaining interim [Docket No. 671] and final court approval of the same [Docket No. 768];

- reviewing and revising various motions and proposed orders, including motions to extend the Debtors' exclusive periods [Docket Nos. 680, 1378] and securing approval thereof [Docket Nos. 779, 1423];

- negotiating with and resolving issues raised by the Debtors' stakeholders with respect to various requests for relief;

- drafting, analyzing, and revising protective orders [Docket Nos. 776, 1253, 2115, 2172, 2173] and coordinating document collection and production;

- negotiating issues concerning, and resolving objections to, the Debtors' *Second Amended Disclosure Statement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 1721] (the "Disclosure Statement");

- drafting, reviewing, and filing a motion [Docket No. 1776] and a reply in support thereof [Docket No. 1966] in conjunction with the Debtors' efforts to terminate retiree benefits and engaging in discovery and litigation preparation related thereto;

- corresponding and participating in telephone conferences with the Debtors' personnel regarding the proposed forms of various orders and the Debtors' compliance with the Bankruptcy Code and Bankruptcy Rules; and

- preparing and reviewing various memoranda, pleadings, correspondence, and/or discovery requests and addressing related issues, in connection with certain litigation matters.

## III.    Asset Disposition (Matter 4)

(Fees:  $2,736,071.00; Hours: 3,428.10)

35.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to sales and potential sales of the Debtors' property.  In particular, K&E devoted substantial time to advising the Debtors and addressing issues related to the Debtors' overall sale process and, following receipt of the NRG proposal on September 9, 2013,

related to analyzing, negotiating, and documenting the NRG transaction, including the Purchase

Agreement, and addressing various related issues related to the implementation of the

transactions contemplated by the Purchase Agreement and Plan Sponsor Agreement.

36.     More specifically, K&E attorneys spent time:

- negotiating confidentiality agreements with and responding to diligence inquiries from interested parties regarding potential sales of the Debtors' assets;

- reviewing diligence materials in connection with the Debtors' sale process and the NRG transaction;

- reviewing and analyzing marketing materials prepared by J.P. Morgan Securities LLC for the Debtors' sale process;

- participating in multiple in-person and telephonic conferences with NRG, the Noteholder Group, the Committee, and the PoJo stakeholders and their respective advisors regarding the terms of the NRG transaction, including the assets to be acquired, the liabilities to be assumed, and the plan sponsor protections requested by NRG;

- analyzing and discussing purchase mechanics, including adjustments to purchase price, internal reorganization issues, and the transition of business units and assets to NRG, and negotiating and drafting the Purchase Agreement;

- corresponding with potentially interested parties, the Committee, the Noteholder Group, and the Debtors' other stakeholders regarding the Debtors' sale process and the NRG transaction;

- advising the Debtors and analyzing and engaging in discussions with the Debtors' financial and other advisors regarding the Debtors' sale process and the NRG transaction;

- researching and analyzing issues related to the NRG transaction, including the proposed assumption and assignment of executory contracts and unexpired leases, the plan sponsor protections requested by NRG, regulatory approvals necessary to consummate the NRG transaction, and various related tax and employee benefits considerations;

- negotiating and documenting a settlement and corresponding transaction for the resolution of the Debtors' interest in its non-Debtor Big Sky, LLC wind venture; and

- coordinating various processes related to successfully closing the NRG sale transaction.

16

IV.    **Automatic Stay Issues (Matter 5)**

(Fees:  $34,054.50; Hours:  63.40)

37.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to enforcing the automatic stay with respect to Debtors other than MWG, including discussing and objecting to motions to lift the automatic stay, and responding to inquiries from the Debtors and counsel regarding the status of proceedings stayed upon the commencement of these chapter 11 cases.

V.    **Bond Issues (Matter 6)**

(Fees:  $57,303.00; Hours:  90.70)

38.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the Debtors' notes and construction and other bonds, and the release of bond collateral.

VI.    **Business Operations (Matter 7)**

(Fees:  $179,853.00; Hours:  260.10)

39.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the business operations of the Debtors, including strategizing with the Debtors' management, boards of directors, employees, and other advisors regarding processes to ensure uninterrupted operations, providing advice regarding compliance with the Bankruptcy Code and orders entered in these chapter 11 cases, preparing and filing monthly operating reports, and conducting periodic status update conferences and meetings with the Debtors' management and other advisors.

KE 30582741

## VII.    Case Administration (Matter 8)

(Fees: $312,925.50; Hours:  561.20)

40.      This Subject Matter includes the time that K&E attorneys and paraprofessionals spent attending to the general administration of these chapter 11 cases.  Specifically, K&E professionals tracked the filing of pleadings, the status of various work streams, and monitored critical dates and deadlines.  For each pleading filed, K&E professionals ensured that the appropriate attorneys and personnel of the Debtors and the Debtors' other advisors remained apprised of the filed documents and relevant objection and response deadlines, hearing dates, and other critical dates.

