## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF MOTION OF THE EME REORGANIZATION TRUST
### TO TERMINATE THE EME REORGANIZATION TRUST AND FOR
### ENTRY OF A FINAL DECREE CLOSING CERTAIN CHAPTER 11 CASES

**PLEASE TAKE NOTICE** that on the **22nd day of December, 2016, at 9:30 a.m. (Central Time)** or as soon thereafter as counsel may be heard, the EME Reorganization Trust (the "Reorganization Trust") will appear before the Honorable Jacqueline P. Cox or any other judge who may be sitting in her place and stead, in Courtroom 680 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and present the attached ***Motion of the EME Reorganization Trust to Terminate the EME Reorganization Trust and for Entry of a Final Decree Closing Certain Chapter 11 Cases*** (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be filed with the Court, and served so as to be actually received by each of the following entities, by **December 15, 2016, at 4:00 p.m. (Central Time)**:  (a) counsel to the Reorganization Trust; (b) the Office of the U.S. Trustee for the Northern District of Illinois; (c) the United States Attorney for the Northern District of Illinois; (d) the Internal Revenue Service; and (e) those parties who have requested service of papers in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and the *Order Approving Case Management Procedures* [Docket No. 128].

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the case website maintained by

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).  The service address of the Reorganization Trust is: EME Reorganization Trust, c/o Akin Gump Strauss Hauer & Feld LLP, Attn: James Savin, 1333 New Hampshire Avenue NW, Washington, DC 20036.

GCG, Inc., the notice and claims agent for these chapter 11 cases, available at www.edisonmissionrestructuring.com or by calling (866) 241-6491. You may also obtain copies of any pleadings by visiting the Court's website at www.ilnb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  December 1, 2016
　　　　Chicago, Illinois

By:　  */s/ James Savin*　　　　　　　　　
James Savin (admitted *pro hac vice*)
Kevin M. Eide (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

and

David F. Staber (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)

and

David M. Neff
Brian Audette
**PERKINS COIE LLP**
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400 (Telephone)
(312) 324-9400 (Facsimile)

*Co-Counsel to the EME Reorganization Trust*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EDISON MISSION ENERGY, et al.,[1] | ) | Case No. 12-49219 (JPC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## MOTION OF THE EME REORGANIZATION TRUST TO TERMINATE THE EME REORGANIZATION TRUST AND FOR ENTRY OF A FINAL DECREE CLOSING CERTAIN CHAPTER 11 CASES

The EME Reorganization Trust (the "Reorganization Trust"), as successor in interest to

Edison Mission Energy ("EME"), one of the above-captioned debtors (together with its debtor

affiliates, the "Debtors"), respectfully submits this *Motion of the EME Reorganization Trust to*

*Terminate the EME Reorganization Trust and for Entry of a Final Decree Closing Certain*

*Chapter 11 Cases* (the "Motion")[2] and respectfully represents and sets forth as follows:

## JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).  The service address of the Reorganization Trust is: EME Reorganization Trust, c/o Akin Gump Strauss Hauer & Feld LLP, Attn: James Savin, 1333 New Hampshire Avenue NW, Washington, DC 20036.

[2]     Capitalized terms used but not otherwise defined in this Motion will have the meanings ascribed to them in the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (with Technical Modifications)* [Docket No. 2201] (the "Plan") or that certain Reorganization Trust Agreement, dated April 1, 2014, by and among the Managing Trustees listed on the signature pages thereto and Wilmington Trust, National Association, as Delaware Trustee [Docket No. 2259] (the "Reorganization Trust Agreement"), as applicable.

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 350(a) and 1142(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules") and Articles XII.14 and XII.23 of the Plan and Section 9.14 of the Reorganization Trust Agreement.

## BACKGROUND

4.      On December 17, 2012 (the "Petition Date"), seventeen of the Debtors filed petitions with the Court under chapter 11 of the Bankruptcy Code. On May 2, 2013, three additional Debtors filed petitions with the Court under chapter 11 of the Bankruptcy Code.

5.      On December 19, 2012, the Court entered an order authorizing the employment and retention of GCG, Inc. ("GCG")[3] as the notice, claims and solicitation agent of the Debtors. [Docket No. 126].

6.      On March 11, 2014, the Court entered an order confirming the Plan [Docket No. 2206] (the "Confirmation Order"). On April 1, 2014, the effective date (the "Effective Date") under the Plan occurred, and among other things, EME consummated the sale of substantially all of its assets to NRG Energy Holdings Inc. ("Purchaser") and NRG Energy, Inc. ("NRG Energy" and, together with Purchaser, "NRG") pursuant to the terms of the Purchase Agreement and the Confirmation Order, as provided for in Article IV.B of the Plan.

7.      Pursuant to Article IV.E of the Plan, on the Effective Date, the Reorganization Trust was established as the successor in interest to EME, and the Reorganization Trust

---

[3]    GCG is now known as Garden City Group, LLC.

Agreement was executed.  The Reorganization Trust was established for the primary purpose of effectuating the Post-Effective Date Reorganization Trust Matters, including liquidating, settling, compromising, or resolving all of the assets, liabilities, and claims excluded from the sale by EME of substantially all of its assets to NRG as well as other obligations described in the Plan.[4] Pursuant to Article IV.Y of the Plan, the Reorganization Trust is also required to conduct the Homer City Wind Down.

8.    Pursuant to Section 6.1 of the Reorganization Trust Agreement, the Reorganization Trust terminates upon the earlier of (i) the unanimous determination of the managing trustees (the "Managing Trustees") of the Reorganization Trust and (ii) the third anniversary of the Effective Date (*i.e.*, April 1, 2017), unless the term of the Reorganization Trust is extended in accordance with the terms of the Reorganization Trust Agreement.

9.    Since the Effective Date, the Reorganization Trust has made four distributions in the total aggregate gross amount of approximately $691.7 million to the beneficiaries (the "Beneficiaries") of the Reorganization Trust.  As of September 30, 2016, the Reorganization Trust held assets in the amount of approximately $44.1 million, including (i) approximately $42.5 million in cash, (ii) approximately $1.4 million in professional fee and service retainers and (iii) approximately $168,190 in prepaid expenses and deposits.

