UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Edison Mission Energy, et al., | ) | Bankr. 12-49219 |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| | ) | Honorable Jacqueline P. Cox |

### MEMORANDUM OPINION

Mar-Bow Value Partners, LLC ("Mar-Bow") seeks leave to file, as an amicus, a brief to reopen these cases pursuant to 11 U.S.C. §§ 105(a) and 350(b) as well as Federal Rule of Civil Procedure 60 (made applicable to cases under the Bankruptcy Code by Fed. R. Bank. P. 9024). Rule 60 provides for relief from final judgments in cases of mistake, newly discovered evidence, fraud and any other reason that justifies relief. The effort to reopen this matter addresses a failure, alleged to be fraudulent, by McKinsey Recovery & Transformation Services, LLC ("RTS") to comply with Fed. R. Bank. P. 2014 ("Rule 2014"). Amended Motion ("Am. Mot."), Docket 2699. RTS was retained by court order to serve as the Debtors' turnaround professional. RTS counters that the court should not grant Mar-Bow's request because it is a litigious competitor with meritless claims who lacks standing. The movant seeks leave to file its proposed amicus brief in excess of 15 pages.

The court declines to grant Mar-Bow leave to file an amicus brief to reopen. The United States Trustee ("UST") can provide the information and perspective needed to review allegations that the court has been defrauded. Mar-Bow is not the appropriate party to appoint as amicus due

to the highly adversarial and contentious history between it and RTS. In addition, the court will not reopen the case *sua sponte*.

## I. Jurisdiction

This court has jurisdiction to hear and determine this motion pursuant to 28 U.S.C. § 1334(a), which provides that federal district courts have original and exclusive jurisdiction of all cases filed under the Bankruptcy Code, title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to the judges of this court. This dispute relates to orders this court previously entered in this Chapter 11 proceeding that appointed RTS as the Debtors' turnaround professional. This court "plainly [has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

## II. Facts and Background

The facts are drawn from the parties' papers, the Debtors' petitions, schedules and plan as well as the court's docket. *In re Brent*, 458 B.R. 444, 455, n. 5 (Bankr. N.D. Ill. 2011) ("The court can take judicial notice of matters in its own records.").

### A. History Between Mar-Bow and RTS

This proceeding stems from a dispute between competitors in the restructuring advisory field, McKinsey & Co., Inc. ("McKinsey") and AlixPartners. The two provide consulting services to distressed companies with assets valued at over $1 billion. McKinsey provides these services through RTS, its wholly owned subsidiary. Am. Mot., Docket 2699, Part 8, Ex. 4, p 5,

¶ 5. RTS is a global full service restructuring advisory and crisis management firm that supports companies through all aspects of recovery and transformation. *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Serv., US, LLC*, 2017 WL 4414155, *2 (E.D. Va. Sept. 30, 2017). RTS advises struggling businesses on improving profitability and implementing change. *Id.* MIO Partners ("MIO") is another wholly owned McKinsey subsidiary involved in the dispute. Obj. to Mot., Docket 2706, Part 6, Ex. 4, pp. 1-2, ¶ 3. It manages assets for McKinsey's pension plans and privately offered investment vehicles for current and former employees. *Id.* McKinsey describes MIO as independently managed and separate from its consulting operations. Am. Mot., Docket 2699, Part 32, Ex. 19, p. 2.

AlixPartners, RTS's competitor, is one of only a few companies that provides crisis management and consulting services in major corporate chapter 11 bankruptcy cases involving companies with assets valued at over $1 billion. *Alix v. McKinsey & Co., Inc.*, 404 F.Supp.3d 827, 829 (S.D.N.Y. 2019). Jay Alix founded AlixPartners in 1981, is a member of its board of directors and owns around 35% of it. Obj. to Mot., Docket 2706, Part 7, Ex. 5, p. 13; p. 19, lines 12-13; p.18, lines 21-22. In addition to founding AlixPartners – Alix is the "beneficial owner and controller of Mar-Bow." *Id.* at p. 20, lines 22-24. Alix created Mar-Bow "to help the bankruptcy system become aware that there's not a level playing field . . .[and] to help create a level playing field." *Id.* at p. 23, lines 14-24.