## VIII.    Cash Management (Matter 9)

(Fees: $45,813.50; Hours:  66.80)

41.      This Subject Matter includes time spent by K&E professionals related to the Debtors' cash management system.  During these chapter 11 cases, K&E spent significant time analyzing issues in connection with the Court's approval of the Debtors' amended interim [Docket No. 671] and final cash management orders [Docket No. 768], including engaging in extensive discussions with the Debtors' finance and treasury personnel.

## IX.    Cash Collateral, DIP Financing (Matter 10)

(Fees: $78.459.00; Hours:  104.00)

42.      This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the liquidity needs of the Debtors, specifically, conducting telephone conferences with the Debtors and their financial advisors regarding the Debtors' financing needs, marketing efforts, and diligence requests from potential lenders, and negotiating the terms of a bridge loan from EME to MWG in connection with the proposed NRG transaction.

18

## X.    Claims Administration and Objections (Matter 11)

(Fees: $450,815.00; Hours:  826.80)

43.    This Subject Matter includes the time spent by K&E attorneys related to the

administration and resolution of claims filed against the Debtors' estates, including.

- preparing the claims bar date motion [Docket No. 640] and establishing the claims bar dates in consultation with the U.S. Trustee, the Committee, and the Noteholder Group;

- preparing for and securing Court approval of omnibus claims objection procedures [Docket No. 1022], including engaging in extensive discussions with the advisors to the Committee, Noteholder Group, and various other stakeholders with respect thereto;

- engaging in in-person and telephonic meetings with the Debtors' management and notice and claims agent regarding the analysis and reconciliation of proofs of claim asserted against the Debtors in these chapter 11 cases and claims administration strategy; and

- drafting and preparing twenty-two omnibus claims objections [Docket Nos. 1211, 1213, 1215, 1297, 1640, 1748, 1835, 1836, 1837, 1838, 1839, 1840, 1841, 1842, 1843, 1844, 1845, 1846, 1848, 1860, 1992, 2219] and related supporting declarations [Docket Nos. 1212, 1214, 1216, 1298, 1641, 1751, 1847, 1849, 1993, 2220] and securing Court approval thereof [Docket Nos. 1351, 1352, 1353, 1565, 1902, 2089, 2092, 2081, 2084, 2087, 2080, 2085, 2170, 2083, 2082, 2088, 2086, 2078, 2169], clearing the way for the expungement of approximately 67 percent of the proofs of claims asserted against the Debtors' estates.

## XI.    Corporate and Securities Issues (Matter 12)

(Fees: $833,088.50; Hours:  922.10)

44.    This Subject Matter includes time spent by K&E professionals related to

corporate governance and securities issues involving the Debtors, including:

- counseling the Debtors and their directors and officers regarding corporate governance matters, including their fiduciary responsibilities in connection with operating as debtors in possession;

- preparing multiple disclosures submitted to the Securities and Exchange Commission;

- reviewing, analyzing, and discussing various issues related to the structuring of the Debtors' liquidating trust;

- discussing, negotiating, and documenting various agreements and transactions concerning the EME Reorganization Trust, including registration of the liquidating trust interests and analyzing governance issues;

- preparing for and participating in multiple meetings with the Debtors' board of directors; and

- preparing various corporate documents.

## XII.   Creditors Communications (Matter 13)

(Fees:  $1,000,986.50; Hours:  1,277.00)

45.   This Subject Matter includes time spent by K&E professionals and paraprofessionals communicating with the Debtors' creditors and equity holders regarding important information related to these chapter 11 cases, including:

- monitoring, reviewing, and responding to general creditor inquiries;

- preparing and responding to Committee and Noteholder Group diligence inquiries regarding the Debtors' business operations and restructuring strategy;

- providing various diligence materials to the advisors to the Committee and Noteholder Group regarding the Debtors' cash management system;

- engaging in substantial discussions and negotiations with many parties in interest, including the Committee, the Noteholder Group, EIX, and federal and state regulatory agencies;

- discussing various motions and proposed orders with the Committee and Noteholder Group and consensually resolving certain or potential objections related thereto; and

- representing the Debtors in telephonic and in-person meetings with the Committee and the Noteholder Group and their respective advisors on a variety of topics, including updates on the status of these chapter 11 cases.