10.    The Reorganization Trust also has resolved all of the Post-Effective Date Reorganization Trust Matters.  As part of that process, the Reorganization Trust has resolved all (i) Claims for which the Reorganization Trust assumed liability under the Plan and (ii) other matters for which the Reorganization Trust was responsible, including, among other things,

---

[4]    In connection with acquiring substantially all of EME's assets, NRG assumed certain liabilities pursuant and subject to the terms and conditions of the Purchase Agreement and the Plan, including the responsibility for paying certain Claims, as further described in Sections 1.6 and 1.7 of the Purchase Agreement and the Plan.  In addition, upon its acquisition of EME's equity interests in the Acquired Companies, NRG became responsible for the administration of the Remaining Cases (as defined below) and the Closed Cases (as defined below).

reaching an agreement with Edison International ("EIX") on the value of EME's tax attributes in accordance with the terms of the EIX Settlement Agreement and conducting the EIX Note Sale in accordance with the terms of the Plan.  In addition, the Reorganization Trust is in the process of taking the final steps to complete the Homer City Wind Down, which the Reorganization Trust anticipates will be completed prior to the hearing on this Motion.

11.     In order to further ensure that no Claims against the Reorganization Trust remain pending, the Reorganization Trust filed a notice of its intent to terminate [Docket No. 2655] (the "Termination Notice") with the Court on October 17, 2016.[5]   At the direction of the Reorganization Trust, GCG (i) served the Termination Notice on all creditors, (ii) posted the Termination Notice to the public case administration website maintained by GCG and (iii) published the Termination Notice in the *Los Angeles Times*, the *Chicago Tribune* and *USA Today*.  *See* Docket Nos. 2656, 2665.  Pursuant to the Termination Notice, the Reorganization Trust (a) provided notice of its intent to terminate and distribute its remaining assets by December 31, 2016 and (b) requested that any party that believed that it was owed any amounts by the Reorganization Trust, whether on account of unresolved Claims or otherwise, provide written notice to the Reorganization Trust by no later than November 16, 2016.

12.     In response to the Termination Notice, the Reorganization Trust received twenty-two submissions from various parties asserting that they have Claims against the Reorganization Trust.  Based on a review of those submissions, the Reorganization Trust has determined that those parties do not hold valid Claims against the Reorganization Trust.  A summary of the

---

[5]     In addition to the Termination Notice, the Reorganization Trust filed a notice of satisfaction (the "Notice of Satisfaction") of certain Claims [Docket No. 2664] with the Court on November 23, 2016.  The objection deadline for the Notice of Satisfaction is December 9, 2016.  While the Reorganization Trust does not anticipate that any objections will be filed, in the event any objections are received, the Reorganization Trust will seek to address such objections prior to the hearing on this Motion.

submissions received and the basis for the Reorganization Trust's determinations is attached

hereto as Exhibit A.

13.     Accordingly, there are no remaining matters for the Reorganization Trust to

address, and thus, the Reorganization Trust should be terminated and the chapter 11 cases

identified below (collectively, the "Designated Cases") should be closed:

| Debtor Name | Case No. |
|---|---|
| Edison Mission Energy | 12-49219 |
| Chestnut Ridge Energy Company | 12-49220 |
| Edison Mission Holdings Co. | 12-49225 |
| Mission Energy Westside, Inc. | 12-49231 |
| EME Homer City Generation L.P. | 13-18703 |
| Edison Mission Finance Co. | 13-18704 |
| Homer City Property Holdings, Inc. | 13-18705 |

14.     For the avoidance of doubt, after the Designated Cases are closed, the following

cases will remain open (the "Remaining Cases"):[6]

| Debtor Name | Case No. |
|---|---|
| Midwest Generation, LLC | 12-49218 |
| Edison Mission Midwest Holdings Co. | 12-49226 |
| Midwest Generation EME, LLC | 12-49228 |

15.     Each of the Remaining Cases relates to a reorganized Debtor that was an

Acquired Company that is now owned by NRG.  Accordingly, NRG is responsible for the

administration of the Remaining Cases.  NRG shall be solely responsible for the payment of all

fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) with

respect to the Remaining Cases and all other matters relating to the Remaining Cases.

---

[6]     On August 26, 2014, NRG filed a motion for a final decree [Docket No. 2487] with respect to the chapter 11
cases of certain other Acquired Companies, including (i) Camino Energy Company (Case No. 12-49222), (ii)
Edison Mission Energy Fuel Services, LLC (Case No. 12-49221), (iii) Edison Mission Fuel Resources, Inc.
(Case No. 12-49223), (iv) Edison Mission Fuel Transportation, Inc. (Case No. 12-49224), (v) Midwest Finance
Corp. (Case No. 12-49227), (vi) Midwest Generation Procurement Services, LLC (Case No. 12-49227), (vii)
Midwest Peaker Holdings, Inc. (Case No. 12-49230), (viii) San Joaquin Energy Company (Case No. 12-49232),
(ix) Southern Sierra Energy Company (Case No. 12-49233) and (x) Western Sierra Energy Company (Case No.
12-49234) (collectively, the "Closed Cases").  On September 17, 2014, the Court entered a final decree closing
the Closed Cases [Docket No. 2512].

## RELIEF REQUESTED

16.     By this Motion, the Reorganization Trust seeks entry of a final decree and order (the "Final Decree"), pursuant to Bankruptcy Code sections 105(a), 350(a) and 1142, Bankruptcy Rule 3022 and Local Rule 3022-1, (i) authorizing the Managing Trustees to terminate the Reorganization Trust, (ii) authorizing the Reorganization Trust to withhold the Wind Down Funds (as defined below), (iii) authorizing the Reorganization Trust to destroy the Trust Records (as defined below), (iv) closing the Designated Cases, and (v) discharging and releasing GCG from further duties as court-appointed notice, claims and solicitation agent of the Debtors.

## BASIS FOR RELIEF

### A.    Termination of the Reorganization Trust

17.     Bankruptcy Code section 105(a) states, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Code section 1142(b), in turn, states that "[t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of a plan." 11 U.S.C. § 350.

18.     Pursuant to the Plan and Reorganization Trust Agreement, the Reorganization Trust is required to dissolve by upon the earlier of (i) the unanimous determination of the Management Trustees and (ii) the third anniversary of the Effective Date. *See* Reorganization Trust Agreement § 6.1. The duration of the Reorganization Trust may be extended "for a finite period if it is necessary to the liquidating purpose thereof." *See id.* However, the Reorganization Trust Agreement provides that "the Managing Trustees shall not unduly prolong the duration of

the Reorganization Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets and to effect the distribution of the Trust Assets to the Beneficiaries in accordance with the terms [of the Reorganization Trust Agreement] and terminate the Reorganization Trust as soon as practicable in light of the terms of the Trust Assets." *See id.*

19.     While the Reorganization Trust believes that it is authorized to terminate without further order of the Court under the terms of the Reorganization Trust Agreement and the Plan, the Reorganization Trust has filed this Motion out of an abundance of caution due, in part, to the submissions received in response to the Termination Notice.