The alleged misconduct involves the Bankruptcy Code's disclosure requirements for professionals that debtors hire. In chapter 11, a debtor-in-possession or trustee can hire professionals such as restructuring consultants under 11 U.S.C. § 327(a). The court has to approve the employment. The professional must not hold or represent an interest adverse to the

3

estate and must be disinterested. 11 U.S.C. § 327(a). The professional must submit a verification under Rule 2014, which requires, in part, that:

> The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bank. P. 2014(a)

Rule 2014 facilitates enforcement of 11 U.S.C. § 327(a) by requiring that professionals submit a verification that fully and broadly discloses their connections with the debtor, creditors, or other parties in interest. *In re Knight-Celotex*, 695 F.3d 714, 722, (7th Cir. 2012).

Alix's position is that McKinsey has "engaged in misconduct in the bankruptcy system." Obj. to Mot., Docket 2706, Part 7, Ex. 5, p. 24, lines 3-5. The alleged misconduct is McKinsey's practices of (a) using a "lookback" period in its disclosures, (b) identifying connections with the debtor, creditors or other parties in interest by descriptive category rather than by name and (c) failing to include MIO's connections in its employment applications. The misconduct is based on a belief that McKinsey is intentionally concealing its connections in its applications for employment. McKinsey is allegedly able to accomplish this through the use of subsidiaries (such as RTS and MIO) and other disclosure practices. Accordingly, Alix asserts that RTS's purpose is to enable McKinsey to minimize its disclosures. Am. Mot., Docket 2699, Part 3, Ex. A - Declaration, ¶ 17. Alix believes that Rule 2014 requires RTS to disclose MIO's connections

because, although McKinsey asserts otherwise, MIO does not make investments on a "blind trust" basis nor does it operate separately from McKinsey or RTS. *Id.* at ¶ 24.

### B. Prior Litigation Between Alix, Mar-Bow and RTS

Alix has, through Mar-Bow, attempted to vacate RTS's employment in a number of bankruptcy cases. *See In re SunEdison Inc.*, 2019 WL 2572250, * 11 (Bankr. S.D.N.Y. June 21, 2019); *In re SRC Liquidation, LLC*, 2019 WL 4386373, * 6 (Bankr. D. Del. Sept. 12, 2019); *In re Old ANR, LLC*, 2019 WL 2179717, * 8 (Bankr. E.D. Va. May 17, 2019). These courts have all denied Mar-Bow's motions for lack of standing and declined to appointment an independent examiner *sua sponte*.

In *SunEdison*, Mar-Bow sought relief from court orders approving RTS's retention and payment. It alleged that RTS committed a fraud on the court by failing to disclose its disqualifying connections to the Debtors and their estates. *SunEdison*, 2019 WL 2572250, at *1. The court held that Mar-Bow lacked standing to prosecute the fraud on the court claim. *Id.* That court noted that it could examine the allegations *sua sponte* and order such relief as it deemed appropriate, but declined to do so. *Id.*

In *Old ANR*, Mar-Bow asked the court to reopen the case to address RTS's disclosure violations and other issues. *Old ANR*, 2019 WL 2179717, at *3. The UST joined the motion to reopen but the debtors objected to it. *Id.* The court reopened the closed case as a miscellaneous proceeding and appointed Bankruptcy Judge Marvin Isgur as a mediator in the "global dispute between Mar-Bow and McKinsey RTS, which had arisen in two additional bankruptcy cases pending in other bankruptcy courts." *Id.* The mediation resulted in a settlement between RTS and the UST that the three courts approved. *Id.* RTS and Mar-Bow were unable to settle their

concerns through the mediation. The settlement provided that the UST would withdraw its objections and settle its claims against RTS regarding its failures to disclose in a number of cases. Obj. to Mot., Docket 2706, Part 16, Ex. 14, p. 5, ¶ 3. The settlement covers the present case. *Id.* at 6, ¶ 3.