## XIII.   Employee Issues (Matter 14)

(Fees:  $2,588,105.50; Hours:  3,913.40)

KE 30582741

46.     This Subject Matter includes time spent by K&E professionals and paraprofessionals related to wage, benefit, and other employee matters of Debtors other than MWG, including:

- advising the Debtors on their obligations under the interim and final wages orders;

- analyzing the Debtors' obligations under certain employee benefit agreements;

- analyzing strategic considerations related to the structuring of the Debtors' long-term incentive plan and exit plan, as well as engaging in discussions with the Debtors' management with respect thereto;

- resolving employee compensation and benefit issues regarding the intercompany shared services programs provided by EIX to the Debtors;

- addressing various employee compensation and benefits issues related to the Debtors' development of a potential standalone business plan and related restructuring proposal;

- drafting and filing a motion to terminate the Debtors' retiree benefit programs and a reply in support thereof [Docket No. 1961];

- discussing the retiree benefit litigation with the Debtors' other stakeholders, and coordinating filings in support of the Debtors' motion to terminate with counsel to the Committee and the Noteholder Group;

- researching and analyzing various legal issues related to the Debtors' retiree benefit programs; and

- engaging in substantial analysis and discussions regarding various employee compensation and benefits issues related to the NRG transaction and EIX Settlement, including the restructuring, implementation, and payment of benefit plans under both transactions.

## XIV.   Executory Contracts and Unexpired Leases (Matter 15)

(Fees:  $176,897.50; Hours:  314.50)

47.     This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the executory contracts and unexpired leases of Debtors other than MWG.   K&E attorneys spent significant time preparing motions seeking Court approval of expedited procedures for assuming or rejecting executory contracts and unexpired leases

[Docket No. 27], rejection of certain executory contracts *nunc pro tunc* to the Petition Date [Docket No. 28], and an extension of the deadline for the Debtors to assume unexpired leases of nonresidential real property [Docket No. 641].  In addition, K&E assisted the Debtors with negotiating and documenting an amendment to the Debtors' Santa Ana, California headquarters lease and preparing and securing Court approval of a motion [Docket No. 920] to approve the Santa Ana headquarters lease amendment and to further extend the deadline for the Debtors to assume the Santa Ana headquarters lease and certain other significant real property leases.

## XV.    First Day Pleadings (Matter 16)

(Fees:  $17,063.50; Hours:  29.30)

48.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals on matters related to drafting and approval of the Debtors' "first-day" and "second-day" pleadings heard by the Court on December 18, 2012 and January 16, 2013.

## XVI.    Hearings (Matter 17)

(Fees: $247,288.50; Hours:  375.70)

49.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals negotiating with and resolving issues raised by the U.S. Trustee, the Committee, and the Noteholder Group with respect to the Debtors' "first-day" and "second-day" pleadings and preparing for and attending twenty-seven hearings held in these chapter 11 cases on December 18, 2012, January 16, 2013, February 5, 2013, February 14, 2013, February 20, 2013, March 5, 2013, March 20, 2013, April 10, 2013, May 15, 2013, June 19, 2013, June 27, 2013, July 17, 2013, August 21, 2013, September 19, 2013, October 16, 2013, October 24, 2013, November 6, 2013, December 5, 2013, December 18, 2013, January 22, 2014, February 4, 2014, February 11, 2014, February 13, 2014, February 19, 2014, February 25, 2014, March 5, 2014, and March 11, 2014.

## XVII.  Homer City (Matter 18)

(Fees:  $1,003,563.50; Hours:  1,585.60)

50.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals related to the former operations and wind-down of Debtors EME Homer City Generation L.P. ("EMEHC"), Homer City Property Holdings, Inc., and Edison Mission Finance Co. (collectively with EMEHC, the "Homer City Debtors"), the former facility lessee and operator of the 1,884-megawatt coal-fired generating facility in Indiana County, Pennsylvania, including:

- preparing and filing chapter 11 petitions for the Homer City Debtors and various related pleadings [Docket Nos. 717, 718] to ensure the Homer City Debtors' smooth transition into chapter 11;

- analyzing EMEHC's obligations under the master transaction and shared service agreements executed in connection with the restructuring of the Homer City facility's former leveraged lease obligations;

- researching and analyzing legal issues and assessing EMEHC's rights with respect to certain cash collateral posted in connection with the Homer City facility leveraged lease structure;

- researching issues related to appeals commenced by EMEHC regarding environmental claims that were resolved in favor of EMEHC by the United States Court of Appeals for the Third Circuit on August 21, 2013;

- discussing and analyzing EMEHC's retiree liabilities with the Debtors, and negotiating and documenting a settlement with respect thereto [Docket No. 1922];

- engaging in litigation preparation in connection with the Homer City adversary proceeding, and negotiating and documenting a global settlement of claims and interests in certain cash collateral between the Homer City Debtors, Homer City Generation LP, and General Electric Capital Corporation [Docket No. 2216]; and

- discussing and analyzing various proofs of claim asserted against the Homer City Debtors.