### 1.    The Reorganization Trust Should Be Terminated

20.     The termination of the Reorganization Trust at this time is appropriate and consistent with the terms of the Plan and the Reorganization Trust Agreement.  As noted above, the Reorganization Trust has resolved all of the Post-Effective Date Reorganization Trust Matters.  The Reorganization Trust has resolved all Claims for which the Reorganization Trust assumed liability under the Plan and resolved all of the other matters for which the Reorganization Trust was responsible, including with respect to fixing the value of EME's tax attributes and conducting the EIX Note Sale.  In addition, as set forth in Exhibit A hereto, none of the parties that submitted responses to the Termination Notice have valid Claims against the Reorganization Trust.  Finally, the Reorganization Trust anticipates that the Homer City Wind Down will be completed by the date of the hearing on this Motion.  Thus, there is no reason for the Reorganization Trust to continue in existence, and in accordance with the terms of the Reorganization Trust Agreement, the Reorganization Trust should be terminated.

21.     Moreover, if the Reorganization Trust were to remain in existence, it would continue to incur costs related to, among other things, employee wages and professional fees, but the Reorganization Trust does not anticipate that it would generate any revenue going forward. As a result, the cost of keeping the Reorganization Trust active likely would reduce the value available for distribution to Beneficiaries.  For that reason, the Reorganization Trust should be terminated now in order to ensure the greatest possible distribution to Beneficiaries.

22.     Based on the foregoing, the Reorganization Trust should be terminated in order to (i) avoid unduly prolonging the duration of the Reorganization Trust, as well as the potential decrease in value available to Beneficiaries resulting from the continued existence of the Reorganization Trust, and (ii) enable the Reorganization Trust to effect the distribution of the remaining assets of the Reorganization Trust to Beneficiaries.

**2.     The Reorganization Trust Should Be Authorized to Withhold the Wind Down Funds**

23.     As noted above, as of September 30, 2016, the Reorganization Trust was holding assets in the amount of approximately $44.1 million, including (i) approximately $42.5 million in cash, (ii) approximately $1.4 million in professional fee and service retainers and (iii) approximately $168,190 in prepaid expenses and deposits.  The Reorganization Trust anticipates that the vast majority of such assets will be distributed to the Beneficiaries upon the termination of the Reorganization Trust.

24.     Once the Reorganization Trust is terminated, however, the Reorganization Trust and its professionals still will be required to perform certain post-termination activities required by the Reorganization Trust Agreement or applicable law (collectively, the "Wind Down Activities"), including (i) ensuring the destruction of the Trust Records, (ii) fulfilling certain

federal tax reporting obligations, including filing tax returns and preparing tax information for the Beneficiaries of the Reorganization Trust and (iii) addressing various administrative matters.

25.    For that reason, the Reorganization Trust intends to withhold from the final distribution made by the Reorganization Trust to the Beneficiaries funds (the "Wind Down Funds") in an amount that is determined in good faith to be necessary to pay the reasonable and necessary costs and expenses, including professional fees, associated with the Wind Down Activities.

**3.    The Reorganization Trust Should Be Authorized to Destroy the Trust Records**

26.    The Reorganization Trust holds certain documents and records, including, among other things, original files stored at Iron Mountain and electronic records utilized in connection with the administration of the Reorganization Trust (collectively, the "Trust Records").

27.    The Reorganization Trust has determined that the Trust Records are not necessary to the administration of the Reorganization Trust.  Further, other interested parties, including EIX, have indicated that they have no need for any of the Trust Records.

28.    Because the Reorganization Trust has no future operations, it is not necessary to maintain the Trust Records, and the cost to continue storing the Trust Records would be unduly burdensome.  Accordingly, the Reorganization Trust submits that destruction of the Trust Records is appropriate and will further the Reorganization Trust's efforts to terminate in an orderly and efficient manner.

**B.    The Designated Cases Should Be Closed**

29.    Bankruptcy Code section 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  Bankruptcy Rule 3022 implements the Bankruptcy Code's requirements, providing similarly that, "[a]fter an

estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."  Local Rule 3022-1(a) provides that, "debtors or other parties in interest moving after chapter 11 plan confirmation either to close the case or enter a final decree shall (1) give notice of such motion to the U.S. Trustee, any chapter 11 trustee, and all creditors, and (2) state within the notice or motion the actual status of payments due to each class under the confirmed plan."

30.     The term "fully administered" is not defined in the Bankruptcy Code or the Bankruptcy Rules.  The Advisory Committee Note to Bankruptcy Rule 3022, however, sets forth the following non-exclusive list of factors to be considered to determine whether a case has been fully administered: (1) whether the order confirming the plan has become final; (2) whether deposits required by the plan have been distributed; (3) whether the property proposed by the plan to be transferred has been transferred; (4) whether the debtor or the successor to the debtor under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.  Various courts in this circuit have used these factors as a guide for determining whether a case should be closed.  *See*, *e.g.*, *In re Jordan Mfg. Co., Inc.*, 138 B.R. 30 (Bankr. C.D. Ill. 1992) (determining that cases were fully administered and final decrees should be entered); *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462 (Bankr. N.D. Ill. 1998) (same).

31.     It is not required that all factors identified in the Advisory Committee Note be satisfied.  As previously recognized by the Court, "[t]he Court finds the Committee Note to the new [Bankruptcy Rule 3022] illuminative and essentially adopts its language.  Noteworthy, however, is that all of the factors in the Committee Note need not be present before the Court

will enter a final decree." *In re Mold Makers, Inc.*, 124 B.R. 766, 768–69 (Bankr. N.D. Ill.

1990).  Instead, the *Mold Makers* Court stated that "the Committee Note [to Bankruptcy Rule

3022] and the factors therein merely serve as a guide in assisting the Court in its decision to close

a case."  *Id.* at 768; *see also In re Xpedior Inc.*, 354 B.R. 210, 219 (Bankr. N.D. Ill. 2006)

(finding that satisfaction of the Advisory Committee Notes factors (1), (2), (3), and (5) meant

there was "little doubt that the Debtors' estates have been 'fully administered'"); *In re Wade*, 991

F.2d 402, 407 (7th Cir. 1993) (citing *Mold Makers*, 124 B.R. at 768–69).