Mar-Bow was not a party to that agreement. It did not settle with RTS. *Old ANR*, 2019 WL 2179717, at *4. The court denied Mar-Bow's request to reopen and for relief from judgment. *Id.*, at ** 7-8. It ruled that Mar-Bow lacked standing because it did not have a pecuniary interest that would be affected by the relief it sought. *Id.* The court also declined to appoint an examiner. *Id.*

In *In re NII Holdings, Inc.*, Bankruptcy Case - S.D.N.Y, No. 14-12611, Mar-Bow sought leave to file a motion to reopen that case to address RTS's fraud on the court and to appoint it as investigator or amicus. Mar-Bow argued that RTS "had many, many investment connections and many, many client connections." Obj. to Mot., Docket 2706, Part 10, Ex. 8, Transcript p. 12, lines 11-13. The debtors opposed the motion. *Id.*, Transcript p. 48, lines 2-4. The UST did not ask the court to reopen the case. *Id.*, Transcript p. 66, lines 22-23. The Court denied Mar-Bow's request stating, "[t]here is no request by the U.S. Trustee to reopen the case, there is opposition by the reorganized Debtor to the reopening of the case, and to the extent that I were inclined to apply the test for cause to reopen, I believe the factors don't add up, and that there would not be cause to reopen this case." *Id.*, Transcript p. 66, lines 22-25 and p. 67, lines 1-2. The Court noted that the United States Attorney could prosecute fraud if warranted. *Id.*, Transcript p. 68, lines 10-16.

6

In *SRC Liquidation*, Mar-Bow once again sought to vacate RTS's appointment as turnaround professional because of its failure to disclose its affiliations with entities with interests adverse to the Debtors. *SRC Liquidation LLC*, 2019 WL 4386373, at * 1. Mar-Bow accused RTS of fraud on the court and asked for the appointment of an examiner to investigate the extent of RTS's conflicts and misstatements. The court ruled that Mar-Bow lacked standing and denied its request to appoint an independent examiner, noting "the UST has already raised and resolved the issue . . . the settlement between the UST and RTS contained a carve-out for fraud and the UST remains free to pursue those claims . . . the UST – as the congressionally appointed bankruptcy 'watchdog' – is the appropriate entity to evaluate and bring [ . . . fraud] claims." *Id.* at ** 4-5.

Alix also commenced a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") action against McKinsey and RTS. He complained that AlixPartners' business was injured by reason of "a RICO violation because Defendants won business from bankruptcy estates, then filed fraudulent Rule 2014 statements, on the basis of which they obtained court approval to do work that otherwise would have been secured by AlixPartners." *Alix v. McKinsey & Co., Inc.*, 404 F.Supp.3d at 829. The court dismissed Alix's federal claims against McKinsey and RTS, holding that Alix could not meet RICO's proximate-cause standard. *Id.* at 830.

### C. This Bankruptcy Proceeding

Edison Mission Energy and its affiliates (collectively "Debtors" or "Edison Mission") filed petitions for chapter 11 relief on December 17, 2012. Docket 1. The Debtors filed an application to employ RTS on December 28, 2012 which included a declaration by Jared Yerian. Docket 175. No one objected to RTS's employment; the court approved it on January 17, 2013.

Docket 329. On May 15, 2013, this court ordered joint administration of the Edison Mission case and the cases of its affiliates which filed for bankruptcy relief after the initial filing date. Docket 771. The court confirmed the Debtors' plan on March 11, 2014. Docket 2206. The plan became effective on April 1, 2014 and NRG Energy Holdings ("NRG") purchased substantially all of the Debtors' assets. Docket 2717, ¶ 4.