23

## XVIII. K&E Fee Applications and Monthly Statements (Matter 19)

(Fees:  $446,496.00; Hours:  907.30)

51.     This Subject Matter includes time spent by K&E professionals and paraprofessionals related to preparing the Monthly Statements to ensure compliance with the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, and the Interim Compensation Order, conducting searches of K&E's database for connections to parties in interest to comply with the K&E Retention Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and preparing K&E's supplemental declarations.

## XIX.   Letter of Credit Issues (Matter 20)

(Fees:  $166,111.50; Hours:  254.00)

52.     This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the Debtors' letters of credit, including negotiating and obtaining approval of the Debtors' entry into a letter agreement providing for relief from the automatic stay to allow DNB Bank ASA to set off obligations owing from the Debtors against a cash collateral account held by DNB Bank ASA, negotiating and documenting a replacement postpetition letter of credit facility, and reviewing and analyzing issues related to replacing the Debtors' prepetition letter of credit facility.

## XX.    Meetings of Creditors (Matter 21)

(Fees:  $9,882.00; Hours:  16.60)

53.     This Subject Matter includes the services provided by K&E attorneys and paraprofessionals related to preparing for the Committee formation meeting and the initial creditor meeting pursuant to section 341 of the Bankruptcy Code.

KE 30582741

## XXI.    Non-Debtor Affiliates (Matter 22)

(Fees: $75,185.50; Hours: 96.30)

54.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to certain of the Debtors' non-Debtor affiliates, including reviewing and analyzing certain affiliates' loan documents and related issues, engaging in discussions with counsel to the lenders and other stakeholders of the Debtors' non-Debtor affiliates regarding various financial, operational, and restructuring matters, and analyzing the Debtors' non-Debtor affiliates' corporate and organizational structures.

## XXII.   Fee Applications − Other (Matter 23)

(Fees: $49,977.50; Hours: 99.90)

55.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to reviewing and analyzing the fee statements and applications of advisors retained in these chapter 11 cases and resolving various issues related thereto.

## XXIII. Plan and Disclosure Statement (Matter 24)

(Fees: $3,053,956.00; Hours: 4,598.50)

56.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the Debtors' chapter 11 exit strategy and developing and confirming the Debtors' Plan.  During these chapter 11 cases, K&E focused on several key objectives and processes to position the Debtors to successfully emerge from chapter 11.  More specifically, K&E attorneys and paraprofessionals spent considerable time during the Final Fee Period engaging in discussions with the Debtors' stakeholders, including EIX, NRG, the Committee, the Noteholder Group, and the PoJo stakeholders, to negotiate and document the Plan, the Disclosure Statement, the supplemental materials to the Plan, and various related documents and materials.  Furthermore, K&E attorneys spent significant time in connection with confirmation working to

25

successfully resolve *all* objections to confirmation, including objections from the IRS and the

Securities and Exchange Commission.

57.    K&E worked closely with the Debtors to develop and confirm the Plan, and spent

substantial time and effort on many matters, including:

- preparing motions to extend the Debtors' exclusive periods to propose a plan of reorganization and solicit acceptances thereof [Docket Nos. 680, 1378], which motions were subsequently approved by the Court following discussions between the Debtors, the Committee, and the Noteholder Group [Docket Nos. 779, 1424];

- engaging in discussions with NRG, the Committee, the Noteholder Group, and the PoJo owner trusts and equity investors to negotiate and document the Plan Sponsor Agreement and resolving issues associated therewith;

- drafting and filing the motion to approve the Plan Sponsor Agreement [Docket No. 1375] and related documents;

- taking all necessary steps to ensure approval of the Plan Sponsor Agreement, including responding to an objection from the U.S. Trustee [Docket No. 1403];

- following the Court's approval of the Plan Sponsor Agreement, negotiating and documenting the various transactions contemplated thereby, including the Debtors' initial Plan and Disclosure Statement and modifications thereto;

- working with the Debtors and their advisors to formulate and prepare a liquidation and distribution analysis, and discussing the liquidation and distribution analysis with the Debtors and the Debtors' other advisors;

- analyzing various issues related to the development of the Debtors' chapter 11 exit strategy and the NRG transaction;

- preparing the Debtors and their estates for effectuation of the Plan, including developing the wind-down budget, disputed claims reserve, and other post-effective date items;

- reviewing and analyzing complex bankruptcy, tax, real estate, environmental, corporate, and securities law issues related directly to the Plan;

- negotiating and drafting the Plan and filing updated and amended versions of the Plan that incorporated the various settlements, negotiations, and milestones reached in these chapter 11 cases [Docket Nos. 1588, 1625, 1694, 1720, 2110, 2187, 2201];