32.    Here, each of the above-listed factors has been satisfied as they relate to the

Designated Cases and collectively weigh in favor of issuing the Final Decree closing the

Designated Cases.  The Confirmation Order became a final order over two years ago.  Apart

from the final distribution to be made by the Reorganization Trust prior to termination and any

Claims on account of EME Assumed Liabilities that may be satisfied by NRG in the ordinary

course of business (if any), the property required to be transferred under the Plan has been

transferred, and the payments required to be made under the Plan have been made.[7]  In addition,

the Plan has been substantially consummated.  All expenses arising from the administration of

the Designated Cases, including professional fees, court fees, United States Trustee fees, and

expenses, have been paid or will be paid in connection with entry of the Final Decree.  Finally,

there are no motions, contested matters, and other proceedings which were before this Court in

the Designated Cases, other than this Motion, which remain unresolved.  Accordingly, the

Reorganization Trust submits that the chapter 11 estates of the applicable Debtors have been

fully administered and requests entry of the Final Decree closing the Designated Cases.

---

[7]    In accordance with Local Rule 3022-1, a summary of the disposition of claims and interests in the Designated Cases is attached hereto as <u>Exhibit B</u>.

**C.      GCG Should Be Discharged from Further Duties as the Notice, Claims and Solicitation Agent**

33.      Given that the Designated Cases have been fully administered and GCG has successfully completed the performance of all of its obligations under the terms of the bankruptcy administration agreement entered into on August 23, 2012 between GCG and the Debtors (the "GCG Retention Agreement"), the Reorganization Trust seeks to terminate GCG's retention as the notice, claims and solicitation agent and release GCG from further obligations in these chapter 11 cases.

34.      Specifically, the Reorganization Trust requests that the Final Decree provide the following:

     i.    Upon compliance with the requirements set forth in the Final Decree, GCG will be released and discharged from any and all responsibilities in the Debtors' chapter 11 cases;

    ii.    Within fourteen days or as soon as reasonably practicable after entry of the Final Decree, GCG is directed to forward to the Clerk of Court a final claims register, all original proofs of claim and an updated mailing list, at the direction of the Clerk's Office;

   iii.    GCG is authorized to (i) deactivate the public case administration website and toll-free restructuring hotline upon entry of the Final Decree or as soon as practicable thereafter; provided that GCG shall maintain a static version of the public case administration website, and upon the request of the Reorganization Trust or its professionals, post tax reporting information for the Beneficiaries of the Reorganization Trust to such website until December 31, 2017 and (ii) close the post office box dedicated to receiving mail in these chapter 11 cases upon the entry of the Final Decree or as soon as practicable thereafter;

   iv.    Following entry of the Final Decree, GCG may destroy any and all physical copies of documents pertaining to these chapter 11 cases in its actual or constructive possession, including, but not limited to: (a) excess copies of notices, pleadings, plan solicitation documents, customized envelopes or any other printed materials; (b) letters, emails, facsimiles or other correspondence received in these chapter 11 cases; (c) all undeliverable mail and/or returned mail; and (d) all other materials related to these chapter 11 cases.

35.     In the event that GCG receives any mail relating to the Debtors in the Designated Cases or the Reorganization Trust after entry of the Final Decree, GCG will collect and forward such mail on a monthly basis to the Reorganization Trust's counsel at the following address: Akin Gump Strauss Hauer & Feld LLP, Attn: James Savin, 1333 New Hampshire Avenue, NW, Washington, DC 20036-1564.

36.     In the event that GCG receives any mail relating to any of the other Debtor entities after entry of the Final Decree, GCG will collect and forward such mail on a monthly basis to NRG's counsel at the following address: Baker Botts LLP, Attn: C. Luckey McDowell and Ian Roberts, 2001 Ross Avenue, Dallas, TX 75201-2980.

## NOTICE

37.     In accordance with Local Rule 3022-1(b), notice of this Motion shall be provided on the date hereof via U.S. first class mail to (i) the Office of the U.S. Trustee, (ii) counsel to NRG, (iii) counsel to EIX, (iv) counsel to NRG and (iv) all creditors.  In light of the nature of the relief requested in this Motion and Local Rule 3022-1, the Reorganization Trust respectfully submits that no further notice is necessary.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Reorganization Trust respectfully requests that this Court enter a final decree, substantially in the form annexed hereto as Exhibit C, (i) authorizing the Managing Trustees to terminate the Reorganization Trust, (ii) authorizing the Reorganization Trust to withhold the Wind Down Funds, (iii) authorizing the Reorganization Trust to destroy the Trust Records, (iv) closing the Designated Cases, (v) discharging and releasing GCG from further duties as court-appointed notice, claims and solicitation agent and (vi) granting such other and further relief as this Court deems just and proper.

13

Dated:  December 1, 2016
       Chicago, Illinois

By:   */s/ James Savin*
James Savin (admitted *pro hac vice*)
Kevin M. Eide (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
(202) 887-4000 (Telephone)
(202) 887-4288 (Facsimile)

and

David F. Staber (admitted *pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)

and

David M. Neff
Brian Audette
**PERKINS COIE LLP**
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400 (Telephone)
(312) 324-9400 (Facsimile)