This court granted RTS's compensation application on June 23, 2014 for $4,901,786.42 in fees and $374,390.22 in expenses. Docket 2425. On December 22, 2016, the court entered an order closing seven of the Debtors' cases including the lead case that Mar-Bow seeks to reopen. Docket 2678. On July 17, 2019, Mar-Bow filed a motion for leave to file a motion to reopen the case and to appoint Mar-Bow as amicus or investigator. Docket 2691. Mar-Bow amended its motion on August 13, 2019; it sought leave to file a motion as an amicus to reopen the case to address a fraud by McKinsey. Docket 2699. RTS filed an objection to Mar-Bow's motion to reopen. Docket 2706. NRG filed a pleading stating that it would not take a position whether the court should reopen the case but that if the case were to be reopened, there would be fees owed to the UST that the Debtor would be unable to pay. Docket 2717. Mar-Bow filed a response to NRG's statement stating that it would pay quarterly operating fees, if any became due upon reopening. Docket 2720. Mar-Bow filed a reply to RTS's objection. Docket 2725. This court held a hearing on November 6, 2019.

### D. The Parties' Positions

Mar-Bow contends that the court should grant it leave to file an amicus brief with detailed allegations of RTS's fraud that warrant reopening the case for investigation. It further

requests waiver of a local rule that requires motions to be 15 pages or less.[1] In the proposed motion, Mar-Bow argues that RTS intentionally concealed its investment and client connections.

RTS maintains that Mar-Bow is a serial litigator who is harassing it with baseless litigation. It argues that Mar-Bow's request to file an amicus brief is an attempt to circumvent standing requirements. An amicus curiae, according to RTS, is precluded from initiating legal proceedings as well as participating in and assuming control in a totally adversarial fashion -- contrary to what Mar-Bow wants. RTS insists that Mar-Bow is pursuing its private interests and is motivated by economic competition rather than an altruistic desire to safeguard the bankruptcy system.

RTS characterizes its disagreement with Mar-Bow as a good faith dispute regarding the interpretation of an unclear complex rule rather than fraud. It contends that there is no cause to reopen this case which has been closed for two and a half years. It also contends that its disclosure practices are customary in the industry and that no party objected to them in the past. It also argues that its disclosure practices were "plain on the face of [its] Rule 2014 declarations."[2] In other words, it was clear in their disclosures that RTS would use a look-back period, would not disclose names of interested parties but would use descriptive categories (*e.g.*, "major lender" or "bond holder") and would not identify MIO's connections.

Mar-Bow replies that no court has concluded that its claims are without merit. It notes that McKinsey does not deny that its partners and employees held the disqualifying connections.

---

[1] *See* Local Rule 5005-3 (D).

[2] "None of these aspects of RTS's disclosures run afoul of Rule 2014. Moreover, each of these features of RTS's disclosure methodology was plain on the face of RTS's Rule 2014 declarations and, thus, cannot form the basis of any fraud claims." Obj. to Mot., Docket 2706, p. 24.

9

Mar-Bow acknowledges that it does not have standing but argues that it does not need standing to file an amicus brief. It expounds that the court should grant it leave to file an amicus brief because it can offer unique information it has spent years and considerable resources compiling regarding RTS's pattern of unlawful disqualifying conduct.

### III. Discussion

This court declines to grant Mar-Bow leave to file an amicus curiae brief, regardless of length. Mar-Bow is not the appropriate party to serve as amicus curiae. It is too adversarial. Fed. R. Bank. P. 8017 addresses a party's ability to file an amicus brief. U.S. agencies may file amicus briefs without first obtaining leave of court; others may do so with the consent of all parties or with leave of court. District courts and bankruptcy appellate panels may request a brief by an amicus curiae. Federal courts have discretion to permit amicus curiae briefs. *Nat'l Org. for Women, Inc. v Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000) ("Whether to permit a nonparty to submit a brief, as amicus curiae, is, with immaterial exceptions, a matter of judicial grace.").

### A. Mar-Bow Concedes It Is Not A Party in Interest

Under Fed. R. Bank. P. 5010, a case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Bankruptcy Code. RTS argues that Mar-Bow cannot file a motion to reopen as it lacks standing because it is not a party in interest in the Debtors' bankruptcy cases. Mar-Bow concedes that it is not a party in interest. Its motion states: "Mar-Bow recognizes that it is not a party in interest in these cases." *See* Am. Mot., Docket 2699, Ex. A - Motion, p 12, n. 44. Its Reply brief states: "However, the Motion explicitly acknowledges that Mar-Bow does not have standing. That is why the Motion seeks leave to file Mar-Bow's

10

motion regarding McKinsey's fraud on the court *as an amicus*." See Reply, Docket 2725, p 7. Mar-Bow's admissions that it is not a party in interest obviates the need for a discussion of standing.