- drafting, negotiating, and revising the Plan supplement materials, confirmation order, and other Plan-related documents;

- analyzing numerous solicitation issues and procedures and coordinating with the Debtors' claims and noticing agent to timely and efficiently solicit votes for the Plan;

- analyzing objections to the Debtor's Disclosure Statement and drafting an omnibus reply thereto [Docket No. 1692], and engaging in substantial discussions and negotiations with the Debtors' stakeholders and parties objecting to the Plan and drafting language into the Plan to address such confirmation objections;

- engaging in telephone conferences and in-person discussions with the Debtors and their advisors regarding potential confirmation litigation and post-confirmation matters;

- researching and drafting materials regarding issues related to the Plan and the confirmation requirements under the Bankruptcy Code;

- discussing and drafting the Debtors' confirmation brief [Docket No. 2182] and drafting and revising the Debtors' declarations in support of confirmation [Docket Nos. 2183, 2184];

- preparing for confirmation of the Plan; and

- engaging in numerous discussions and conferences with the Debtors, their management, board of directors, and their other advisors in these chapter 11 cases with respect to the foregoing.

## XXIV. Retention of Professionals (Matter 25)

(Fees:  $209,829.00; Hours:  434.40)

58.    This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the retention and fees paid to the various professionals in these chapter 11 cases, including the preparation, filing, and approval of retention applications for the Debtors' advisors, reviewing the applications filed by the respective advisors to the Committee and the Noteholder Group, coordinating with the Debtors and their other advisors with respect to complying with the related disclosure requirements of applicable provisions of the Bankruptcy

27

Code, and advising the Debtors with respect to various professional compensation and reimbursement matters.

## XXV. Schedules and Statement of Financial Affairs (Matter 26)

(Fees: $86,705.00; Hours: 168.40)

59.      This Subject Matter includes time spent by K&E attorneys and paraprofessionals advising the Debtors in connection with the preparation and filing of the Debtors' schedules of assets and liabilities [Docket Nos. 469, 471, 473, 475, 477, 479, 481, 483, 484, 486, 488, 490, 492, 494, 496, 498, 500, 787, 789, 791] and statements of financial affairs [Docket Nos. 470, 472, 474, 476, 478, 480, 482, 485, 487, 489, 491, 493, 495, 497, 499, 501, 502, 788, 790, 792], as well as the preparation and filing of amendments to certain of the schedules [Docket Nos. 952, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 968, 969, 970, 971, 972].

## XXVI. Tax Issues (Matter 27)

(Fees: $1,904,867.00; Hours: 2,234.50)

60.      This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the Debtors' tax matters, including engaging in discussions with the Debtors regarding the Debtors' tax issues and the preservation and utilization of EME's tax attributes, and researching and analyzing certain tax issues arising in connection with the current business operations of the Debtors, the Transaction Support Agreement, EME's and EIX's respective obligations and rights under various tax sharing agreements, the EIX Settlement, various objections to the Plan and Disclosure Statement, the EIX Investigation, and intercompany claims.

KE 30582741

**XXVII.**        **Travel (Matter 28)**

(Fees: $304,458.00; Hours:  367.90)

61.        This Subject Matter includes time that K&E attorneys and paraprofessionals spent traveling while representing the Debtors.  K&E billed the Debtors for one-half of the total time that K&E spent for non-working travel.

**XXVIII.**        **U.S. Trustee Issues (Matter 29)**

(Fees: $40,365.50; Hours:  64.10)

62.        This Subject Matter includes time that K&E attorneys and paraprofessionals spent in discussions and communications with the U.S. Trustee and otherwise addressing issues raised by the U.S. Trustee in these chapter 11 cases.

**XXIX. Utilities (Matter 30)**

(Fees:  $8,898.00; Hours:  16.30)

63.        This Subject Matter includes time spent by K&E attorneys and paraprofessionals negotiating and preparing agreements with certain of the Debtors' utility providers to address their requests for adequate assurance and communicating with utility providers to avoid disruption to the Debtors' business.

**XXX.   Environmental Issues (Matter 31)**

(Fees:  $26,752.50; Hours:  37.40)

64.        This Subject Matter reflects time spent by K&E attorneys and paraprofessionals regarding certain environmental compliance matters involving Debtors other than MWG.