*Co-Counsel to the EME Reorganization Trust*

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| 1. | Commonwealth Edison Company ("ComEd") | • ComEd delivered a reservation of rights letter pursuant to which ComEd reserved its rights to seek payment of the following Claims from the Reorganization Trust:[1] (i) Claim Nos. 1296-99; (ii) Claim Nos. 1300, 1301, 2055, 2056, 2057 and 2058; and (iii) Claim Nos. 1302, 1303, 2063 and 2064 (collectively, the "Specified ComEd Claims"). | • Pursuant to the *Amended Stipulation Resolving Certain Rejection Damages Claims Asserted by Commonwealth Edison Company* [Docket No. 2551] (the "ComEd Stipulation"), the Reorganization Trust and ComEd agreed that liability with respect to the Specified ComEd Claims was transferred to the Purchaser and/or NRG Energy or retained by the applicable Post-Effective Date Debtor Subsidiaries (each of which is an Acquired Company now owned by NRG).  Further, to the extent that the Specified ComEd Claims are ultimately allowed, the Reorganization Trust and ComEd agreed that any and all liability would be borne by the Purchaser, NRG Energy or the applicable Post-Effective Date Debtor Subsidiary to the extent provided under the Plan and the Purchase Agreement.<br><br>• On January 21, 2015, the Court entered an order [Docket No. 2562] (the "ComEd Order") approving the ComEd Stipulation.<br><br>• Based on the ComEd Stipulation and the ComEd Order, the Reorganization Trust has no liability to ComEd with respect to the Specified ComEd Claims. |
| 2. | Vladimir Svirsky | • Prior the Petition Date, Mr. Svirsky purchased EME Senior Notes.<br><br>• In accordance with the terms of the Plan, Mr. Svirsky received his pro rata share of Reorganization Trust units in full and final satisfaction, and in exchange for, his Claims based on his EME Senior Notes. | • If Mr. Svirsky remains a holder of Reorganization Trust units, he is a Beneficiary of the Reorganization Trust.<br><br>• Like all other Beneficiaries, Mr. Svirsky will receive his pro rata share of the final distribution to be made by the Reorganization Trust, provided that he continues to hold Reorganization Trust units at the time of the final distribution. |
| 3. | Thomas Woodrow Huston | • Mr. Huston, an inmate in Florida, asserts that he has suffered from health issues for the past three years, and that he was not previously aware of the chapter 11 cases.<br><br>• Mr. Huston provided no identifiable basis for a Claim against the EME Reorganization Trust. | • Based on the available information, the Reorganization Trust does not believe that Mr. Huston holds a valid Claim against the Reorganization Trust. |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| 4. | Jeffrey Jones | • Mr. Jones is a former employee of Midwest Generation, LLC ("Midwest Generation")<br><br>• Mr. Jones asserts that he received a distribution in connection with the Retiree Settlement (as defined herein), and that he is owed unspecified amounts by the Reorganization Trust. | • On May 20, 2014, the Reorganization Trust filed the *Motion of EME Reorganization Trust for Entry of Orders Approving (I) Debtors' Motion to Terminate Retiree Benefits and Related Relief; and (II) Settlement Among EME Reorganization Trust Reorganization Trust and the Retiree Group and Related Relief* [Docket No. 2352] (the "Motion to Terminate"), which sought, among other things, approval of that certain settlement agreement (the "Retiree Settlement") among the Reorganization Trust, certain retirees (the "Retiree Group") and counsel to the Retiree Group.<br><br>• On June 25, 2014, the Court entered an order [Docket No. 2438] approving the Motion to Terminate and the Retiree Settlement.<br><br>• Thereafter, Mr. Jones received a payment from the Reorganization Trust in accordance with the terms of the Retiree Settlement.<br><br>• Because Mr. Jones has already received his settlement payment in accordance with the terms of the Retiree Settlement, no further amounts are owed to Mr. Jones.<br><br>• In addition, on October 21, 2015, the Court entered an order [Docket No. 2635] authorizing the Reorganization Trust to complete payments under the Retiree Group, which, among other things, deemed the Reorganization Trust to have satisfied its obligations under the Retiree Settlement (the "Final Retiree Settlement Order"). |
| 5. | Peter Spuler, Jr. | • Mr. Spuler asserts that he was a holder of EME Senior Notes, and that he is owed $5,187.50 on account of his EME Senior Notes.<br><br>• Mr. Spuler also objects to the previous disallowance of his proof of claim. | • Mr. Spuler previously filed a proof of claim [Claim No. 62] asserting a claim in the amount of $5,187.50 on account of his EME Senior Notes.<br><br>• On February 19, 2014, the Court entered an order [Docket No. 2082] disallowing and expunging Mr. Spuler's proof of claim in its entirety on the grounds that such proof of claim was |

2

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

|  | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
|  |  |  | duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br><br>• Accordingly, no amounts are owed to Mr. Spuler by the Reorganization Trust. |
| 6. | Harry Peddicord | • Mr. Peddicord is a retiree who was employed at Homer City generating station.<br><br>• Mr. Peddicord filed a proof of claim [Claim No. 1927] asserting a Claim in the amount of $350,000 on account of the termination of his retiree benefits.<br><br>• Mr. Peddicord acknowledges that he participated in the settlement (the "<u>Homer City Retiree Settlement</u>") reached between the Debtors and certain retirees represented by the International Brotherhood of Electrical Workers Local 459 (the "<u>IBEW Local 459</u>"), but he contends that his proof of claim should be treated separately from the Homer City Retiree Settlement. | • On January 27, 2014, the Debtors filed the *Debtors' Motion for Approval of Settlement Between the Debtors and Certain Retirees Represented by International Brotherhood of Electrical Workers Local 459* [Docket No. 1922] (the "<u>Homer City Retiree Settlement Motion</u>"), which sought approval of the Homer City Retiree Settlement between the Debtors and the IBEW Local 459, as the authorized representative of each individual listed in a schedule to the Retiree Settlement.<br><br>• Pursuant to the Homer City Retiree Settlement, each retiree was deemed to have a separated Allowed Class C3 General Unsecured Claim against EME Homer City Generation L.P. under the Plan only in the applicable amount set forth in a schedule to the Homer City Retiree Settlement, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for any Claims, whether or not filed or asserted in the Debtors' chapter 11 cases, relating to retiree benefits. In addition, any other retiree benefit Claims filed by the IBEW Local 459, any retirees, or any other person was deemed withdrawn and denied with prejudice.<br><br>• On February 4, 2014, the Court entered an order [Docket No. 1999] approving the Homer City Retiree Settlement Motion and the Homer City Retiree Settlement.<br><br>• Mr. Peddicord was listed as a participant in the Homer City Retiree Settlement, and received distributions thereunder, including the supplemental distribution made by Reorganization Trust in accordance with an order entered by the Court on January 21, 2015 [Docket No. 2560]. |

3

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | | • Accordingly, Mr. Peddicord's proof of claim was deemed withdrawn and denied with prejudice in accordance with the terms of the Homer City Retiree Settlement, and Mr. Peddicord does not hold a Claim against the Reorganization Trust. |
| 7. | IUP Research Institute | • IUP Research Institute asserts a claim in the amount of $6,288 on account of SERT training provided to Homer City Generation L.P. in 2016. | • The Reorganization Trust is not affiliated with, and does not own, Homer City Generation, L.P., and accordingly, the Reorganization Trust has no liability for the amounts asserted by IUP Research Institute.<br><br>• Any Claims for services provided to Homer City Generation, L.P. in 2016 should be directed to that entity. |
| 8. | Mikel Company Pension Trust | • Mikel Company Pension Trust asserts that it is a holder of Reorganization Trust units and owed amounts on the basis thereof. | • If the Mikel Company Pension Trust remains a holder of Reorganization Trust units, it is a Beneficiary of the Reorganization Trust.<br><br>• Like all other Beneficiaries, the Mikel Company Pension Trust will receive its pro rata share of the final distribution to be made by the Reorganization Trust, provided that it continues to hold Reorganization Trust units at the time of the final distribution. |
| 9. | Vincent Scott | • Mr. Scott is a retiree who was employed at the Homer City generating station, and his retiree benefits were terminated.<br><br>• Mr. Scott asserts that he was not a member of the bargaining unit represented by the IBEW Local 459, and thus, he did not participate in the Homer City Retiree Settlement.<br><br>• While he expresses displeasure regarding the termination of his retiree benefits, Mr. Scott does not assert an actual Claim against the Reorganization Trust. | • Because he was not a member of the bargaining unit represented by the IBEW Local 459, Mr. Scott was not entitled to participate in the Homer City Retiree Settlement.<br><br>• Mr. Scott did not file a proof of claim in the Debtors' chapter 11 cases.<br><br>• Accordingly, Mr. Scott does not hold a valid Claim against the Reorganization Trust. |
| 10. | Michael Kevin Murphy | • Mr. Murphy was a holder of EME Senior Notes, and he asserts that he is owed amounts on account thereof. | • Mr. Murphy previously filed a proof of claim [Claim No. 128] asserting a claim in the amount of $94,351.39 on account of his |