## B. The UST Can Provide the Insight Mar-Bow Proposes to Offer the Court

The traditional view of an amicus curiae is that of an "impartial friend" of the court who interposes judicial proceedings to assist the court by providing information. *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). An amicus curiae aids the court in resolving doubtful issues of law. *Id*. It is not "an adversary party in interest in the litigation." *Id*. As a result, a court should only allow an amicus brief if it assists the court and provides information that the parties have not provided. *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (noting that the criteria for deciding whether to permit an amicus brief is if it assists the judge by "presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties briefs."). The Seventh Circuit has delineated instances when amicus briefs are appropriate: (1) a party is inadequately represented; (2) where the would-be amicus has a direct interest in another case that may be materially affected by a decision in the case; (3) or in which the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide. *Id.*; *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d at 617.

The first and second grounds delineated by the Seventh Circuit are not available to Mar-Bow. The Debtors in this case are represented and Mar-Bow has not alleged that they are not adequately represented. Mar-Bow does not have a direct interest in another case that the present case may materially affect on res judicata grounds. It seeks leave to file an amicus brief based on

11

the third ground, that its proposed motion aids the court and offers insights not available to the parties. Mar-Bow claims that its efforts have generated $32.5 million in recoveries and that it has not been compensated for its efforts.

Mar-Bow's proposed motion does not offer the court insight beyond what the parties can provide. The UST is a neutral party that can provide the perspective and information that Mar-Bow seeks to provide as an amicus. The UST has the ability to rise and appear and be heard on any issue in any case or proceeding under title 11. 11 U.S.C. § 307. The UST acts as the "watchdog" of the bankruptcy system. *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014) (noting that the Seventh Circuit has said that the UST can be a "party in interest" because of his watchdog role in bankruptcy cases). Its goal, in part, is to protect the integrity of the bankruptcy system and to prevent fraud. The UST is aware of the disclosure issues herein and has met with the parties in connection with this case. Should it be appropriate, the UST can bring a motion to reopen the case. It is a party in interest and can provide the court with pertinent information regarding RTS's alleged failures to adhere to Rule 2014. In addition, the UST can object to any applications RTS may file in the future to be employed in bankruptcy cases.

### C. Mar-Bow is too Adversarial to Appoint as Amicus Curiae

The role of an amicus curiae has evolved to allow parties who may have an adversarial interest or are not totally disinterested to serve as amici. *Ryan v. Commodity Futures Trading Comm'n,* 125 F.3d 1062, 1063 (7th Cir. 1997) (chambers opinion) (citing *United States v. Michigan,* 940 F.2d at 165) (noting that some courts have departed from the orthodoxy of amicus curiae as an impartial friend of the court and have recognized a limited role for an adversarial

party to file briefs and participate in oral argument). There are limits, however, to how adversarial an amicus can be. *Id.* It cannot be so adversarial that it takes the role of a party in interest. An amicus "has never been recognized, elevated to, or accorded the full litigating status of a named party or a real party in interest." *United States v. Michigan*, 940 F.2d at 165. An amicus has also been "consistently precluded from initiating legal proceedings, filing pleadings, or otherwise participating and assuming control of the controversy in a totally adversarial fashion." *Id.* at 165.

The court is ruling against Mar-Bow because its participation in this case would not be consistent with that of an amicus. Its filing, as RTS points out, is not meant to assist the court in a matter already brought before it. Mar-Bow is bringing the issue before the court - as it filed a motion to obtain affirmative relief. Mar-Bow's role in the present case (and its past interactions with RTS) is too adversarial. Mar-Bow's goal is to continue litigation against RTS for its disclosure practices rather than to assist the court in resolving a matter before it by providing a perspective that the parties are unable to provide.