**XXXI. Midwest Generation, LLC (Matter 32)**

(Fees: $4,195,487.50; Hours:  6,287.00)

KE 30582741

65.     This Subject Matter includes legal services rendered in connection with Debtor MWG's restructuring and business operations.   Specifically, K&E professionals and paraprofessionals spent time:

- analyzing strategic alternatives and restructuring strategies regarding MWG, an intensive process involving multiple parties, complex issues, and the balancing of near- and long-term demands facing MWG and various particularized and time-sensitive operational, financial, regulatory, tax, and bankruptcy matters;

- preparing motions and obtaining Court approval of two forbearance agreements with the PoJo owners and certificateholders regarding MWG's sale-leaseback obligations [Docket Nos. 122, 630];

- engaging in discussions with the Committee, the Noteholder Group, the PoJo owner participants, and the certificateholders regarding MWG's fleet of coal-fired generating plants in Illinois;

- addressing issues related to MWG's environmental compliance and other regulatory matters, including reviewing and analyzing various state and federal regulatory requirements affecting MWG's facilities and access to wholesale energy markets;

- assisting MWG with its vendor and trade creditor issues, including discussions with critical vendors and analyzing MWG's supply contracts;

- addressing various employee and labor issues related to MWG's represented and nonrepresented employees;

- negotiating, documenting, and securing Court approval [Docket No. 1020] of an extension of the deadline for MWG to assume or reject the leases of the PoJo generating stations;

- drafting objections [Docket No. 593, 653, 859, 1008] to multiple motions seeking to lift the automatic stay, and discussing the same with the Debtors;

- negotiating, documenting, and securing Court approval of a stipulation with personal injury plaintiff Raymond Sell to consensually modify the automatic stay [Docket Nos. 724, 774];

- researching, analyzing, and renegotiating the Debtors' obligations under various executory contracts, engaging in multiple telephone conferences with MWG's personnel and advisors to MWG's various stakeholder groups, and preparing notices of rejection of certain executory contracts, including preparing motions to approve a settlement with American River Transportation Company [Docket No. 1068] and securing approval thereof [Docket No. 1134], and

30

authorizing the rejection of certain railcar agreements with General Electric Railcar Services Corporation [Docket No. 1065];

- drafting a motion [Docket No. 1176] seeking entry of an order extending the time to assume or reject the PoJo leveraged leases and related agreements [Docket No. 1255];

- preparing a restructuring proposal for MWG's leveraged lease obligations and engaging in extensive discussions with the advisors to MWG's various stakeholder groups with respect thereto; and

- drafting and filing a motion to approve a stipulation between MWG affiliate Midwest Generation Procurement Services, LLC and Calgon Carbon Corporation [Docket No. 1159].

## XXXII.  Wind Projects (Matter 33)

(Fees: $187,435.50; Hours:  268.80)

66.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals on issues related to the Debtors' interests in wind energy projects and joint ventures owned and/or operated by certain of the Debtors' non-Debtor affiliates, including preparing a motion [Docket No. 832] seeking authority to approve EME's entry into a reaffirmation agreement in connection with non-Debtor affiliate Viento Funding II, Inc.'s refinancing.

## XXXIII.  Gas Projects (Matter 34)

(Fees: $75,952.50; Hours:  123.40)

67.     This Subject Matter includes time spent by K&E attorneys and paraprofessionals on issues related to the Debtors' interests in gas energy projects and joint ventures owned and/or operated by certain of the Debtors' non-Debtor affiliates.

## XXXIV.  Master Restructuring Agreement-EIX Investigation (Matter 35)

(Fees: $6,100,406.00; Hours:  10,385.40)

68.     This Subject Matter includes time spent by K&E professionals and paraprofessionals on matters related to the EIX Investigation and the EIX Settlement.   In connection with the complex claims and causes of action between EIX and EME, the Debtors

31

and K&E explored every option to engage EIX and resolve the EIX Investigation in a value-maximizing manner.  After the Debtors filed their initial plan of reorganization, K&E and EME's special investigation committee engaged EIX in intense, arms'-length discussions to resolve the potential claims and causes of action.  These negotiations were productive, and ultimately resulted in a global settlement.  Specifically, K&E attorneys and professionals spent time:

- obtaining Court approval to conduct an examination and issue subpoenas pursuant to Bankruptcy Rule 2004 with respect to the Transaction Support Agreement [Docket No. 339];

- negotiating and obtaining this Court's approval of a protective order governing disclosure of confidential information related to the EIX Investigation [Docket No. 340];

- obtaining entry of a Court order compelling production of documents from EIX [Docket No. 451], serving subpoenas in connection with the EIX Investigation, and engaging in conferences with counsel to EIX and other parties regarding the scope of production and EIX's assertions of privilege;

- reviewing and analyzing approximately 150,000 documents (totaling over one million pages) produced by EIX in connection with the EIX Investigation;

- working in concert with the Debtors' other advisors and the advisors for the Committee and the Noteholder Group to ensure that the EIX Investigation was conducted in an efficient manner and the efforts of the Debtors, the Committee, and the Noteholder Group were not duplicated;