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | | EME Senior Notes.<br><br>• On March 6, 2014, the Court entered an order [Docket No. 2170] disallowing and expunging Mr. Murphy's proof of claim in its entirety on the grounds that such proof of claim was duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br><br>• Accordingly, no amounts are owed to Mr. Murphy by the Reorganization Trust. |
| 11. | John Kunst | • Mr. Kunst was employed by the Debtors at the Homer City generating station, and he asserts a claim in the amount of approximately $4,000 on account of the forfeiture of the unvested company contribution portion of his 401k savings plan in the spring of 2013.<br><br>• Mr. Kunst asserts that the forfeiture should not have occurred because he did not leave his job, and he was not terminated.<br><br>• Mr. Kunst asserts that he continues to be employed at the Homer City generating station, which is now operated by NRG. | • The Reorganization Trust does not believe that Mr. Kunst states a valid Claim.<br><br>• In addition, Mr. Kunst did not file a proof of claim or administrative claim prior to the applicable bar dates, and thus, he does not hold a claim against the Reorganization Trust. |
| 12. | Steven Cackovic | • Mr. Cackovic asserts that he is a former Midwest Generation employee who received a payment under the Retiree Settlement.<br><br>• Mr. Cackovic asserts that he is owed benefits by the Reorganization Trust, but he fails to provide any further basis for his claim. | • Mr. Cackovic received a payment from the Reorganization Trust in accordance with the terms of the Retiree Settlement.<br><br>• Under the Final Retiree Settlement Order, no further amounts are owed to Mr. Cackovic by the Reorganization Trust. |
| 13. | John Gaddie | • Mr. Gaddie asserts that he was the holder of EME Senior Notes, and that he is owed (i) $20,000 on account of his EME Senior Notes and (ii) $6,200 in accrued but unpaid interest on his EME Senior Notes. | • Mr. Gaddie previously filed a proof of claim [Claim No. 1606] asserting a claim in the amount of $20,775 on account of his EME Senior Note Claims.<br><br>• On February 19, 2014, the Court entered an order [Docket No. |

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | | 2084] disallowing and expunging Mr. Gaddie's proof of claim in its entirety on the grounds that such proof of claim was duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br><br>• Accordingly, no amounts are owed to Mr. Gaddie by the Reorganization Trust. |
| 14. | Resources Global Professionals | • Resources Global Professionals asserts a claim in the amount of $1,450 for professional services performed by a consultant for EME during the week of February 17, 2007. | • Resources Global Professionals did not file a proof of claim by the applicable bar date, and thus, they do not hold a valid Claim.<br><br>• Accordingly, no amounts are owed to Resources Global Professionals by the Reorganization Trust. |
| 15. | David Miloser | • Mr. Miloser is a retiree who was employed at the Homer City generating station, and his retiree benefits were terminated.<br><br>• Mr. Miloser asserts that he was not a member of the bargaining unit represented by the IBEW Local 459, and thus, he did not participate in the Homer City Retiree Settlement.<br><br>• While he expresses displeasure regarding the termination of his retiree benefits, Mr. Miloser does not assert an actual Claim against the Reorganization Trust. | • Because he was not a member of the bargaining unit represented by the IBEW Local 459, Mr. Miloser was not entitled to participate in the Homer City Retiree Settlement.<br><br>• Mr. Miloser did not file a proof of claim in the Debtors' chapter 11 cases.<br><br>• Accordingly, Mr. Miloser does not hold a valid Claim against the Reorganization Trust. |
| 16. | Mary Quarles | • Ms. Quarles is a former employee of Midwest Generation.<br><br>• She asserts that she lost her job and medical benefits, and that she is entitled to compensation. | • Ms. Quarles received a payment from the Reorganization Trust in accordance with the terms of the Retiree Settlement.<br><br>• Under the Final Retiree Settlement Order, no further amounts are owed to Ms. Quarles by the Reorganization Trust |
| 17. | Daniel Warren | • Mr. Warren asserts that he is the holder of Reorganization Trust units. | • If Mr. Warren remains a holder of Reorganization Trust units, he is a Beneficiary of the Reorganization Trust.<br><br>• Like all other Beneficiaries, Mr. Warren will receive his pro rata share of the final distribution to be made by the Reorganization |

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | | Trust, provided that he continues to hold Reorganization Trust units at the time of the final distribution. |
| 18. | John Jensik | • Mr. Jensik is a former holder of EME Senior Notes, and in accordance with the terms of the Plan, he received Reorganization Trust units on account of his EME Senior Notes Claims.<br><br>• Mr. Jensik alleges that he sold his Reorganization Trust units in November 2014. In connection therewith, he asserts that he lost $9,910.09, which he contends he is now owed by the Reorganization Trust. | • Mr. Jensik seeks payment for losses on his investment. The Reorganization Trust has no liability to Mr. Jensik on account of his investment losses.<br><br>• In addition, Mr. Jensik filed a proof of claim [Claim No. 243] on account of his EME Senior Notes. On February 19, 2014, the Court entered an order [Docket No. 2087] disallowing and expunging Mr. Jensik's proof of claim in its entirety on the grounds that such proof of claim was duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br><br>• Accordingly, no amounts are owed to Mr. Jensik by the Reorganization Trust. |
| 19. | Robert Moritz | • Mr. Moritz previously filed a proof of claim [Claim No. 1212] in the amount of $11,850 on account of his EME Senior Notes.<br><br>• Mr. Moritz is aware that his proof of claim was disallowed and expunged in its entirety on the grounds that such proof of claim was a duplicate claim, but he believes that the disallowance of his proof of claim was a mistake because he filed only one proof of claim.<br><br>• Accordingly, he believes that his Claim is valid, and that he is owed $11,850 by the Reorganization Trust. | • Mr. Moritz's proof of claim was duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br><br>• For that reason, on February 19, 2014, the Court entered an order [Docket No. 2085] disallowing and expunging Mr. Moritz's proof of claim in its entirety as a duplicate claim.<br><br>• Accordingly, no amounts are owed to Mr. Moritz by the Reorganization Trust. |
| 20. | Professional Locomotive Services | • Professional Locomotive Services asserts that it is owed $90,425.50 for work that was performed for Midwest Generation (Waukegan and Will County locations).<br><br>• Professional Locomotive Services also asserts that they are continuing to perform work for Midwest Generation, but that | • Midwest Generation scheduled Professional Locomotive Services' claim in the contingent, unliquidated amount of $16,997. However, Professional Locomotive Services did not file a proof of claim as required by the bar date order.<br><br>• Because Professional Locomotive Services did not file a proof of |