### D. Mar-Bow is too Interested to Appoint as Amicus Curiae

The partiality of an amicus is a factor for a court to consider in deciding whether to allow participation. *Sec. Inv'r Prot. Corp. v. Bernard Madoff Inv. Sec. LLC*, 550 B.R. 241, 256 (Bankr. S.D.N.Y. 2016) (citing *Picard v. Greiff*, 797 F.Supp.2d 451, 452 (S.D.N.Y. 2011)). Mar-Bow argues that an amicus does not have to be disinterested and that the court should not ignore its allegations due to any potential interest it may be perceived to have. To support its argument, Mar-Bow points to the Supreme Court's approval of the Third Circuit's appointment of a party's

former counsel as amicus curiae where the amicus represented non-parties who stood to benefit if an order obtained through bribery was vacated in *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575 (1946). However, the Supreme Court noted that "[a]mici selected by the court to vindicate its honor ordinarily ought not be in the service of those having private interests in the outcome." *Universal Oil*, 328 U.S. at 581.

Mar-Bow is correct that an amicus does not have to be completely disinterested. However, this court finds that Mar-Bow is too interested to appoint it as amicus. Mar-Bow seems to already have arrived at the outcome of any investigation into RTS. Mar-Bow has stated that if RTS had fully disclosed its connections in this case (as well as other cases) it would have been disqualified. Mar-Bow believes any investigation into RTS will disclose disqualifying connections. Given this, it is unlikely that Mar-Bow would be able to provide neutral assistance.

Mar-Bow's goal is to create a level playing field and remedy what it sees as "arrogant" and "persistent" violations of Rule 2014. Presumably AlixPartners is at a competitive disadvantage because it fully discloses its connections[3] whereas RTS (according to Mar-Bow and Alix) does not. If these allegations are accurate, RTS has obtained employment that could have gone to its competitors. The court cannot ignore the interest that Mar-Bow (which is owned by Alix) would have in the court finding that RTS is not complying with Rule 2014.

### E. The Court Will Not Reopen The Case *Sua Sponte*

The court declines to reopen the case *sua sponte*. Neither the UST nor the Debtors have joined Mar-Bow's motion to reopen. The allegations of fraud and improper/incomplete

---

[3] Jay Alix stated in a deposition in *In Re Westmoreland Coal Co.*, No. 18-35672 that AlixPartners does not use a look back period ("[AlixPartner's process in determining connections . . . ] assumes that everything within five years need[s] to be reported . . . and then anything past five years because of such a large lapse of time is likely to be de minimis but it's still reviewed and checked") Obj. to Mot., Docket 2706, Part 7, Ex. 5, p. 94, lines 16-22.

14

disclosures are extremely troubling and very serious, if accurate. The court takes issue with RTS's position that these allegations are without merit. The UST filed a statement in the Alpha Natural Resources, Inc. bankruptcy case where it joined Mar-Bow's motion to reopen and pointed out discrepancies in RTS's disclosures.[4] No court has examined these allegations and found them to be without merit. Given this, it is difficult to characterize these allegations as baseless.

## IV. Conclusion

The court denies Mar-Bow leave to file an amicus brief for the reasons set forth above. This Opinion constitutes the court's findings of fact and conclusions of law. A separate order will be entered.

Dated: January 16, 2020

ENTERED:

*Jacqueline Cox*

**Jacqueline P. Cox**
**United States Bankruptcy Judge**

---

[4] Am. Mot. Docket 2699 Docket 2699, Part 38, Ex. 22, *Comments of the United States Trustee Regarding McKinsey RTS's Opposition to Mar-Bow Partners, LLC's (1) Motion to Reopen Case and (II) Motion for Relief from Judgements and for Indicative Ruling:* "McKinsey's repeated characterization in 2016 of MIO's status as a 'blind trust' was inaccurate." (Page 1). "MIO was not a blind trust and Jon Garcia, McKinsey's president, ratified MIO investment decisions." *Id.* "McKinsey's deficient and potentially misleading representations about its relationships with MIO, and the lack of timely, voluntary, and direct candor in making disclosures warrant redress and justify the reopening of the case . . . " (Page 2).