- engaging in weekly telephone conferences with the advisors to the Committee regarding the status of the EIX Investigation and potential claims and causes of action against EIX;

- preparing a draft complaint against EIX and a report for EME's special investigation committee regarding potential causes of action against EIX and defenses thereto;

- engaging in discussions regarding the Committee's July 25, 2013 letter seeking derivative standing to pursue potential claims and causes of action against EIX;

- discussing, drafting, and filing an objection to the Committee's motion seeking derivative standing to pursue potential claims and causes of action against EIX [Docket No. 1090];

KE 30582741

- preparing and drafting a motion to compel production of documents and information withheld by EIX on privilege grounds [Docket No. 1727] and a brief in support thereof [Docket No. 1728];

- drafting and coordinating responses to EIX's requests for production and discovery;

- analyzing and discussing potential proposals for the resolution of the EIX Investigation;

- discussing and analyzing the claims asserted by EIX and its subsidiaries, including Southern California Edison, and drafting and revising motions to estimate and disallow the EIX claims;

- coordinating and engaging in discussions with advisors to EIX and the Noteholder Group regarding a potential settlement;

- reviewing, researching, and discussing the EIX corporate structure and tax position of the EIX consolidated group and drafting analysis materials and presentations for review by the EME investigation committee;

- negotiating and documenting the EIX Settlement;

- drafting a motion to approve the EIX Settlement and procedures to allow eligible voting creditors to object to the EIX Settlement; and

- working with EIX and the Debtors' other stakeholders and advisors to implement the terms of the EIX Settlement and the transactions contemplated thereby.

**XXXV.      Chevron Adversary Proceeding (Matter 36)**

(Fees:  $1,613,566.50; Hours:  2,652.80)

69.      This Subject Matter includes time spent by K&E professionals and paraprofessionals related to the adversary proceeding, Chevron Kern River Company, et al. v. Southern Sierra Energy Company, et al., Adv. Proc. No. 12-01954 (JPC) (Bankr. N.D. Ill.) (the "Chevron Adversary Proceeding"), and related contested proceedings.  Specifically, K&E spent significant time, among other things:

- researching, preparing, revising, and filing pleadings in response and opposition to Chevron's adversary complaint [Adv. Docket No. 11];

33

- preparing for a trial on January 16, 2013, that resulted in this Court denying Chevron's motions for a preliminary injunction and relief from the automatic stay [Adv. Docket No. 39];

- preparing pleadings and researching legal issues in connection with Chevron's two appeals to the United States District Court for the Northern District of Illinois of this Court's January 16, 2013 ruling, including filing a combined motion to dismiss and motion in opposition [Dist. Ct. Docket No. 7] and a reply [Dist. Ct. Docket No. 41];

- preparing a motion to assume the Kern River Cogeneration Company and Sycamore Cogeneration Company partnership agreements [Docket No. 1017];

- preparing, drafting, and filing a motion for a final order authorizing the assumption of the Kern River Cogeneration Company and Sycamore Cogeneration Company partnership agreements and in opposition to Chevron's motion to reopen the record in connection with the motion to assume [Docket No. 1400];

- engaging in discussions with NRG regarding the Chevron partnership agreements;

- preparing a motion to dismiss Chevron's amended adversary proceeding complaint; and

- corresponding and engaging in discussions with Chevron's counsel regarding the Chevron adversary proceeding and issues related thereto.

## XXXVI.     Crawford & Fisk Assets, 363 Sale (Matter 37)

(Fees: $305,436.00; Hours: 428.80)

70.     This Subject Matter includes legal services rendered in connection with Debtor MWG's potential disposition of the Chicago, Illinois-based Crawford and Fisk generating stations and certain related real estate assets. K&E billed its time worked for this Debtor separately from other matters because MWG pays K&E's fees and costs directly out of its own account.

34

## Reasonable and Necessary Services Rendered By K&E

71.     The foregoing professional services rendered by K&E on behalf of the Debtors during the Final Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

72.     Many of the services performed by partners and associates of K&E were rendered by K&E's Restructuring Group.  K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies.  The attorneys at K&E have represented debtors in many prominent and complex chapter 11 cases.

73.     In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from K&E's litigation, corporate, securities, debt finance, tax, and real estate groups were heavily involved with K&E's representation of the Debtors.  These practice groups also enjoy national and international reputations for their expertise.   Overall, K&E brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

74.     During the Final Fee Period, K&E advised and assisted the Debtors in many facets of these chapter 11 cases.  To this end, as set forth in detail in the summary attached to this Final Fee Application, numerous K&E partners, counsel, associates, and paraprofessionals from various K&E practice groups spent time rendering professional services on behalf of the Debtors. As discussed more fully above, the vast majority of the legal services provided to Debtors by K&E are attributable to the work performed by attorneys in the restructuring, litigation, corporate, debt finance, tax, and real estate practice groups.