**EXHIBIT A**

**Summary of Responses to the Termination Notice**

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | the invoiced amounts remain unpaid.<br>• The majority of the invoices relate to periods that are either (i) prior to the Petition Date or (ii) after the Effective Date. | claim for the prepetition amounts it is allegedly owed as required by the bar date order, its prepetition Claim was deemed disallowed.<br>• In addition, Professional Locomotive Services did not file an Administrative Claim for services performed during the chapter 11 cases by the Administrative Claims Bar Date.<br>• Any amounts owed for services provided during the period after the Effective Date are obligations of Midwest Generation, which is now owned by NRG.<br>• In addition to the foregoing, any liability to Professional Locomotive Services would have been assumed by NRG under the Plan and the Purchase Agreement.<br>• Accordingly, no amounts are owed to Professional Locomotive Services by the Reorganization Trust. |
| 21. | Neil Jasper / Jasper Bros. of CA Profit Sharing Trust | • Mr. Jasper asserts that he was a holder of EME Senior Notes, and he allegedly sold his EME Senior Notes on December 17, 2012.<br>• Mr. Jasper contends that although he sold his EME Senior Notes, he is entitled to payment of the interest that came due on the EME Senior Notes in November 2012. | • Mr. Jasper and/or the Jasper Bros. of CA Profit Sharing Trust previously filed proofs of claim [Claim Nos. 1082, 1083, 1084 and 1086] asserting claims in the total aggregate amount of $37,860.20 on account of his EME Senior Notes.<br>• On February 19, 2014, the Court entered an order [Docket No. 2087] disallowing and expunging the proofs of claim filed by Mr. Jasper and/or the Jasper Bros. CA Profit Sharing Trust in their entirety on the grounds that such proofs of claim were duplicative of the proof of claim filed by the EME Senior Notes Indenture Trustee.<br>• Accordingly, no amounts are owed to Mr. Jasper or the Jasper Bros. of CA Profit Sharing Trust by the Reorganization Trust. |
| 22. | Terence McCreery | • Mr. McCreery asserts a severance claim in the amount of $52,518.32. | • Mr. McCreery continued his employment with NRG after the sale of EME's assets to NRG, and he was not an "Excluded |

## EXHIBIT A

### Summary of Responses to the Termination Notice

| | Party | Basis of Alleged Claim | Response |
|---|---|---|---|
| | | • Mr. McCreery alleges that he is a former employee of Midwest Generation.  He asserts that he continued his employment during the chapter 11 cases, and for a period of time, after the transition to NRG.<br><br>• Mr. McCreery contends that he was offered employment with NRG in Princeton, NJ, but he rejected the offer because the position was allegedly more than 50 miles from his home.<br><br>• Mr. McCreery asserts that he then requested severance from NRG, but he was informed that he would need to continue working on the transition process in order to be eligible, which he disputes.<br><br>• Mr. McCreery filed a claim with the State of Illinois Department of Labor, but the Department determined that it did not have jurisdiction due to the chapter 11 case. | Employee" under the Purchase Agreement.<br><br>• Accordingly, under the terms of the Purchase Agreement and the Plan, the Reorganization Trust does not have any obligation to pay severance to Mr. McCreery.<br><br>• Accordingly, no amounts are owed to Mr. McCreery by the Reorganization Trust. |

**EXHIBIT B**

**Summary of Disposition of Claims and Interests in the Designated Cases**

| Class | Claim/Interest | Status |
|---|---|---|
| **Claims Against and Interests in EME** | | |
| Class A1 | Other Priority Claims against EME | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class A2 | Secured Claims against EME | • With respect to Class A2 Claims that were not Assumed Liabilities, satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan <br><br>• With respect to Class A2 Claims that were Assumed Liabilities, such Claims have been or will be satisfied by NRG in accordance with the terms of the Plan and the Purchase Agreement |
| Class A3 | General Unsecured Claims against EME (Assumed Liabilities) | • Class A3 Claims have been or will be satisfied by NRG in accordance with the terms of the Plan and the Purchase Agreement |
| Class A4 | General Unsecured Claims against EME (Not Assumed Liabilities) | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class A5 | Joint-Liability General Unsecured Claims against EME | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class A6 | Intercompany Claims against EME | • Discharged, canceled, released, and extinguished on the Effective Date of the Plan |
| Class A7 | Subordinated Claims against EME | • Discharged, canceled, released, and extinguished on the Effective Date of the Plan |
| Class A8 | EME Interests | • Reinstated on the Effective Date of the Plan |
| **Claims Against and Interests in the Homer City Debtors** | | |
| Class C1 | Other Priority Claims against Homer City Debtors | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class C2 | Secured Claims against Homer City Debtors | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class C3 | General Unsecured Claims against Homer City Debtors | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in accordance with the Plan |
| Class C4 | Intercompany Claims against Homer City Debtors | • Satisfied on the Effective Date of the Plan in accordance with the Plan or thereafter in |

| | | accordance with the Plan |
|---|---|---|
| Class C5 | Subordinated Claims against Homer City Debtors | • Discharged, canceled, released, and extinguished as of the Effective Date of the Plan |
| Class C6 | Intercompany Interests in Homer City Debtors | • Discharged, canceled, released, and extinguished as of the Effective Date of the Plan |

## EXHIBIT C

**Proposed Final Decree**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDISON MISSION ENERGY, et al.,[1] | ) Case No. 12-49219 (JPC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**FINAL DECREE TERMINATING THE**
**REORGANIZATION TRUST AND CLOSING THE DESIGNATED CASES**