**Actual and Necessary Expenses Incurred By K&E**

75.     K&E has incurred a total of $1,152,442.30 in expenses on behalf of the Debtors during the Final Fee Period. These charges are intended to reimburse K&E's direct operating costs, which are not incorporated into the K&E hourly billing rates. K&E charges external copying at the provider's cost without markup. Only clients who actually require such services are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. Further, K&E wrote off certain expenses relating to legal research, telephone conference services, and administrative staff overtime at the request of the Debtors.

76.     The time constraints imposed by the circumstances of these chapter 11 cases required K&E attorneys and other employees to devote, from time to time, evenings and weekends to perform services on behalf of the Debtors. These services were essential to meet deadlines, to respond to daily inquiries from various creditors and other parties in interest on a timely basis, and to satisfy the demands of the Debtors' business and ensure the orderly administration of their estates given the exigent circumstances of these chapter 11 cases. Consistent with firm policy and as further disclosed in the K&E retention application, K&E attorneys and other K&E employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. K&E's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendering of legal services. The reimbursement amounts do not exceed those set forth in the Guidelines.

77.    On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in K&E's overhead for the purpose of setting billing rates and K&E has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

78.    Among other things, K&E makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  As mentioned above, K&E voluntarily has reduced the expenses requested by $296,543.64 during the Final Fee Period.

### K&E's Requested Compensation and Reimbursement Should Be Allowed

79.    Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).    Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to . . . a professional person, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;

KE 30582741

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

80. In these chapter 11 cases, K&E respectfully submits that the services for which it seeks compensation in this Final Fee Application were necessary for and beneficial to the Debtors and were rendered to protect and preserve the Debtors' estates. K&E further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited the Debtors' estates and the Debtors' constituents. K&E further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors' estates and all parties in interest.

81. During the course of these chapter 11 cases, K&E's hourly billing rates for attorneys ranged from $370 to $1,225. The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure predominantly used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. These rates and the rate

38

structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

82.     Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.   Hourly rates vary with the experience and seniority of the individuals assigned.   These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

83.     In sum, K&E respectfully submits that the professional services rendered by K&E on behalf of the Debtors during the Final Fee Period were necessary and appropriate given the complexity of these chapter 11 cases, the time spent by K&E, the nature and extent of K&E's services rendered, the value of K&E's services, and the cost of comparable services outside of bankruptcy, which are relevant factors set forth in section 330 of the Bankruptcy Code. Accordingly, K&E respectfully submits that approval of the compensation sought herein is warranted and should be approved on a final basis.

## Notice

84.     Notice of this Final Fee Application has been provided to:  (a) the Office of the U.S. Trustee for the Northern District of Illinois; (b) counsel to the Committee; (c) the indenture trustee for the Debtors' senior unsecured notes; (d) counsel to the Noteholder Group; (e) the indenture trustee for the lessor notes related to the Debtors' Powerton generating station in Pekin, Illinois, and units 7 and 8 of the Debtors' Joliet, Illinois, generating station and the pass-through trustee for the related pass-through certificates; (f) counsel to the ad hoc committee of certain holders of pass-through certificates related to the Debtors' Powerton and Joliet generating stations; (g) the owner trusts and the equity investors for the Debtors' Powerton and Joliet generating stations; (h) the state attorneys general for states in which the Debtors conduct

KE 30582741

business; (i) United States Attorney for the Northern District of Illinois; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (m) those parties who have requested service of papers in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and the *Order Approving Case Management Procedures* [Docket No. 128]. In light of the nature of the relief requested herein, K&E respectfully submits that no further notice is necessary.

<u>**No Prior Request**</u>

85.     No prior request for the relief sought in this Final Fee Application has been made to this or any other court.

WHEREFORE, K&E respectfully requests that this Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, allowing and awarding compensation for professional services rendered during the Final Fee Period in the amount of $30,568,017.00 and for reimbursement of all actual and necessary expenses incurred by K&E during the Final Fee Period in the amount of $1,152,442.30.

KE 30582741

Dated:  May 1, 2014

*/s/ David R. Seligman, P.C.*

James H.M. Sprayregen, P.C.
David R. Seligman, P.C.
Sarah Hiltz Seewer
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

- and -

Joshua A. Sussberg
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel to the Debtors
and Debtors in Possession
Other than Camino Energy Company*

41

KE 30582741

**<u>Exhibit A</u>**

**Proposed Order**