Upon the motion (the "Motion")[2] of the EME Reorganization Trust (the "Reorganization Trust") to terminate the Reorganization Trust and for entry of a final decree closing the Designated Cases, as further described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the chapter 11 estates of the applicable Debtors have been fully administered as required by Bankruptcy Code section 350(a) and Bankruptcy Rule 3022, making no further administration necessary; and it appearing that all fees due pursuant to 28 U.S.C. § 1930 have been paid or will be paid; and due and sufficient notice of the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Edison Mission Energy (1807); Camino Energy Company (2601); Chestnut Ridge Energy Company (6590); Edison Mission Energy Fuel Services, LLC (4630); Edison Mission Finance Co. (9202); Edison Mission Fuel Resources, Inc. (3014); Edison Mission Fuel Transportation, Inc. (3012); Edison Mission Holdings Co. (6940); Edison Mission Midwest Holdings Co. (6553); EME Homer City Generation L.P. (6938); Homer City Property Holdings, Inc. (1685); Midwest Finance Corp. (9350); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558); Midwest Generation Procurement Services, LLC (2634); Midwest Peaker Holdings, Inc. (5282); Mission Energy Westside, Inc. (0657); San Joaquin Energy Company (1346); Southern Sierra Energy Company (6754); and Western Sierra Energy Company (1447).  The service address of the Reorganization Trust is: EME Reorganization Trust, c/o Akin Gump Strauss Hauer & Feld LLP, Attn: James Savin, 1333 New Hampshire Avenue NW, Washington, DC 20036.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion.

Motion required by Local Rule 3022-1 having been given, and after due deliberation and sufficient cause appearing therefor, and the Court having found that the relief requested in the Motion is in the best interests of the Beneficiaries of the Reorganization Trust, it is hereby ORDERED:

1.      The Motion is granted as set forth herein.

2.      The Managing Trustees are hereby authorized to terminate the Reorganization Trust in accordance with the terms of the Reorganization Trust Agreement following the final distribution to be made by the Reorganization Trust to the Beneficiaries.

3.      Except as otherwise set forth herein, the Managing Trustees shall be discharged, as of the date of the termination of the Reorganization Trust, from their respective duties under the Plan and the Reorganization Trust Agreement.

4.      Notwithstanding anything to the contrary contained herein, the discharge of the Managing Trustees in paragraph 2 above shall affect neither the Managing Trustees' obligations nor their authority to take all steps necessary to wind down the Reorganization Trust and otherwise comply with the Reorganization Trust Agreement with respect thereto, including, without limitation, completing the Wind Down Activities.

5.      The Reorganization Trust shall withhold from the final distribution made by the Reorganization Trust to the Beneficiaries Wind Down Funds in an amount that is determined in good faith to be necessary to pay the reasonable and necessary costs and expenses, including professional fees, associated with the Wind Down Activities.  Following the conclusion of the Wind Down Activities, should any Wind Down Funds remain after the payment by the Reorganization Trust of all costs and expenses associated with the Wind Down Activities, such funds shall be donated to a charitable organization selected by the Managing Trustees.

6.      The Reorganization Trust is hereby authorized to take any and all actions necessary to destroy the Trust Records.

7.      The following chapter 11 cases are hereby closed:  (i) Case no. 12-49219 filed by Edison Mission Energy; (ii) Case No. 12-49220 filed by Chestnut Ridge Energy Company; (iii) Case No. 12-49225 filed by Edison Mission Holdings Co.; (iv) Case No. 12-49231 filed by Mission Energy Westside, Inc.; (v) Case No. 13-18703 filed by EME Homer City Generation L.P.; (vi) Case No. 13-18704 filed by Edison Mission Finance Co.; and (vii) Case No. 13-18705 filed by Homer City Property Holdings, Inc.; *provided*, *however*, that this Court shall retain jurisdiction as provided pursuant to Article XII of the Plan, the Confirmation Order, and this Final Decree.

8.      Within fourteen days or as soon as reasonably practicable after entry of the Final Decree, GCG is directed to forward to the Clerk of Court a final claims register, all original proofs of claim and an updated mailing list, at the direction of the Clerk's Office.

9.      GCG is authorized to (i) deactivate the public case administration website and toll-free restructuring hotline upon entry of the Final Decree or as soon as practicable thereafter; provided that GCG shall maintain a static version of the public case administration website, and upon the request of the Reorganization Trust or its professionals, post tax reporting information for the Beneficiaries of the Reorganization Trust to such website until December 31, 2017 and (ii) close the post office box dedicated to receiving mail in these chapter 11 cases upon the entry of the Final Decree or as soon as practicable thereafter.

10.     Upon compliance with the requirements of paragraphs 8 and 9 above, GCG will be released and discharged from any and all responsibilities in the Debtors' chapter 11 cases.

3

11. Following entry of this Final Decree, GCG may destroy any and all physical copies of documents pertaining to these chapter 11 cases in its actual or constructive possession, including, but not limited to: (a) excess copies of notices, pleadings, plan solicitation documents, customized envelopes or any other printed materials; (b) letters, emails, facsimiles or other correspondence received in these chapter 11 cases; (c) all undeliverable mail and/or returned mail; and (d) all other materials related to these chapter 11 cases.

12. Entry of this Final Decree is without prejudice to the rights of the Reorganization Trust to seek to reopen the Designated Cases for cause or the rights of NRG to seek to reopen the chapter 11 case of Debtor EME for cause.

13. The Reorganization Trust is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Final Decree without any further action or approval by the Court.

14. To the extent not already paid, the fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Designated Cases, if any, shall be paid as soon as reasonably practicable after the date of entry of this Final Decree.

15. Upon entry of this Final Decree, the Remaining Cases shall be jointly administered, pursuant to Bankruptcy Rule 1015(b), under the caption:

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDWEST GENERATION, LLC, et al.,[3] | ) | Case No. 12-49218 (JPC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

16.     The Reorganization Trust shall have no liability for the payment of any fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) with respect to the Remaining Cases and no responsibility with respect to any other matters relating to the Remaining Cases.

17.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Final Decree shall be immediately effective and enforceable upon its entry.

18.     To the extent that this Final Decree is inconsistent with (i) any prior order or pleading in the Designated Cases or the chapter 11 case of any of the Debtors or (ii) the Reorganization Trust Agreement or the Plan, the terms of this Final Decree shall govern.

19.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Final Decree.

Dated: _____, 2016
      Chicago, Illinois

_____
Jacqueline P. Cox
United States Bankruptcy Judge

---

[3]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Edison Mission Midwest Holdings Co. (6553); Midwest Generation EME, LLC (1760); Midwest Generation, LLC (8558).